Steve Romansky AY-8324
175 Progress Drive
Waynesburg, PA 15370-8090
September 25, 2000

Clerk's Office
U.S. District Court
228 Walnut Street
P.O. Box 983
Harrisburg, PA 17108



Re: Romansky v. Blaine, 1:00-cv-01520 (Judge, Sylvia H. Rambo)

Dear Clerk:

Enclosed please find my Memorandum In Support of Habeas Corpus. Due to my RHU (Restriced Housing Unit) status I have mailed it in three individual envelopes. Please be advised that I have not, nor can I serve any copies on the Commonwealth which in this case would be: Andrea F. Mckenna, Office of Attorney General, 16th Floor, Strawberry Square, Harrisburg, PA 17120.

Note of explanation:

On August 23, 2000, I filed my Petition for Habeas Corpus in Scranton, PA and it was docketed as stated above on August 25, 2000. Also in my August 23, 2000, letter I asked for appointment of counsel for the reasons stated therein. However, since the filing date I have been granted partial access to my Wayne County file enabling me to prepare the within memorandum.

Concerns:

1.) Point out my restraints by confinement: SCI-Greene does not make copies for indigents; no library; no money for copies;

no money for postage; and limited access to file.

    2.) Present the facts and legal issues to the court in a good faith effort to bring an end to the substantial delay in this case.

    3.) A fair opportunity for the Commonwealth to respond.

    4) Preserve the judicial resources of the court and precious commodity of attorneys.

    If the court feels that the within memorandum presents the facts and legal issues and can some how have the Commonwealth file a reply in this unorthodox method of filing and then render a decision I am certainly willing to do my part in preserving the judicial resources of the court. Please advise. Thank you for your attention and cooperation.

Very truly yours,

Steve Romansky

P.S. Note address change as stated above.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN L. ROMANSKY, : Civil Action No. 1:00-CV-01520
   Petitioner :
:
v. :
:
CONNER BLAINE, Jr., ET AL., : (Chief Judge Rambo)
   Respondents :

PETITIONER'S MEMORANDUM IN SUPPORT OF HABEAS CORPUS

AND NOW, comes your Petitioner, Steven L. Romansky, Pro se, (hereinafter "Romansky") wherein he files this Memorandum In Support of Habeas Corpus relief and in support there of avers as follows:

Procedural History

1. On February 4, 1985, the Third statewide Investigating Grand Jury began hearing testimony involving stolen motor vehicles.

2. On May 15, 1985, the Honorable G. Thomas Gates, Supervising Judge of the Third statewide Investigating Grand Jury, accepted Presentment No. 33 which recommend that Romansky and Smithers be charged with numerous vehicles charges arising from the same 1979 Ford Bronco. (This 1979 Ford Bronco is the subject of this habeas Corpus and arson in Wayne County)

3. Thomas Smithers next finds himself the primary

suspect of an arson on the Bronco traced back to his garage by the Pennsylvania State Police. (see page 14 of Order Accepting Presentment No. 33), with his ass in a sling over arson charges. (See Body Wire Transcript, January 14, 1986 at 1). Being a police officer and wise to the criminal justice system Smithers looks for a way to elude prosecution by calling Special Agent Russell W. Thomas on December 12, 1985, to seek a deal, namelly leniency in exchange for cooperation in wearing a body wire aimed at Romansky.

4.   On January 6, 1986, Smithers received his agreement not to be prosecuted. (see letter of agreement between Deputy Attorney General, Gregory B. Abeln and Thomas Smithers dated January 6, 1986.

5.   On February 14, 1986, Romansky was arrested and charged with arson and related charges pertaining to the Bronco.

6.   On March 18, 1986, after preliminary hearing Romansky was bound over for trial.

7.   On September 15, 1986, Romansky proceeded to trial.

8.   On September 17, 1986, Romansky was found guilty of the charges.

9.   On February 10, 1987, Judge Conway sentenced Romansky to a term of four (4) to ten (10) years.

10.  On February 19, 1987, Romansky filed a Petition for Reconsideration of sentence which the lower court denied.

2

11. On November 24, 1987, at No. 00706 Philadelphia 1987, the Superior Court affirmed the judgment. No, petition for allowance of appeal in the Pennsylvania Supreme Court was filed.

12. Several years after his conviction and sentence, Romansky uncovered evidence revealing that an investigating grand jury had indeed issued a presentment against Thomas Smithers recommending prosecution for the 1979 Ford Bronco, and agreement not to prosecute Smithers. (See Commonwealth v. Romansky 702 A.2d 1064, 1065 (Pa. Super. 1997)).

13. On September 18, 1995, Romansky filed his Post-Conviction.

14. On January 14, 1999, after more than a three (3) year delay by court appointed counsel Romansky filed his Pro se amended PCRA.

15. On April 28, 1999, Judge Conway denied Post-Conviction relief.

16. On May 21, 1999, Romansky filed his timely Notice of Appeal to the Superior Court.

17. On December 17, 1999, at No. 1538 EDA 1999, the Superior Court affirmed the judgment.

18. On July 25, 2000, petition for allowance of appeal to the Pennsylvania Supreme Court was denied.

19. On August 25, 2000, Romansky filed for writ of habeas Corpus in the United States District Court for the Middle District of Pennsylvania the subject of the within Memorandum.

3

### Petitioner's Claim A

20. Petitioner's Conviction Was Obtained By The Commonwealth's Knowing Use Of False Testimony And Concealment of Impeachment Evidence.

21. Because the Commonwealth's statement of facts thus far in this case include unsupported argument, fails to mention many of the undisputed facts, and mischaracterizes numerous others a list of uncovered evidence is necessary to assist the Court.

22. Several years after Romansky's conviction and sentence he uncovered the following:

    (a) The Grand Jury Recommended Smithers Be Charged with: Receiving Stolen Property; Conspiracy; Obstruction of the Aministration of Law; Intimidation of Witnesses or Victims; Romoval or Falsification of Identification Numbers; Dealing In Vehicles With Removed or Falsified Numbers; Dealing In Titles And Plates For Stolen Vehicles; and False Application For Certificate of Titles or Registration.

(See Grand Jury Presentment No. 33 February 4, 1985).

    (b) Smithers next finds himself the primary supect of the arson on the 1979 Ford Bronco with his ass in a sling.

(See Body Wire Transcript, January 14, 1986 at 1).

4

(c) To elude prosecution Smithers seeks a deal. (See Agreement dated January 6, 1986, with Attorney General's Office).

(d) Special Agent Russell W. Thomas Applying terroristic threats and coercion on Smithers to wear the body wire caught himself speaking in a self-incriminating manner on his own body wiretap.

Note, the conversational exchange between Agent Russell W. Thomas and informant Thomas Smithers:

Thomas Smithers:

> Hey, how you doing? I got a quarter. Son of bitching phone. Yea. Why don't you come up to the diner with me. I was thinking about why don't you come up to the diner with me. I just don't like that house. Yea. Huh? Yea meet me out in the parking lot out here. That way we can talk and then I know nobody's around. Yea. All right. Bye.

Russell W. Thomas:

> Tell him this---
>
> Tell him that, tell him the reason, the reason I told them cops what I told them is because I'm fucking saving my own fucking ass that's why - Goddamit. Now you tell me what's your fucking story, how can I help you out. Give your fucking alibi. What did you do with that fucking

5

Thomas Smithers:

    You want me to pull that shit?

Russell W. Thomas:

    Yea.

Thomas Smithers:

    Okay. Okay.

(See Tape Transcript #1 page 19 held December 19, 1985).

(e) Deputy Attorney General, Gregory B. Abeln sets the stage for his deception on the Court.

By Mr. Abeln:

I'm not going to offer any evidence through Mr. Thomas or Mr. Smithers or anybody else as to the course of this car, only that Mr. Thomas had investigated Mr. Smithers and there was no intention on our office whatsoever to prosecute this individual at any time.

(See Notes of Trial Testimony, September 15, 1986 at 94)

(f) When Mr. Thomas was asked if the grand jury made recommendations to prosecute Smithers. He stated, "None Whatsoever."

(See Notes of Trial Testimony, September 15, 1986 at 96)

(G) Mr. Thomas ascertained Smither's voluntary concent.

(See Notes of Trial Testimony, September 15, 1986 at 96)

(h) Mr. Thomas denied that there was a deal cut with Mr. Smithers.

6

(See Notes of Trial Testimony, September 15, 1986, at 99)

23. The Superior Court having found a violation of Romansky's Fifth Amendment to due process under the Brady/Giglio Standard and that Smither's credibility was a crucial issue and his testimony was material went on to characterize the violation as harmless. (See Superior Court Memorandum No. 1538 EDA 1999 at 5-8).

24. Romansky respectfully submits that Superior Court's facts and case law are misplaced in the case at bar for the reasons set forth below:

25. First, Romansky does not nor can he address the false testimony of Thomas Smithers due to the fact that there is no testimony of Thomas Smithers in the Lower Courts record. Second, Romansky's issue is based on the false testimony of arresting officer Russell W. Thomas; the concealment of impeachment evidence listed above; and the knowing use of false testimony. Third, Superior Court stated, "In this case, Appellant's role in the arson and related crimes was clearly established through his own addmission in the wiretapped conversation." (See Superior Court's Memorandum No. 1538 EDA 1999 at 8.)

26. In spite of Superior Court's claim, the record reveals no testimony of Romansky; no body wire tapes given to the jury; or tapes being played for the jury as is evident by the fact that there is no citation to the Lower Court record where

7

Romansky stated his role in the arson.

27. However, as stated above Romansky clearly points to the undisclosed evidence; perjured testimony; and the fact that Smithers has his ass in a sling for the arson on the 1979 Ford Bronco. All of which was withheld from the jury in this case. Thus, there appears to be insufficient justification for the Superior Court's determination of harmless error.

28. On the contrary, The Supreme Court has identified two types of constitutional errors: structural and trial. See _Arizona v. Fulminante_, 499 U.S. 279, 306-10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). "A structural error is a defect in the trial mechanism itself, affecting the entire trial process, and is per se prejudicial." _Yohn v. Love_, 76 F.3d 508, 522 (3d Cir. 1996) (citations omitted). By contrast, "trial error occurs during the presentation of the case to the jury, and may be quantitatively assessed in the context of all other evidence." Id. See _Hassine v. Zimmerman_, 160 F.3d 941, 949 (3rd Cir. 1998).

29. On April 21, 1993, the Supreme Court announced its decision in _Brecht v. Abrahamson_, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), altering the standard for harmless error in habeas cases involving constitutional trial flaws. Id. at 946. Under Brecht and its progeny, a constitutional trial error is not harmless if the court is in "grave doubt" as to whether the error had a substantial and injurious effect or influence

8

in determining the jury's verdict. O'Neal v. McAninch, 513 U.S. 432, 436, 115 S.Ct. 992, 130 L. Ed. 2d 947 (1995). "Grave doubt" exists when, "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." Id. at 435, 115 S.Ct. 992. Moreover, it is "inappropriate to ask whether there was sufficient evidence to support the result, apart from the phase of the trial affected by the error. The correct inquiry is whether the error had a substantial influence on the verdict despite sufficient evidence to support the result apart from the error." Yohn, 76 F.3d at 523 (citations omitted). Id. at 955.

30. In evaluating a harmless error claim, we must thus determine whether, and to what extent, the jury's decision to accept the State's version of the facts was influenced by the prosecutor's violation. The crucial inquiry is the "impact of the error on the minds of the jurors in the total setting." Yohn, 76 F.3d at 523 (citing Kotteakos, 328 U.S. at, 66 S.Ct. 1239). Id. at 955.

31. In the case at bar, how the Superior Court calculated that Smithers' testimony was material is unclear. Apparently the Superior Court was unaware that one searches the Lower Court record in vain for any testimony of Thomas Smithers. Also unclear is what harmless error standard was applied.

32. As stated above the Supreme Court has identified two

9

types of constitutional errors: structural and trial. Hassine, 160 F.3d at 949. To the extent that the facts in this case present one of the rare instances of both "structural and trial" constitutional errors, i.e., the agreement before trial between Prosecutor, Gregory B. Abeln, Deputy Attorney General and Special Agent Russell W. Thomas to deny Romansky his state and federal constitutional due process rights to a fair trial by concealing the Smithers' indictment; agreement not to prosecute Smithers; and the fact that Smithers had his ass in a sling for the arson on the 1979 Ford Bronco, clearly affected the entire trial process, and is per se prejudicial.

33. In addition, trial error occured in this case when Prosecutor Gregory B. Abeln allowed the false testimony of Russell W. Thomas to go uncorrected and may be quantitatively assessed in the context of "all other evidence". Hassine, 160 F.3d at 449. However, as mentioned above there is "no other evidence" in the case at bar. Thus it's unmistakably clear that Superior Court's harmless error analysis is unjustified as to whether the error had a substantial and injurious effect or influence in determining the jury's verdict.

34. Consequently, Romansky's due process rights under the Fifth and Fourteenth Amendments were violated by Prosecutor, Gregory B. Abeln who's intent was not to promote public respect for the criminal process by focusing on a

fundamentally fair trial, rather his intent was to debilitate, not effectuate, the proper administration of justice.

35. This conviction should not be permitted to stand when it was the product of nothing less than fraud from the very Attorney General's office sworn to uphold the law.

### Petitioner's Claim B

36. Ineffectiveness of counsel - Failure to suppress recordings made in violation of the Pennsylvania Wiretap Act.

37. In general, to sustain a claim of the ineffective assistance of counsel, an appellant must establish "(1) the claim is of arguable merit; (2) the particular course chosen by counsel had no reasonable basis to effectuate his client's interests; and (3) counsel's ineffectiveness worked to his client's prejudice." Commonwealth v. Fisher, 1999 WL 1062472, p.10 (Pa., November 24, 1999). See also Commonwealth v. Williams, 730 A.2d 507, 511 (Pa. Super. 1999).

38. In this case, the Commonwealth clearly established through its own record and the admission of its own witnesses through testimony that Romansky has sustained his claim of ineffective assistance of counsel.

39. In evading Romansky's issue of the Commonwealth's use of illegally obtained evidence and violation of the Pennsylvania Wiretap Act the Lower Court pointed to the perjured testimony of

11

Sepecial Agent Russell W. Thomas.

    By Deputy Attorney General, Gregory B. Abeln:

        Q. Did Mr. Smithers voluntarily agree to do-participate in these interceptions?

    Russell W. Thomas:

        A. Yes, Sir. He contacted me initially in early December and voluntarily requested to engage in this consentual interception. I thereafter contacted you, outlined the facts and received the approval as required by the statute.

(See Notes of Trial Testimony, September 15, 1986 at 97, 98. Also Lower Court Opinion April 28, 1999 at 3).

    40. This testimony is the crux of Romansky's argument for two very specific reasons: First, the fact that Mr. Thomas led the jury to believe that Mr. Smithers volunteered to wear the body wire. Clearly, a deception on the court in light of the fact that Mr. Thomas caught himself on his own body wire applying terroristic threats and coercion on Mr. Smithers. (See Body Wire Tap Transcript #1 page 19 held December 19, 1985). Second, the unmistakable fact that Special Agent Russell W. Thomas is the one who ascertained the voluntary consent of Mr. Smithers in violation of the Pennsylvania Wiretap Act.

    41. In light of the fact that Mr. Thomas-- is neither the Attorney General or the appropriate designee the Lower Court's conclusion

12

that Special Agent Thomas determined that Smither's cooperation was voluntary is insufficient under our Wiretap Act.

42. In spite of Romansky claim and the clear and convincing evidence in the record to support his claim Superior Court did not address the merits of this issue and simply stated that, "Romansky's Counsel Randolph Borden, Esquire, did file a Suppression motion. However, the record does not indicate a disposition of this motion." (See Superior Court's Memorandum December 17, 1999 at 9).

43. As Superior Court clearly points out the record does not indicate a disposition of this motion. The reason for this is the fact that there was no hearing held, or disposition, nor was the motion denied by operation of law. Even though suppression motions are generally based upon alleged constitutional violations, the claims can be effectively reviewed post-judgment. If a ruling was incorrect, the defendant is granted a new trial, the illegally-obtained evidence is suppressed, and his constitutional right is not lost. <u>Commonwealth v. Johnson</u>, 705 A.2d 830, 833 (Pa. 1998). See also <u>Flangan v. United States</u>, 465 U.S. 259, 104 S.Ct. 1051 (1984).

44. In the instant case, the record reflects that the lower court "did not conduct a hearing" on the motion to suppress. Without such a hearing, Romansky's rights to due process and effective assistance of counsel were not adequately protected under the Sixth and Fourteenth Amendments.

45. In *Moore v. United States*, 432 F.2d 730 (3d Cir. 1970) the Court stated a motion to suppress must have a solid foundation, both in fact and law, and at the time and place of trial. With this standard in mind a review of the Wiretap Act is necessary.

46. The specific section the Commonwealth violated was Section 5704. Exceptions To Prohibition On Interception And Disclosure of Communications.

> (2) Any investigative or law enforcement or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire or oral communication involving suspected criminal activities where:
>
> (ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General,... has reviewed the facts and is satisfied that the consent is voluntary...

18 P. C.S.A. Section 5704 (2) (ii).

47. As stated above a through review of the Lower Court record will reveal no document that Deputy Attorney General Gregory R. Abln ever interviewed Thomas Smithers to ascertain that his consent was voluntary. To the contrary it was Special Agent Russell W. Thomas applying terroristic threats and coercion who said the consent of

14

Smithers was voluntary. (See Body Wire Tape Transcript #1 page 19 held December 19, 1985) and (Notes of Testimony, September 15, 1986 at 97, 98).

48. Attorney General could not rely on state police to ensure informant's consent to interception of informant's telephone calls by having informant sign consent forms; statute required Attorney General's office to ensure that consent to additional intercept periods was voluntary by reviewing facts and interviewing informant each time new consent was signed. Commonwealth v. Spence, 631 A.2d 666, 428 Pa. Super. 548 (1993).

49. When the Commonwealth seeks to rely upon the consent exception to this section, consent must have been obtained prior to the intercept of each communication; each communication not so consented to will be suppressed. Commonwealth v. Whitrode, 42 Pa. D and C. 3d 153 (1983).

50. Clearly, Romansky's claim had a solid foundation in both law and fact, and at the time and place of trial. In Rock v. Zimmerman, 586 F. Supp. 1076 (1984) the court stress that determinations of effectiveness are not arrived at with ease. We have painstakingly avoided any notions of "Monday morning quarter backing." It is neither our function nor intent to second guess the performance and dicisions of Rock's trial counsel. At the time, however, it is our duty to ensure that his right to effective assistance of counsel, guarnteed him by the Sixth Amendment to the constitution of the United States, is provided and protected. This encompasses the entire spectrum of the obligations of defense counsel, i.e., the investigation, preparation and presentation of a defendants' case. Each phase of the process is

15

equally important. Id at 1079.

51. With the entire spectrum of the obligations of defense counsel in mind and a reading of the aforementioned, Romansky's claim is of arguable merit; counsel could have no reasonable basis not to follow through on a suppression motion that required mandatory suppression; and Commonwealth's violation of the Wiretap Act was perjudicial to Romansky.

## Conclusion

52. Based upon the law as set fourth herein, and the undisputed facts establishing the link of all of the within referenced evidence and testimony to the Commonwealth's violation of both Brady and Giglio together with the illegal electronic surveillance which was conducted, Romansky respectfully submits that his Sixth and Fourteenth Amendments were violated and his conviction irremediably tainted requiring discharge.

Respectfully submitted,

Dated: September 25, 2000

Steven J. Romansky, Pro se
175 Progress Drive
Waynesburg, PA 15370-8090