**ORIGINAL**

**FILED**
HARRISBURG

JAN 3 1 2001

MARY E. D'ANDREA, CLER
Per_____
DEPUTY CLERK

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN L. ROMANSKY,    :
              Petitioner    :    Civil Action No. 1:CV-00-1520
                     :
      v.    :
                     :    (Judge Rambo)
CONNER BLAINE, JR.,    :
              Respondent    :

**RESPONDENT'S MEMORANDUM OF LAW**

      D. Michael Fisher, Attorney General of Pennsylvania, by Andrea F. McKenna, Senior

Deputy Attorney General, attorney for Respondent, files this Memorandum of Law in response to

the above-captioned petition for federal habeas relief.

**I.    Procedural History**

      On September 17, 1986, after trial before the Honorable Robert J. Conway of the Court of

Common Pleas of Wayne County, Romansky was found guilty of Arson Endangering Property, 18

Pa.C.S. § 3301(c); Reckless Burning or Exploding, 18 Pa.C.S. § 3301(d); Causing or Risking

Catastrophe, 18 Pa.C.S. § 3301(b); and Tampering with Evidence, 18 Pa.C.S. § 4910(1). These

charges, filed against him by the Office of Attorney General, resulted from the recommendation of

the Third Statewide Investigating Grand Jury as stated in Presentment No. 48.

      Romansky filed post verdict motions on September 25, 1986, seeking an arrest of judgment,

and filed supplemental motions on October 3, 1986. The lower court granted Romansky's motion

to arrest judgment as to the conviction of Arson Endangering Property, 18 Pa.C.S. § 3301(c), but

dismissed the motions seeking an arrest of judgment of the remaining three convictions.

On February 10, 1987, Judge Conway sentenced Romansky to a term of one and a half to four years imprisonment on the charge of Reckless Burning or Exploding; one and a half to four years on the charge of Causing or Risking Catastrophe; and one to two years on the charge of Tampering with Evidence. All of the sentences were imposed consecutively, giving Romansky an aggregate minimum of four years and an aggregate maximum of ten years. With credit for time served, the effective date of the sentence was February 15, 1986.

On February 19, 1987, Romansky filed a Petition for Reconsideration of Sentence. The petition was denied.

## A.    Issues Raised on Direct Appeal

Romansky then timely brought a direct appeal which raised the following issues: (1) whether the trial court erred in permitting a witness to offer testimony to a hypothetical question when facts were assumed and not introduced into evidence; (2) whether the trial court erred in overruling an objection to hearsay evidence; (3) whether the trial court erred in failing to grant a mistrial when a Commonwealth witness testified that he was involved in investigating Romansky for "suspicious and criminal activity;" (4) whether the jury was prejudiced by seeing Romansky under escort by armed guards; (5) whether the trial court erred in failing to merge sentences; and (6) whether the trial court erred in failing to set forth reasons for imposing sentence.

The Pennsylvania Superior affirmed the judgment of sentence in an order entered November 24, 1987, at No. 00706 Philadelphia 1987. No petition for allowance of appeal in the Supreme Court was filed.

2

**B.    Issues Raised on Post Conviction Relief**

Romansky  sought post conviction relief in a petition filed September 18, 1995.  An amended petition was filed  January 4, 1999, raising these claims:  (1) whether he was denied the sixth amendment right to the effective assistance of counsel by trial counsel's failure  to seek suppression of information obtained through an alleged violation of the Commonwealth's Wiretap Act; (2) whether he was denied the sixth amendment right to the effective of assistance of counsel when counsel failed to seek suppression of evidence obtained though an allegedly illegal entry into Romansky's home;  (3) whether he was denied  state and federal constitutional rights of due process when the Commonwealth allegedly used false testimony  and withheld vital impeachment evidence regarding Commonwealth witness Thomas Smithers;  (4)  whether he was denied  the  effective assistance of counsel by counsel's failure to conduct an independent investigation of Commonwealth witness Thomas Smithers.

After consideration of the Commonwealth's answer in opposition, the trial  court denied the petition without  an evidentiary hearing in an order dated April 28, 1999.

Romansky filed an appeal in the Pennsylvania Superior  Court and raised  two issues: (1) whether the PCRA court erred in concluding that the Commonwealth's knowing use of false testimony and concealment of impeachment evidence did not have a reasonable likelihood of effecting the jury's verdict: (2) whether the PCRA court erred in concluding that defense counsel was not ineffective for failure to seek suppression of  the defendant's tape-recorded  statements due to violation of Pennsylvania's wiretap act's voluntary consent requirement.

The Superior Court denied relief in an order  and memorandum opinion filed December 17, 1999. *Commonwealth v. Romansky*,  slip. op (No. 1538 EDA 1999)(December 17, 1999).

Romansky then sought discretionary review by the Pennsylvania Supreme Court. The Pennsylvania Supreme Court denied further review in the order of July 25, 2000. *Commonwealth v. Romansky*, No. 0241 M.D. Alloc. Dkt 2000 (July 25, 2000).

## II.    Factual Basis of Conviction

On or about September 25, 1984, a fire occurred in an impoundment where suspected stolen vehicles were being held behind the Pennsylvania State Police Barracks in Honesdale. A trail of flammable liquid, later proven to be gasoline, was poured so as to link together ten vehicles. Rags had been placed in the gas tanks so as to form wicks leading from the trail of gasoline into the vehicles' gas tanks. A burnt book of matches was found at one end of the liquid trail and two Bondo Fiberglass resin cans were also found at the scene.

The most seriously damaged vehicle was a 1979 Ford Bronco, which had been reported stolen and which police discovered at Romansky's home and impounded at the state police barracks.

Tom Smithers, who owned a garage at which Romansky's Bronco had been inspected, voluntarily contacted a special agent of the Attorney General and proposed that he engage Romanksy in conversation while wearing a recording device. During these taped conversations, Romansky made admissions against his own interest, evidencing his involvement in the arson.

## III.    Exhaustion of remedies

A convicted state prisoner may not seek federal habeas relief unless he has exhausted the remedies available in the state courts. 28 U.S.C. § 2254(b); *Anderson v. Harless*, 459 U.S. 4 (1982); *Burkett v. Cunningham*, 826 F.2d 1208, 1213 (3d Cir. 1987).

The petitioner raises these claims for federal habeas relief: (1) he was denied due process of law by the Commonwealth's use of false testimony pertaining to Commonwealth witness and

4

informant Thomas Smithers and  presented through Agent Russell Thomas ; (2) he was denied

ineffective assistance of counsel because of trial counsel's failure to seek suppression of recordings

made in alleged violation of the state Wiretap Act.

These claims have been exhausted by fair presentation to the state's highest court. *Ross v.*

*Petsock*, 868 F.2d 639, 641 (3d Cir. 1989)

**IV.    Eligibility and Grounds For Relief**

This habeas petition, filed August 24, 2000,  is governed by 28 U.S.C. §2254(d), as amended

by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *Lindh  v. Murphy*, 521 U.S. 320

(1997). The statute, as amended, provides in pertinent part:

> (d) An application for a writ of habeas corpus on  behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of the
> > evidence presented in the State Court proceeding.

28 U.S.C.§2254(d); *Williams v. Taylor*,  529 U.S. 362 (2000).

**Petitioner's Claim A**:    alleged  violation  of due  process  rights based  on  the

Commonwealth's  knowing use of  false testimony offered by Agent Russell Thomas

The Superior Court's decision  that the uncorrected, false testimony of Commonwealth

witness Russell Thomas constituted harmless error was neither  contrary to, nor an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States.  Consequently,  Romansky is not entitled to federal habeas relief.

Thomas, an agent of the Office of Attorney General, testified in the Wayne County trial that Thomas Smithers voluntarily agreed to wear a recording device and engage in conversation with Romansky concerning the circumstances of the fire in the state police vehicle impoundment.  In these secretly taped conversations,  Romansky made admissions against his own interest. These tapes were played to the jury.  Agent Thomas also testified that the statewide investigating grand jury had not recommended the filing of charges against Smithers.

Agent Thomas's testimony was false in this regard:  the Third Statewide Investigating Grand Jury (the same grand jury which had recommended charging Romansky in both Pike and Wayne Counties)  had also  recommended that charges be filed against Smithers in Pike County ; these recommended charges  were not filed in exchange for Smithers' cooperation in the investigation of Romansky. The prosecutor made no attempt to elicit information so as to  correct Agent Thomas's testimony.[1]

The post conviction court found Thomas's  testimony not material to the issue of Romansky's guilt or innocence. The court found significance in the fact that Smithers was not charged in Wayne County (the situs of the charges under review) and that Smithers  did not engage in criminal acts in  Wayne County, but acted only as an informant.

---

[1]These circumstances are discussed more fully in *Commonwealth v. Romansky*, 702 A. 2d 1064 (Pa. Super. 1997) which pertains to Romansky's conviction in the Court of Common Pleas of Pike County on related charges.

6

In reviewing the denial of post conviction relief, Superior Court found the false testimony material, but found the error harmless..

> [Romansky's] role in the arson and related crimes was clearly established through his own admission in the wiretapped conversations. Although Smithers was the party participating in the wiretap, the testimony relating to the underlying deal which the prosecution had reached with him, had no bearing on [ Romansky's] ultimate admissions. Although we cannot condone the prosecution's conduct in concealing this information, we cannot find that the false information contributed to the verdict.

*Commonwealth v. Romansky*, slip op. at 8 (No.1538 EDA 1999)(Pa. Super., Dec. 17, 1999).

In finding the uncorrected, false testimony to constitute harmless error, Superior Court cited *Commonwealth v. Weisman*, 401 Pa. Super. 62, 584 A. 2d 980, 985 (1990), a case where similar circumstances were at issue. *Weisman* defines harmless error as occurring "where the properly admitted evidence is so overwhelming and where the prejudicial impact of the error is so slight that it can be concluded beyond a reasonable doubt that the error could not have contributed to the verdict," *Weisman, supra* at 70, 584 A.2d at 985, citing *Commonwealth v. McGrogan*, 523 Pa. 614, 568 A.2d 924,930 (1990) In *McGrogan*, the Pennsylvania Supreme Court clearly stated that Pennsylvania's doctrine of harmless error follows *Delaware v. Van Arsdall*, 475 U.S. 673 (1986), whose thrust in "determining harmless error is to ascertain the impact of error upon the verdict." 523 Pa. at 628, 568 A. 2d at 930. For this reason, the Pennsylvania court's *decision* that the error was harmless was not "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,." 28 U.S.C.§2254(d); *Williams v. Taylor*, 529 U.S. 362 (2000), and Romansky is entitled to no relief.

In a separate opinion, differing in the reasoning, but concurring in the result, one member of the *Romansky* panel wrote to explicate that under federal law a finding of materiality in the context of a *Brady* violation could never be equated to harmless error, specifically citing to *Kyles v. Whitley*, 514 U.S. 419 (1995). *Commonwealth v. Romansky*, No. 1538 EDA 1999 (Pa. Super. December 17, 1999) Lally-Green, J, concurring in the result. As Judge Lally-Green observed, *Kyles* articulates that the touchstone of materiality is the reasonable probability of a different result when the acts of the prosecutor undermine confidence in the verdict. See also *United States v. Bagley*, 473 U.S. 667 (1985) (evidence is material *only* where reasonable probability exists that disclosure to defense would have resulted in different verdict; reasonable probability is probability sufficient to undermine outcome).

Judge Lally-Greene concluded, "Under these standards, I would hold that Agent Thomas's testimony was not material to the outcome of the case, because there was no reasonable probability that the result would have been different if he had testified truthfully regarding Thomas Smithers' immunity agreement with the prosecution." *Commonwealth v. Romansky*, No. 1538 EDA 1999 (Pa. Super. December 17, 1999), Lally-Green, J, concurring in the result, p. 2.

Federal habeas precludes relief when *the decision* under review comports with clearly established federal law as determined by the United States Supreme Court.28 U.S.C.§2254(d); *Williams v. Taylor*, 529 U.S. 362 (2000). In Romansky's case the majority of the panel found the challenged testimony "material," but harmless. A finding of materiality would have required a different result under clearly established federal law as determined by the United States Supreme Court. The concurring opinion, applying the definition of materiality as set out in *Kyles v. Whitley*, 514 U.S. 419 (1995), reached the same ultimate decision as did the majority panel, *i.e*,. that the

challenged testimony did not undermine confidence in the verdict. After all, whatever Smithers' relationship with the government, Romansky implicated himself through his own admissions.

Because in analyzing a claim under the federal habeas statute, we look to the ultimate decision to see that it comports with clearly established federal law as determined by the United States Supreme Court, Romansky cannot prevail on this claim. He is not entitled to relief simply because a majority of the Superior Court panel defined "material" in a manner at odds with clearly established Supreme Court precedent. The decision reached by both the "erring" panel and the concurring opinion is the same and comports with clearly established Supreme Court precedent; namely, that the challenged testimony did not undermine confidence in the verdict and that no relief is required.

**Petitioner's Claim B:** alleged ineffective assistance of trial counsel for failure to move to suppress evidence obtained through alleged violation of Pennsylvania's Wiretap Act section

Counsel is presumed effective and the petitioner bears the burden of demonstrating otherwise. *Strickland v. Washington,* 466 U.S. 668 (1984); *Commonwealth v. Pierce*, 515 Pa. 153, 161, 527 A.2d 973, 976-77(1987)(Pennsylvania standard constitutes "same rule" as *Strickland*). Ineffective assistance claims are judged by reference to whether counsel's performance fell below an objective standard of reasonableness and whether counsel's conduct so prejudiced the defendant that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686-88. Counsel cannot be found ineffective for failing to raise a meritless claim. *United States v. Sanders,* 165 F. 3d 248,253 (3d Cir. 1998).

In affirming the denial of post conviction relief, Superior Court found that on May 23, 1986, Romansky's trial counsel *did* file a motion to suppress evidence obtained through consensual

9

recordings of conversations between Thomas Smithers and Romansky. A presumption of correctness attaches to state court findings. 28 U.S.C. § 2254(e)(1); *Todaro v. Fulcomer*, 944 F. 2d 1079 (3d Cir. 1991). That being the case, the claim that trial counsel was ineffective for failing to file such a suppression motion is untenable in this setting.

The post conviction court, apparently unaware that trial counsel had filed a suppression motion, proceeded with an analysis of whether the allegedly foregone act had arguable merit. *Commonwealth v. McMaster*, 666 A.2d 724 (Pa. Super. 1995)(first step in analysis of ineffective assistance claim is whether underlying claim had arguable merit). The post conviction court found no merit to the claim that Smithers' taped conversations with Romansky should have been suppressed because neither the Attorney General nor his designee *personally* interviewed Smithers to determine the voluntariness of his consent. Such a construction of Pennsylvania's Wiretapping and Electronic Surveillance Control Act, 18 Pa. C. S. §5701 *et seq.*, was not announced until some six months after Romansky's Wayne County conviction was final. *See Commonwealth v. Clark*, 374 Pa. Super. 308, 542 A.2d 1036 (June 6, 1988), (§5704(2)(ii) of Wiretap Act, 18 Pa. C. S. §5704(2)(ii) construed to require Attorney General or designee to *personally* interview consenting party and *personally* make determination as to the voluntariness of consent).

Pennsylvania law holds that counsel will not be found ineffective for failing to foresee developments in the law. *Commonwealth v. Triplett*, 476 Pa.91, 381 A.2d 877 (1977) *Commonwealth v. Todaro*, 549 Pa. 545, 701 A. 2d 1343 (1997)(in judging merits of ineffectiveness claim, must determine status of law at time of trial). *Stickland* states that a court is to "judge the reasonableness of counsel's challenge conduct on the facts of the particular case, *viewed as of the time of counsel's conduct.*" *Strickland v. Washington*, 446 U.S. 668,690 (1984) (emphasis supplied).

The state court's denial of this claim of ineffective assistance, based on the facts and law as they existed at the time of the challenged conduct, was not contrary to, nor an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Therefore, Romansky is entitled to no relief on this claim..

## IV.    Recommended Disposition

Respondents respectfully request this petition for a writ of habeas corpus be summarily dismissed without an evidentiary hearing.

Respectfully submitted

D. MICHAEL FISHER
Attorney General

By: _____

ANDREA F. McKENNA
Senior Deputy Attorney General
(Attorney I.D. #39717)

Office of Attorney General
Appeals & Legal Services Section
16th Floor, Strawberry Square
Harrisburg, PA  17120
(717) 787-6348

Dated:  January 31, 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN L. ROMANSKY,     :
    Petitioner    :  Civil Action No. 1:CV-00-1520
           :
  v.        :
           :  (Judge Rambo)
CONNER BLAINE, JR.,     :
    Respondent    :

**APPENDICES**

1        REINHARD WAGNER, COURT CRIER:  Court is now

2   in session.  You may be seated.

3        THE COURT:  Good afternoon.  All right, we have

4   the jury, all parties, the defendant.  Proceed.

5        MR. ABELN:  Good afternoon, your Honor.

6        I call Russell W. Thomas to the stand.

7                            ---

8        RUSSELL W. THOMAS, called on behalf of the

9   Commonwealth, having been duly sworn, was examined and testified

10  as follows:

11       LINDA SODEN, COURT CLERK:  Please state your

12  name.

13       THE WITNESS:  Russell W. Thomas, T-h-o-m-a-s.

14                  DIRECT EXAMINATION

15  BY MR. ABELN:

16  Q    Your occupation, sir?

17  A    Special Agent, Office of Attorney General, Bureau of

18  Criminal Investigation.

19  Q    What is your current assignment?

20  A    The last two and a half years I've been working an auto

21  theft investigation here in Honesdale, Wayne County, with the

22  State Police.

23  Q    Is that Troopers Novatnak and Golden?

24  A    Yes, sir, and also Special Agent Farcus from my office.

25  Q    Do you know the defendant in this case?

1   A    Yes, sir, I do.

2   Q    Would you point him out, please.

3   A    Steven Romansky, seated there at the table.

4   Q    Do you know Thomas Smithers?

5   A    Yes, I do.

6   Q    When Mr. Romansky's Bronco was seized, did you have an

7   opportunity through your investigation to find out where that

8   Bronco had been inspected?

9   A    Yes, sir, I did.

10  Q    Where was it?

11  A    At the garage owned by Thomas Smithers.

12  Q    Did you have an opportunity to review the inspection

13  records pertinent to this Bronco?

14  A    Yes, sir.

15  Q    Did you have an opportunity to interview Thomas Smithers?

16  A    Yes, sir.

17  Q    What did he tell you relative to the Bronco and the

18  inspection stickers?

19               MR. BORDEN:  Objection, hearsay.

20               Could we approach the bench?

21               [The following discussion took place at side

22  bar.]

23               MR. BORDEN:  I didn't know that Mr. Thomas was

24  going to be a witness.  I don't know where you're going, but

25  I would ask for an offer of proof.

1          MR. ABELN:  I intend to offer Mr. Thomas as the

2    person who was involved in the consentual interception to

3    identify the fact that they occurred, that he reviewed the

4    tapes, and that the transcripts were done correctly.  I also

5    want to have him testify to the fact that -- we entered into

6    a plea agreement -- we entered into an agreement with Mr.

7    Smithers during the course of our investigation of Mr. Romansky,

8    that Mr. Smithers would agree to wear a consentual inter-

9    ception device.

10         Mr. Thomas was contacted by Mr. Smithers, and I

11   want to lay the background as to why he was contacted.

12         Mr. Smithers is present in the courtroom.  I

13   anticipate that he is going to be -- that counsel is going to

14   try to discredit Mr. Smithers as to his involvement in criminal

15   activity.

16         I would ask Mr. Thomas to testify as to his

17   investigation of the inspection station, his discussions with

18   Mr. Smithers, and his decision not to pursue any further

19   criminal investigation on behalf of Mr. Smithers.

20         MR. BORDEN:  I view the situation where I do not

21   object to his testifying yes, there was a consentual tape; yes,

22   it was with Mr. Smithers, and that's it.  As far as going into

23   the criminal background of Mr. Smithers and going through

24   inspection stations and everything else I feel is totally

25   irrelevant and highly prejudicial.

1          MR. ABELN:  It's pertinent, your Honor, in two

2  ways:  One is pertinent to the fact that Mr. Smithers did

3  inspect, or his station did inspect, the Bronco.  Secondly, it

4  goes to the complete investigation that was conducted in this

5  particular charge.

6          MR. BORDEN:  This is not a car theft case.  This

7  has nothing -- we aren't here to prove the Bronco was stolen

8  or not or anything about it.

9          MR. ABELN:  I'm not going to offer any evidence

10  through Mr. Thomas or Mr. Smithers or anybody else as to the

11  course of this car, only that Mr. Thomas had investigated Mr.

12  Smithers and there was no intention on our office whatsoever

13  to prosecute this individual at any time.

14          THE COURT:  Your objection is overruled.  But

15  I caution you, counselor, to be extremely careful in your

16  questions, and your witness better be extremely careful in

17  his answers too.

18          MR. ABELN:  As to what, sir?

19          THE COURT:  The whole background of this.  If

20  it's simply a matter of a slight background, that's fine, but

21  if you're going into a car theft type --

22          MR. ABELN:  No, I am not, sir.

23          THE COURT:  All right.

24          MR. ABELN:  Only as to Mr. Smithers, himself.

25          MR. BORDEN:  I want the record to reflect that

1  nobody has implied or even suggested that they're going to

2  raise the criminal activity of Mr. Smithers. To put it on at

3  this point in time is indeed premature, and I view it not only

4  as premature, but prejudicial.

5                    THE COURT: Your objection is noted.

6                    MR. BORDEN: As far as my objection on hearsay

7  grounds, which is outstanding --

8                    THE COURT: No, it's not outstanding, I overruled

9  it.

10                    [Discussion at side bar concluded.]

11  BY MR. ABELN:

12  Q    In relation to the inspection records of the Bronco, the

13  defendant's Bronco, did Mr. Smithers inspect that Bronco?

14  A    No. A mechanic employed by him at his station did that,

15  according to the records, and according to what he told me.

16  Q    Was Mr. Smithers called to the grand jury as a witness

17  in regards to the Romansky Bronco?

18  A    Yes, he was.

19  Q    Did the grand jury make recommendations to prosecute

20  individuals involved in an overall -- the activities of your

21  investigation?

22                    MR. BORDEN: Please note my objection.

23                    THE COURT: Overruled.

24  A    Yes, sir, the grand jury made recommendations to

25  prosecute various individuals.

FORM OR-325    REPORTERS PAPER & MFG. CO.    800-626-6313

1    BY MR. ABELN:

2    Q    Was any such recommendation made in regard to Thomas

3    Smithers?

4    A    None whatsoever.

5    Q    Were any of Tom Smithers' cars ever confiscated and

6    impounded behind the Pennsylvania State Police Barracks in

7    Honesdale?

8    A    No, sir, none.

9    Q    Did you have an opportunity to discuss with Tom Smithers

10   Steven Romansky at a later time after his grand jury

11   appearance?

12   A    Yes, sir, on several occasions.

13   Q    How did it come about that Mr. Smithers became involved

14   in a consentual interception between Mr. Romansky and Mr.

15   Smithers?

16   A    Mr. Smithers contacted me on several occasions after he

17   left the employ of the Police Department and became a private

18   detective, and informed me confidentially about the activities

19   of Mr. Romansky, and --

20              MR. BORDEN:  Objection.  May we approach the

21   bench, please?

22              [The following discussion took place at side

23   bar.]

24              MR. BORDEN:  At this time I will make a motion

25   for a mistrial.  The Court cautioned counsel about this

1  witness.  He is now indicating he was contacted several times

2  about the activities of my client, not an activity, and it has

3  totally tainted the jury, and I'm asking for a mistrial.

4            MR. ABELN:  Your Honor, he said nothing about

5  criminal involvement.  The activities is what his involvement

6  was personally.

7            I will limit my -- that specifically to that

8  question and rephrase the question, if counsel would like.

9            THE COURT:  Your motion for mistrial is denied.

10            You're playing with fire, though.

11            [Discussion at side bar concluded.]

12  BY MR. ABELN:

13  Q    Did agents of our office, of the office of Attorney

14  General, supervise the consentual interceptions between Mr.

15  Smithers and the defendant?

16  A    Yes, sir.

17  Q    How many --

18  A    On three occasions.

19  Q    Were transcripts made of these conversations?

20  A    Yes, sir, there were.

21  Q    Was a composite tape made that condensed these conver-

22  sations and limited them to the pertinent statements as it

23  pertains to this arson investigation?

24  A    Yes, sir, such a composite was made.

25  Q    Did Mr. Smithers voluntarily agree to do -- participate

1  in these interceptions?

2  A    Yes, sir.  He contacted me initially in early December

3  and voluntarily requested to engage in this consentual

4  interception.  I thereafter contacted you, outlined the facts,

5  and received the approval as required by the statute.

6  Q    Did you participate in my conversation with Mr. Smithers?

7  A    Yes, sir, I did.

8  Q    Is Mr. Smithers here today?

9  A    Yes, sir, he is.

10               MR. ABELN:  Cross-examine.

11                    CROSS-EXAMINATION

12  BY MR. BORDEN:

13  Q    Mr. Thomas, so that the record is clear, Mr. Romansky,

14  being my client, has never been convicted of stealing a car,

15  has he?

16               MR. ABELN:  Your Honor?

17               MR. BORDEN:  Has he or hasn't he?

18               THE COURT:  Just a second.

19               MR. ABELN:  Nothing, your Honor.

20               THE COURT:  Okay.  Answer the question.

21  A    No, sir, he's never been convicted of stealing a car,

22  to my knowledge.

23  BY MR. BORDEN:

24  Q    Has he ever been convicted of receiving a stolen car,

25  to your knowledge?

1    A    To my knowledge, he has not been convicted of receiving

2    a stolen car.

3    Q    Mr. Thomas, you are not denying the fact, are you, that

4    a deal was cut with Tom Smithers?  When I say the term deal I

5    mean in exchange for him doing certain things for you, you

6    would agree to do certain things for him.  You don't deny that,

7    do you?

8    A    Well, I would deny that there was a deal cut.  What I

9    would explain is that after the first consentual interception,

10   which occurred, I believe, on the 19th of December, 1985,

11   there arose a question in Mr. Smithers' mind about the

12   propriety of his inspection records and his possible liability

13   with regard to those records.  He consulted with his attorney,

14   Mr. Westervelt, who then spoke to our deputy attorney general,

15   Mr. Abeln, and Mr. Abeln agreed with Mr. Westervelt and Mr.

16   Smithers that the propriety of his inspection records was not

17   the focus of our investigation, and that we would agree that

18   if the records were not proper or in order that there would be

19   no prosecution initiated against Mr. Smithers for those what

20   would be relatively minor infractions.

21   Q    I agree with you till you got to the very end.  It was

22   agreed that Thomas Smithers would not be prosecuted.  When

23   we're talking about altering official documents, you've been

24   involved in enough of these, what kind of charge is that?

25   A    The possible maximum charge could be tampering with

1  public records.

2  Q      And that is?

3  A      What we were talking about were inspection records that

4  Mr. Smithers indicated were handled by various employees of

5  his, sometimes with his knowledge and sometimes without his

6  knowledge --

7  Q      Mr. Thomas, what is the penalty for tampering with

8  official records, if you know?

9  A      I'm not sure, sir.  I'm not certain of the exact penalty.

10  I believe it's a misdemeanor of the first degree.

11  Q      Thank you, sir.

12              MR. BORDEN:  No further questions.

13                    REDIRECT EXAMINATION

14  BY MR. ABELN:

15  Q      Was Mr. Smithers ever prosecuted by anybody for tampering

16  with public records?

17  A      Not to my knowledge, sir.

18  Q      Do you have any evidence that would -- today -- that would

19  show that he had tampered with public records?

20  A      No.  To my knowledge, he has no criminal record or that --

21  to my knowledge, he has not tampered with any public records

22  either.

23  Q      You've investigated --

24  A      It was indicated that there might be some allegation --

25  this was Mr. Smithers' concern, was that during the course of

1  these consentual interceptions that Mr. Romansky might allege

2  or threaten to expose him in some regard with regard to these

3  inspection records.

4  Q     Did you investigate that?

5  A     Yes, sir.

6  Q     As a police officer and as a special agent of the Bureau

7  of Criminal Investigation, Office of Attorney General, do you

8  have any evidence whatsoever that Mr. Smithers could be arrested

9  for tampering with public records?

10 A     None, sir.

11            MR. ABELN:  That's all.

12            MR. BORDEN:  No further questions.

13            THE COURT:  Thank you.

14            THE WITNESS:  Yes, sir, thank you.

15                    . . .

16            REINHARD WAGNER, COURT CRIER:  Court recess

17 for ten minutes.

18            [A recess was taken.]

19            THE COURT:  We have the defendant here.  The

20 jury is still out, and it's my understanding that you want the

21 standard charge as to the failure of the defendant to take the

22 stand.  Is that correct?

23            MR. BORDEN:  That's correct, sir.

24            THE COURT:  All right.  That's granted.

25            MR. ABELN:  No objection, your Honor.

1        MR. BORDEN:  In addition, your Honor, I would

2  like the record to reflect the fact that the defense has

3  proposed points for charge dealing with an expert witness.

4  It was requested that Nos. 3, 5, 6, 7, and 8, if you read to

5  the jury -- it's my understanding that that request has been

6  denied.

7        THE COURT:  We will cover it generally in the

8  general charge of the Court as to an expert witness, but not

9  specifically as you outlined it.

10       MR. BORDEN:  Thank you, sir.  I would submit

11  the points.

12       THE COURT:  Thank you.

13       Bring the jury in, please.

14       [The jury enters the courtroom.]

15             ---

16       I hereby certify that the proceedings and

17  evidence are contained fully and accurately in the notes

18  taken by me at the trial in the above matter; and that the

19  foregoing is a true and correct transcript of the same.

20

21        *Sheryl Johnson*

           SHERYL JOHNSON

22

23

24

25

FORM OR-325    REPORTERS PAPER & MFG. CO.    800-626-6313

**PC-198**
Rev. 7-89

# MOTION FOR POST CONVICTION COLLATERAL RELIEF

received
9-18-95

| COMMONWEALTH OF PENNSYLVANIA | COURT AND DOCKET NUMBERS |
|---|---|

VS

STEVEN L. ROMANSKY

#42 ~ 1986 Cr

(Name of Defendant)                    To be filled in by Clerk of Court

SEP. 18  11 49 AM '95
WAYNE COUNTY
PROTHONOTARY AND
CLERK OF COURTS

---

**NOTE: List below those informations or indictments & offenses for which you have not completed your sentence.**

INFORMATION OR INDICTMENT NUMBERS:

No. 42 – 1986 – Criminal

---

I WAS CHARGED WITH THE FOLLOWING CRIMES:

Count #1 – Arson/Endangering Persons

Count #2 – Arson/Endangering Property

Count #3 – Reckless Burning or Exploding

Count #4 – Causing or Risking Catastrophe

Count #5 – Terroristic Threats

Count #6 – Tampering With Evidence

Count #7 – Obstruction of the Administration of Law

---

DISTRICT ATTORNEY'S COPY

**1. MY NAME IS:**

STEVEN L. ROMANSKY

**2. I AM NOW**

(A) ☐ On Parole   (B) ☐ On Probation   (C) ☒ Confined in ___S.C.I. Huntingdon___

**3.**

I WAS SENTENCED ON ___February 10___, 19 ___87___ TO A TOTAL TERM

OF ___4 - 10 years___, COMMENCING ON ___February 15___, 19 ___86___ · BY

JUDGE(S) ___Robert J. Conway___

FOLLOWING A:   ☒ Trial by jury          ☐ Plea of guilty

☐ Trial by a judge without a jury   ☐ Plea of nolo contendere

**4. I AM ELIGIBLE FOR RELIEF BECAUSE OF:**

☒ (I) A violation of the constitution of Pennsylvania or laws of this Commonwealth or the constitution of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

☒ (II) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

☐ (III) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused an individual to plead guilty.

☐ (IV) The improper obstruction by Commonwealth officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

☒ (V) A violation of the provisions of the constitution, law or treaties of the United States which would require the granting of federal habeas corpus relief to a state prisoner.

☐ (VI) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and that would have affected the outcome of the trial if it had been introduced.

☐ (VII) The imposition of a sentence greater than the lawful maximum.

☐ (VIII) A proceeding in a tribunal without jurisdiction.

5. THE FACTS IN SUPPORT OF THE ●EGED ERROR(S) UPON WHICH THIS ●TION IS BASED ARE AS FOLLOWS: (State facts clearly and fully; argument, citations, or discussions of authorities shall not be included.)

(A) I know the following facts to be true of my own personal knowledge:

1.)    Petitioner was denied his State and Federal Constitutional rights to effective assistance of counsel and due process of law to a fair  trial when counsel  failed to adequately consult with petitioner prior to trial, discuss  the possibilty of  obtaining charcter  witnesses and failure to investigate the possibilty of charcter witnesses and for failing to present charcter witnesses at trial.

     Petitioner reserves the right to raise additional issues for PCRA relief upon receipt of a full record.

(B) The following facts were made known to me by means other than my own personal knowledge (Explain how and by whom you are informed):

(C) In the event my appeal is allowed as requested under #4, the following are the matters which I intend to assert on that appeal (Specify the matters to be asserted if appeal is allowed)

     All the foregoing issues

6. SUPPORTING EXHIBITS

(A)  In support of this motion I have attached as exhibits:

☐  Affidavits                    [Exhibit(s) No. _____]

☐  Records                       [Exhibit(s) No. _____]

☒  Other Supporting Evidence     [Exhibit(s) No. _____]

(B)  I have not attached any affidavits, records or other supporting evidence because

_____

_____

**Petitioner is requesting an evidentiary hearing.**

_____

7. I HAVE TAKEN THE FOLLOWING ACTION(S) TO SECURE RELIEF FROM MY CONVICTION(S) OR SENTENCE(S):

(A)  Direct Appeal        (IF "YES," name the court(s) to which appeal(s) was/were taken, date, term and number, and result.)

[X] YES    [ ] NO

Direct appeal Commonwealth V. Romansky No. 00706/Ph1/1987

affirmed, November 24, 1987.  No allocator filed.

(B)  Previous proceedings in the courts of the Commonwealth of Pennsylvania

[ ] YES   [X] NO     (IF "YES," name the type of proceedings (such as habeas corpus, etc.) — including former proceedings under the Post Conviction Hearing Act the Court(s) in which petition(s) was/were filed, date, term and number, and result, including all appeals.)

_____

_____

(C)  Habeas Corpus or other petitions in Federal Courts

[ ] YES   [X] NO     (IF "YES," name the district in which petition(s) was/were filed, date(s), Court Number—civil action or miscellaneous, and result, including all appeals.)

_____

_____

(D)  Other legal proceedings

[ ] YES   [X] NO     (IF "YES," give complete details—type of action, court in which filed, date, term and number, and result, including all appeals.)

_____

_____

8. FOLLOWING MY ARREST, I WAS REPRESENTED BY THE FOLLOWING LAWYER(S):  (Give the lawyer's name and the proceeding at which he represented you.)

Randolph T. Borden  Trial/Direct Appeal Superior Court.

9. THE ISSUES WHICH I HAVE RAISED IN THIS MOTION HAVE NOT BEEN PREVIOUSLY LITIGATED AND ONE OF THE FOLLOWING APPLIES:

☒  .  (I)  The allegation of error has not been waived.

☒  (II)  If the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual."

☒  "(III)  If the allegation of error has been waived, the waiver of the allegation of error during pretrial, trial, post-trial or direct appeal proceedings does not constitute a state procedural default barring federal habeas corpus relief."

☒  The failure to litigate this issue(s) prior to or during trial or on direct appeal could not have been the result of any rational strategic or tactical decision by counsel.

10. BECAUSE OF THE FOREGOING REASONS, THE RELIEF WHICH I DESIRE IS:

(A) ☒ Release from custody and discharge

(B) ☒ A new trial

(C) ☒ Correction of sentence

(D) ☐ Other relief (specify): _____

11.  (A) I  am ☐  ABLE    ☒ NOT ABLE to pay the costs of this proceeding.

I have $ _____ 10.00 _____ in my prison account.

(B) My other financial resources are: _____

DISTRICT ATTORNEY'S COPY

12. (A) ☒ I do not have a lawyer and I ⬤ without financial resources or otherwise ⬤ able to obtain a lawyer

    (1) ☐ I request the court to appoint a lawyer to represent me.

    (2) ☒ I do not want a lawyer to represent me.

(B) ☐ I am represented by a lawyer. (Give name and address of your lawyer.)

_____

_____

_____

*Steve Romansky*
(Signature of Defendant)

# UNSWORN DECLARATION

I, __STEVEN L. ROMANSKY__ do hereby verify that
           Your Name

the facts set forth in the above motion are true and correct

to the best of my personal knowledge or information and

belief, and that any false statements herein are made sub-

ject to the penalties of Section 4904 of the Crimes Code

(18 Pa. C.S. § 4904), relating to unsworn falsification to

authorities.

*Steve Romansky*
Signature of Defendant

No Notary
Required

| COMMONWEALTH OF PENNSYLVANIA | IN THE CRIMINAL COURTS OF THE COUNTY OF |
|---|---|
| **VS** | **WAYNE** |
| STEVEN L. ROMANSKY | Criminal Action No. ___42___ of ___February 15___ 19_86_ |
| (Name of Defendant) | |

## ORDER

AND NOW this _____ day of _____, 19_____ Upon consideration of the foregoing mot

1. ☐ The motion is returned to defendant for amendment as follows, such amendment to be made on or before

_____, 19 _____

2. ☐ A rule is granted upon the Commonwealth of Pennsylvania to show cause why a hearing should not be granted. Th

rule is returnable on or before _____ 19 _____

3. ☐ The request to proceed as a poor person, without the payment of costs, is ☐ granted ☐ denied.

4. ☐ Upon finding that defendant is unable to obtain a lawyer _____ Esq., is appoint
ed to represent him.

5. ☐ The Clerk of this Court is ordered and directed to do the following forthwith:

(a) To serve a copy of this motion and this order upon the District Attorney of _____ Count

(b) To send a copy of this motion and this order to _____ Esq., the lawyer for the defendan

(c) To send a copy of this order to the defendant.

6. ☐

IN THE COURT OF COMMON PLEAS OF THE 22ND JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA
COUNTY OF WAYNE

|  |  |  |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| | : | |
| -VS- | : | NO. 42-1986-CRIMINAL |
| | : | |
| STEVEN L. ROMANSKY, | : | |
| | : | |
| PETITIONER | : | |

## PETITIONER'S AMENDED POST-CONVICTION PETITION

### I

### INTRODUCTION

1.    On September 18, 1995 Petitioner Steven L. Romansky filed his first petition for post-conviction relief pursuant to the Post - Conviction Relief Act, 42 Pa. C.S.A. § 9541 et. esq. This amended PCRA petition is respectfully submitted to replace the original pro se petition.

### II

### PROCEDURAL HISTORY

2.    On September 17, 1986, following a jury trial, Romansky was found guilty of: Arson Endangering Property, 18 Pa. C.S. § 3301 (c); Reckless Burning or Exploding 18 Pa. C.A. § 3301 (d);

Causing or Risking a Catastrophe, 18 PA. C.S. § 3301 (b); and Tampering with Evidence, 18 Pa. C.S. § 4910 (1).

3. Romansky filed post verdict motion seeking arrest of judgment on September 25, 1986, and file supplemental motions on October 3, 1986. The lower court granted Romansky's motion to arrest judgment as to the conviction on the charge of Arson Endangering Property, 18 Pa. C.S. § 3301 (c).

4. On February 10, 1987 the Honorable Robert J. Conway sentenced Romansky to a term of four years to ten years.

5. On November 24, 1987 the Pennsylvania Superior Court affirmed Romansky's conviction and sentence at No. 00706 Philadelphia 1987. No petition for allowance of appeal in the Supreme Court was filed.

6. On September 18, 1995 Romansky filed his first **pro se** petition seeking post-conviction relief. Because court-appointed counsel failed to amend his petition and proceed with resolution of this matter, Romansky has elected to proceed **pro se** and files this amended PCRA petition.

(2)

## III

<u>ISSUES PRESENTED FOR REVIEW</u>

7.    Whether petitioner was denied his Constitutional right to effective assistance of counsel guaranteed by the Sixth Amendment, when counsel failed to raise a suppression issue based on Commonwealth's failure to obtain informant's voluntary consent prior to each interception in violation of wiretap act 18 Pa. C.S.A. § (2) (ii).

8.    Whether petitioner was denied his Constitutional right to effective assistance of counsel guaranteed by the Sixth Amendment when counsel failed to raise a suppression issue based on a Fourth Amendment violation (entry onto petitioner's home without a search warrant)and use of illegally obtained evidence.

9.    Whether petitioner was denied his State and Federal Constitutional right to due process when the Commonwealth's principal witness (Russell W. Thomas), Special Agent for the Attorney General's Office committed perjury; when the Commonwealth knowingly utilized false testimony to obtain petitioner's conviction; and when the Commonwealth withheld from petitioner vital impeachment evidence and information regarding a deal with informant Thomas Smithers.

10.    Whether petitioner was denied his Constitutional right to

(3)

effective assistance of counsel guaranteed by the Sixth Amendment when counsel failed to conduct independent investigation of the Commonwealth's informant, Thomas Smithers, his criminal background, his prior testimony to the grand jury, and his immunity agreement with the prosecution.

## IV

## FACTUAL ALLEGATIONS

11.   On May 15, 1985, the third state-wide investigating grand jury recommended that Thomas Smithers be charged with a number of vehicle-related charges. On December 19, 1985, a body wire was placed on Smithers under coercion and duress by Special Agent Russell W. Thomas.

12.   At no time did Deputy Attorney General Gregory B. Abelin personally interview informant, Thomas Smithers as required by the Wiretap Act.  There exist no consent form signed by Smithers as required by the Wiretap Act.  Abelin delegated such responsibilities to Special Agent Russell W. Thomas to insure Smithers' consent.

13.   On December 19, 1985, under the direction of Special Agent Russell W. Thomas, Smithers entered the Romansky home to surreptitiously record their conversation. This recording was done in absence of a search warrant and consent.

(4)

14.    During petitioner's trial, Special Agent Russell W. Thomas testified that informant Thomas Smithers was <u>not</u> recommended for criminal charges by the investigating grand jury. Deputy Attorney General Gregory B. Amelin knew that Thomas' testimony was false yet failed to take any action whatsoever to correct it.

15.    During petitioner's trial, Deputy Attorney General, Gregory B. Abelin concealed from the defense a written agreement (that Abelin himself had written) under which Smithers would not be prosecuted if he cooperated with the Commonwealth.

16.    Petitioner Steven Romansky discovered the agreement between Abelin and Smithers in October of 1996. Prior to this discovery, Abelin never revealed to petitioner or defense counsel the existence of this agreement.

17.    Defense counsel Randolph T. Borden failed to adequately prepare for trial by thoroughly investigating the credibility of Smithers and Russell W. Thomas.

### V

### ELIGIBILITY FOR RELIEF

18.    Romansky is entitled to post-conviction relief because:

    a)  he is currently serving a sentence of imprison-
       ment, probation and parole for the crim;

b)  the conviction and sentence resulted from:

1.  A violation of state and federal consti-
tutions which, in the circumstances of
this case, so undermined the truth-deter-
tion of guilt or innocence could have
taken place;

2.  ineffective assistance of counsel which,
in the circumstance of this case, so
underminded the truth-determining process
that no reliable adjudication of guilt or
innocence could have taken place;

3.  the unavailability at the time of trial
of exculpatory evidence that has subes-
quently become available and would have
changed the outcome of the trial if it
had been introduced;

c)  the allegations of error have not been previ-
ously litigated or waived;

d)  the failure to litigate the issue prior to or
during trial, and on direct appeal could not
have been the result of any rational, strate-
gic or tactical decision by counsel.

VI

JURISDICTION

19.  This Court has jurisdiction of this matter pursuant to 42
Pa. C.S.A. § 9545.

20.  This petition for post - conviction relief is Romansky's
first post-conviction petition and was filed within one year of
the effective date of 42 Pa. C.S.A. § 9545.

(6)

21. Romansky request an evidentiary hearing at which the following witnesses will be requested to testify: (a) Gregory B. Abelin, Deputy Attorney General, 1600 Strawberry, Square, Harrisburgh, PA 17120, date of birth not known, will testify as to his knowledge of the Smithers agreement and his conduct at trial. (b) Thomas Smithers, informant, R.D. 1, Cresco, date of birth not known, will testify as to his knowledge of the third state-wide investigating grand jury charging him with a number of vehicle charges and his agreement with Abelin. (c) Randolph T. Borden, attorney, The Borden Professional Building, HC 6 Box 6080 Hawley, 18428 date of birth not known, will testify as to his representation of Romansky. (d) Russell W. Thomas, Special Agent of Attorney General, Bureau of Criminal Investigation, 1600 Strawberry Square Harrisburg, PA 17120, date of birth not known, will testify as to his knowledge of body wire places on informant Thomas Smithers and his trial testimony. (e) Steven L. Romansky 1100 Pike Street, Huntingdon, PA 16654-1112 date of birth, May 13, 1949, will testify as to his knowledge of the body wire taking place in his home. (f) Romansky reserves the right to call additional witnesses not currently known.

(7)

## VII

### RELIEF REQUESTED

22.   Petitioner respectfully request that this court vacate  the
conviction and grant him a new trial.


Date: _January 4, 1999_


Respectfully submitted,

_Steve Romansky_

Steve Romansky

## CERTIFICATE OF SERVICE

STEVEN L. ROMANSKY, the petitioner, hereby certifies that a true and correct copy of this document has been served upon the following persons by first-class mail, postage prepaid:

1.   Andrea F. McKenna, Esquire
     Senior Deputy Attorney General
     Appeals And Legal Services Section
     15 Fl. Strawberry Square
     Harrisburg, PA  17120

2.   James Brown, Esquire
     303 Tenth Street
     Honesdale, PA  18431

3.   Edmund J. Rose
     Prothonotary
     Wayne County Courthouse
     Honesdale, PA  18431

Date: _January 4, 1999_ .          _Steve Romansky_

                                   STEVEN L. ROMANSKY,
                                   1100 PIKE STREET
                                   HUNTINGDON, PA  16654-1112

IN THE COURT OF COMMON PLEAS OF THE 22ND JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA
COUNTY OF WAYNE

COMMONWEALTH OF PENNSYLVANIA    :

                                       :

VS    :

                                       :

STEVEN L. ROMANSKY    :    NO. 42 - 1986 - CRIMINAL

---

OPINION AND FINAL ORDER
PURSUANT TO Pa. R. Crim. P. 1507

---

Before the Court at this time is the Defendant, Steven L. Romansky's Response to the Proposed Dismissal of his Post-Conviction Collateral Relief Petition. This Court entered its Notice of Intent to Dismiss on March 17, 1999 and the Defendant's Objections were filed on April 5, 1999. The Commonwealth supplied it's Answer on April 22, 1999. The Defendant clams three (3) basis for his Objection to Notice of Intent to Dismiss: the perjured testimony of Russell Thomas; the alleged violation of wire tap law; and ineffective assistance of counsel for failure to seek suppression of electronic surveillance evidence. As this Court has previously addresses these same issues, it also relies upon the Opinion of March 17, 1999.

Commonwealth v. Romansky, _____ Pa. Super. _____, 702 A.2d 1064 (1997) makes it clear that the Commonwealth's witnesses,


CERTIFIED FROM THE RECORD
APR 2 8 1999
PROTHONOTARY & CLERK

Russell Thomas and Thomas Smithers failed to disclose the immunity from prosecution agreement with Smithers. The Superior Court found that false testimony to be material because it may have affected the jury's determination of guilt. In that case, the immunity from prosecution was from the same charges faced by the Defendant. The jury's verdict could have been reasonably affected by revealing the Commonwealth's agreement. The Superior Court relied upon Commonwealth v. Hallowell, 477 Pa. 232, 383 A.2d 909 (1978), which stated:

> In *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), the United States Supreme Court confirmed the principle that "a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction." Id. at 269, 79 S.Ct. at 1177. We have similarly held. "It is, of course, an established principle that a conviction obtained through the knowing use of materially false testimony may not stand, a prosecuting attorney has an affirmative duty to correct the testimony of a witness which he knows to be false." *Commonwealth v. Carpenter*, 472 Pa. 10, 372 A.2d 806, 810 (1977) Id., 477 Pa. at 236-37, 383 A.2d at 911 (emphasis added)

However, this Court distinguishes the materiality in this case because Smithers' immunity from prosecution did not involve this case. Here, Smithers was merely the informant, not

perpetrator of these crimes.  As this Court has previously stated, there exists an adequate remedy to the perjury.  As the perjured testimony was not material to the Wayne County charges. Defendant's claim must fail.

Next, Defendant alleges that his claim of ineffective assistance of counsel for failure to explore the "voluntariness" of the wiretap.

The Commonwealth points to the testimony of Special Agent Russell W. Thomas.

Q.  Did Mr. Smithers voluntarily agree to do participate in these interceptions?

A.  (by special Agent Thomas) Yes, sir.  He contacted me initially in early December and voluntarily requested to engage in this consensual interception.  I, thereafter, contacted you, outlined the facts and received the approval as required by the statute. (Notes of testimony, 09/15/86 Pa. 9a, line 25 - page 10a, line 5).

Although the testimony of Smithers is not available, nonetheless, the Court did have evidence upon which it could rely in allowing the testimony.

Further, Defendant faults counsel for not moving to suppress on the basis of failure to obtain a search warrant.  Looking to Commonwealth vs. Schaffer, 547, Pa. 53, 688 A.2d 1143 (1989).  The

Supreme Court found a right to privacy from wiretaps in 1993, six years after Defendant's trial.  Further, the Schaeffer court found a due process violation occurred when the Defendant had a legitimate expectation that his conversation would not be subject to wiretap.  Commonwealth v. McCutchen, 463 Pa. 90, 343 A.2d 669 (1975), did not impose responsibility for future changes in the law upon counsel.  As this Court finds that the Defendant's allegations are meritless, they must fail.

Accordingly, this Court enters the following:

## FINAL ORDER

AND NOW, to wit, this __28th__ day of April, 1999, for the foregoing reasons, it is the **ORDER** of this Court that the Defendants Amended Post-Conviction Petition is **HEREBY DISMISSED**.

The Defendant, Steven L. Romansky, is **HEREBY ADVISED** of his right to appeal from this Final Order to the Superior Court of Pennsylvania within thirty (30) days of the date of this Order.

BY THE COURT:

s/Robert J. Conway

---

ROBERT J. CONWAY
President Judge
22nd Judicial District

cc: Andrea F. McKenna, Esq., Deputy Att'y Gen'l
    Steven L. Romansky
    Linda Malakin, Adm. Ass't

IN THE SUPERIOR COURT OF PENNSYLVANIA
SITTING AT PHILADELPHIA

---

DOCKET No. 01538EDA99

---

COMMONWEALTH OF PENNSYLVANIA,
Appellee

V.

STEVEN L. ROMANSKY,
Appellant

---

APPELLANT'S BRIEF

---

Appeal from the Order of the Court of Common Pleas of Wayne
County  dated  April 28, 1999, at No.  42-1986, denying
appellant's post-conviction petition.

STEVEN L. ROMANSKY (pro se)
1100 Pike Street
Huntingdon, PA 16654-1112

## TABLE OF CONTENTS

I. STATEMENT OF JURISDICTION............................. 1

II. ORDER IN QUESTION................................... 2

III. STATEMENT OF QUESTIONS INVOLVED.................... 3

WHETHER THE PCRA COURT ERRED IN CONCLUDING THAT
THE COMMONWEALTH'S KNOWING USE OF FALSE TESTIMONY
AND CONCEALMENT OF IMPEACHMENT EVIDENCE DID NOT
HAVE A REASONABLE LIKELIHOOD OF EFFECTING THE
JURY'S VERDICT?

WHETHER THE PCRA COURT ERRED IN CONCLUDING THAT
DEFENSE COUNSEL WAS NOT INEFFECTIVE FOR FAILURE
TO SEEK SUPPRESSION OF DEFENDANT'S TAPE-RECORDED
STATEMENTS DUE TO VIOLATION OF PENNSYLVANIA
WIRETAP ACT'S VOLUNTARY CONSENT REQUIREMENT?

IV. STATEMENT OF THE CASE............................. 4

V. SUMMARY OF ARGUMENT.............................. 8

VI. ARGUMENT........................................ 9

APPENDIX A: OPINION AND FINAL ORDER OF JUDGE
            CONWAY, April 28, 1999.

APPENDIX B: DEPUTY ATTORNEYGENERAL ABELN'S AGREEMENT
            NOT TO PROSECUTE THOMAS SMITHERS

## TABLE OF CITATIONS

PAGE

Commonwealth v. Romansky, 702 A.2d 1064 (PA. SUPER. 1997)......    7,9

Kyles v. Whitley, 514 U.S. 419 (1995).........................    10, 12

Napue v. Illinois, 360 U.S. 264 (1959)........................    11

# I.
## STATEMENT OF JURISDICTION

This Honorable Court has jurisdiction of this appeal pursuant to 42 PA.C.S.A. § 742 and Rule 1510 of the Pennsylvania Rules of Criminal Procedure.

II.

ORDER IN QUESTION

AND NOW, to wit, this 28th day of April, 1999, for the foregoing reasons, it is the Order of this Court that the Defendants Amended Post-Conviction Petition is **HEREBY DISMISSED.**

The Defendant, Steven L. Romansky, is **HEREBY ADVISED** of his right to appeal from this Final Order to the Superior Court of Pennsylvania within thirty (30) days of the date of this Order.

BY THE COURT:

**s/ Robert J. Conway**

ROBERT J. CONWAY
President Judge
22nd Judicial District

cc:  Andrea F. McKenna, Esq., Deputy Att'y Gen'l
     Steven L. Romansky
     Linda Malakin, Adm. Ass't

III.

STATEMENT OF QUESTIONS INVOLVED

A.   WHETHER THE PCRA COURT ERRED IN CONCLUDING THAT THE
     COMMONWEALTH'S KNOWING USE OF FALSE TESTIMONY AND
     CONCEALMENT OF IMPEACHMENT EVIDENCE DID NOT HAVE A
     REASONABLE LIKELIHOOD OF EFFECTING THE JURY'S
     VERDICT?

     (Answered By PCRA Court In Negative)

B.   WHETHER THE PCRA COURT ERRED IN CONCLUDING THAT
     DEFENSE COUNSEL WAS NOT INEFFECTIVE FOR FAILURE TO
     SEEK SUPPRESSION OF DEFENDANT'S TAPE-RECORDED
     STATEMENTS DUE TO VIOLATION OF PENNSYLVANIA'S
     WIRETAP ACT'S VOLUNTARY CONSENT REQUIREMT?

     (Answered By PCRA Court In Negative)

IV.

STATEMENT OF THE CASE

A. INTRODUCTION

Appellant Steven L. Romansky ("Romansky") appeals from the order entered by the Court of Common Pleas of Wayne County  denying post-conviction relief, see 42 PA.C.S.A. § 9541 et seq.

Romansky contends that the PCRA Court erred whenit concluded that the Commonwealth's knowing useof false testimony at trial was not material to the guilty verdict. Romansky also contends that defense counsel was ineffective for failure to seek suppression of evidence obtained in violation of Pennsylvania's Wiretap Act.

B. PROCEDURAL HISTORY

On September 25, 1984 a number ofimpounded vehicles parked at the Honesdale State Police Barracks were set afire. Almost two years later, Romansky was convicted by a jury ofa number of criminal charges associated with the fire. On February 10, 1987 Romansky was given consecutive sentences for his convictions.

On November 24, 1987 Romansky's direct appeal was rejected by this Court (at No. 00706 Philadelphia 1987). No petition for allowance of appeal wasfiled with the Supreme Court.

On September 18, 1995 Romansky filed his first petition seeking post-conviction relief. An amended PCRA petition was filed on January 4, 1999 andthe PCRA Court (Honorable Robert Conway, President Judge, presiding) rejected relief on April 28, 1999. This appeal followed.

## C. FACTUAL HISTORY

As acknowledged in the Commonwealth's **Answer** to Romansky's amended PCRA petition, the criminal convictions at issue here stem from a fire that occurred in the vehicle impoundment area of the Honesdale state police barracks on September 25, 1984. (**Answer** at 4). Numerous vehicles were damaged by the arson, including theprincipal target, a 1979 Ford Bronco owned by Romansky. (**Answer** at 5). Thomas Smithers, a former garage owner, subsequently contacted Special Agent Russell Thomas and arranged to wear a recording device while engaging Romansky in conversation. (**Answer** at 5). Based upon these taped conversations, Romansky was charged and convicted of the crimes.

At trial, the following exchange occurred between the prosecuting attorney, Gregory Abeln, Deputy Attorney General, and his witness, Special Agent Russell Thomas, Officer of the Attorney General, Bureau of Criminal Investigation:

> Q   Did the grand jury make recommendations to prosecute individuals involved in an overall -- the activities of your investigation?

> Mr. Borden: Please note my objection.

> The Court: Overruled.

> A   Yes, sir, the grand jury made recommendations to prosecute various individuals.

Q   Was any such recommendation made in regard
    to Thomas Smithers?

A   None whatsoever.

(N.T. 95-96)


On cross-examination, defense counsel Randolph Borden sought to discredit the Smithers tape recordings by revealing possible agreements for prosecutorial leniency. While Special Agent Russell Thomas conceded that Deputy Attorney General Abeln agreed not to prosecute Smithers for vehicle inspection records, he emphatically denied that there existed a deal for other crimes:

Q   Mr. Thomas, you are not denying the fact, are you, that
    a deal was cut with Tom Smithers? When I say the term
    Deal I mean  in exchange for him doing certain things
    for you, you would agree to do certain things for him.
    You don't deny that, do you?

A   **Well, I would deny that there was a deal cut.** What I
    would explain is that after the first consentual
    interception, which occurred, I believe, on the 19th
    of December, 1985, there arose in Mr. Smithers mind
    about the propriety of his inspection records and
    his possible liability with regard to those records.
    He consulted with his attorney Mr. Westervelt, who then
    spoke to our Deputy Attorney General, Mr. Abeln, and
    Mr. Abeln agreed with Mr. Westervelt and Mr. Smithers
    that the propriety of his inspection records was not the
    focus of our investigation, and that we would agree that
    if the records were not proper or in order that there
    would be no prosecution initiated against Mr. Smithers
    for those what would be relatively minor infractions.

(N.T. 99).

Several years after his convictionand sentence, Romansky uncovered evidence revealing that an investigating grand jury had indeed issued a

presentment against Thomas Smithers, recommending prosecution for numerous criminal offenses including charges involving the same 1979 Ford Bronco. See <u>Commonwealth v. Romansky</u>, 702 A.2d 1064, 1065 (PA. SUPER. 1997). In addition, Romansky uncovered an absolutely stunning document signed by Deputy Attorney General Abeln himself in which he agreed not to prosecute Smithers in exchange for Smithers' cooperation and court testimony. 702 A.2d at 1066.[1]

Thus, there is no question that Deputy Attorney General Abeln elected to remain silent while his Special Agent Russell Thomas testified falsely under oath that the Commonwealth had cut no deal Smithers or that Smithers was never recommended for criminal prosection by the grand jury.

---

1 Romansky offers the Abeln document to this Court for review as Appendix B.

# V.

## SUMMARY OF ARGUMENT

The Commonwealth's knowing use of false testimony (Agent Russell Thomas) and the concealment of impeachment evidence (the Smithers' leniency agreement) was material to Romansky's conviction. The failure of the Commonwealth to reveal the Smithers' no-prosecution agreement and the refusal of the Deputy Attorney General to correct the testimony of Russell Thomas (which he knew to be false) deprived Romansky of a fundamentally fair trial. Such misconduct prevented the defense from questioning the credibility of Romansky's chief accuser, Thomas Smithers, and undermining the secret tape recordings. Since Romansky's conviction stems principally from the Smithers' evidence, the prosecutorial misconduct evident here was indeed material to Romansky's conviction.

VI.

ARGUMENT

A. **THE PCRA COURT ERRED IN CONCLUDING THAT THE COMMONWEALTH'S KNOWING USE OF FALSE TESTIMONY AND CONCEALMENT OF IMPEACHMENT EVIDENCE DID NOT HAVE A REASONABLE LIKELIHOOD OF EFFECTING THE JURY'S VERDICT.**

At the outset, it must be stressed that the Commonwealth's knowing use of false testimony and concealment of impeachment evidence is not at issue in this appeal. The PCRA Court found that such misconduct did occur and described it as **"certainly a fraud on the Court."** (Opinion Of Judge Conway, March 17, 1999 at page 5). The Attorney General's Office never contended otherwise. Moreover, this Court -- in a related case involving the same prosecutor and the same witness -- also described such prosecutorial tactics as "egregious" and a "fraud upon the court." See **Commonwealth v. Romansky**, 702 A.2d 1064, 1066 (PA.SUPER. 1997).

What is at issue here is whether the use of perjured testimony and concealment of the Smithers' no-prosecution deal were "material," that is, did they reasonably affect the jury's verdict? See **Romansky**, 702 A.2d at 1068 ("we must examine the trial evidence and determine whether the false testimony, in any reasonable likelihood, could have affected the jury's verdict.").

The PCRA Court concluded that the  false testimony of Special Agent Russell Thomas was not material to Romansky's conviction. **"Here, Smithers was merely the informant, not perpetrator of these crimes. As this Court has previously stated, there exists an adequate remedy to the perjury. As the**

- 9 -

perjured testimony was not material to the Wayne County charges, defendant's claim must fail." (Opinion Of Judge Conway, April 28, 1999 at page 2-3).

Romansky respectfully submits that the PCRA Court did not properly apply the "materiality" analysis required by the Supreme Court. Whether or not Smithers was an informant or perpetrator and whether or not Romansky has an adequate remedy for the perjury is not the proper focus of materiality determinations. Rather, the appropriate inquiry is whether the perjured testimony and concealed evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." **Kyles v. Whitley,** 514 U.S. 419, 435 (1995).

In this case, Smithers' testimony and the introduction of the Smithers' tape recordings were the core of the Commonwealth's case. The record reveals that there was no eyewitness testimony identifying Romansky as the arsonist. There was no fingerprint evidence. Nor was there any post-arrest confession. Rather, the Commonwealth's case rested solely upon Smithers and the tapes. Without Smithers there would have been no indictment or evidence to carry the case to the jury. Thus, Smithers' credibility was extremely important to the jury in this case.

The jury was intentionally misled into believing that Smithers was a law-abiding citizen with no involvement in criminal activities concerning the 1979 Ford Bronco. Had Special AgentRussell Thomas told the jury the truth that Smithers was recommended for criminal prosecution in connection

with the 1979 Ford Bronco, the defense would have subjected Smithers to a

relentless cross-examination exposing his own criminal behavior in the autotheft

ring. Indeed, the jury could have reasonably concluded:

> 1.  That Smithers himself had a substantial interest and
>     motivation to set fire to the 1979 Ford Bronco -- the
>     same vehicle the grand jury recommended Smithers for
>     criminal prosecution; and
>
> 2.  That the tapes were not worthy of belief because Smithers'
>     freedom from criminal prosecution was contingent upon his
>     cooperation with the police to shift criminal liability
>     against Romansky.

In deciding whether the misconduct in this case was material, it must

be emphasized that the "jury's estimate of the truthfulness and reliability of a

given witness may well be determinative of guilt or innocence, and it is upon

such subtle factors as possible interest of the witness in testifying falsely that

a defendant's life or liberty may depend." **Napue v. Illinois**, 360 U.S. 264,

269 (1959).

The jury in this case did not hear the truth. Thomas Smithers was

not some law-abiding citizen nobly assisting the police in crime investigation.

Rather, an impartial grand jury had recommended that Smithers be criminally

prosecuted in connection with the 1979 Ford Bronco -- the very same vehicle

Romansky was charged with destroying. Had the Commonwealth alerted the Court

that Agent Thomas was testifying falsely and given notice to the defense of

the existence of the Smithers' no-prosecution deal, a fair trial would have

occurred.

In conclusion, a showing of materiality does not require Romansky to demonstrate that absent the perjured testimony he would have been acquitted. **Kyles**, 514 U.S. at 435. Rather, the appropriate inquiry is simply whether the perjured testimony and concealment of impeachment evidence undermines this Court's confidence in the verdict. Romansky respectfully submits that the jury was entitled to hear testimony indicating that Smithers' himself was the target of a criminal grand jury prosecution with respect to the 1979 Ford Bronco and that his freedom depended upon his cooperation in nailing Romansky. The prosecutor's use of false testimony in this case and the concealment of the Smithers' no-prosecution deal was not only unfair and repugnant to due process, but clearly must undermine the confidence in the jury's verdict in this case.

B. **THE PCRA COURT ERRED IN CONCLUDING THAT DEFENSE COUNSEL WAS NOT INEFFECTIVE FOR FAILURE TO SEEK SUPPRESSION OF THE DEFENDANT's TAPE RECORDED STATEMENTS DUE TO VIOLATION OF PENNSYLVANIA'S WIRETAP ACT'S VOLUNTARY CONSENT REQUIREMENT.**

Romansky contended in his amended PCRA petition that the Commonwealt violated the Wiretap Act, 18 PA.C.S.A. § 5721, by coercing Thomas Smithers into secretly recording their conversations and defense counsel was ineffective for failing to seek suppression of the evidence. Furthermore, Romansky alleged that neither the Attorney General, or his designee, interviewed Smithers to ensure that his consent was voluntary.

The PCRA Court rejected Romansky's claims based upon: (a) the existence in the record of testimony by Special Agent Russell Thomas that Smithers' cooperation was voluntary; and (b) there did not exist decisional law at the time of trial requiring suppression of statements recorded in violation of the Wiretap Act. See **Opinion Of Judge Conway**, April 28, 1999 at 3-4.

The clear language of Pennsylvania's Wiretap Act requires the Attorney General, or his designee, to personally review the facts to ensure that consent to intercept communications is voluntary. 18 PA.C.S. § 5704. A police officer -- such as Special Agent Russell Thomas --is neither the Attorney General or the appropriate designee. Thus, the PCRA Court's conclusion that Special Agent Thomas determined that Smithers' cooperation was voluntary is insufficient under our Wiretap Act. [2]

Secondly, there can be no question that the Wiretap Act was in existence at the time of Romansky's arrest and trial. Defense counsel had an adequate statutory basis to file a suppression motion based upon violations of the Wiretap Act. The PCRA Court's decision is thus inerror.

---

2  During the PCRA proceedings, the Commonwealth noted in its **Answer** to Romansky's amended PCRA petition that, "**smithers may or may not have been coerced to make the recordings.**" (Answer at 9). In addition, the Commonwealth noted that the available transcript "**implies that the prosecutor did not personally interview Smithers to determine voluntariness of his consent.**" (Answer at 8).

WHEREFORE, for the reasons stated above, the appellant Steven Romansky respectfully requests that this Court vacate the convictions and remand back to the lower court for a new trial.

Date: 8-2/-99

Steve Romansky

STEVEN ROMANSKY, AY-8324
1100 PIKE STREET
HUNTINGDON, PA  16654-1112

# APPENDIX A

IN THE COURT OF COMMON PLEAS OF THE 22ND JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA
COUNTY OF WAYNE

COMMONWEALTH OF PENNSYLVANIA     :

                                 :

VS                               :

                                 :

STEVEN L. ROMANSKY               :   NO. 42 - 1986 - CRIMINAL

---

OPINION AND FINAL ORDER
PURSUANT TO Pa. R. Crim. P. 1507

---

Before the Court at this time is the Defendant, Steven L. Romansky's Response to the Proposed Dismissal of his Post-Conviction Collateral Relief Petition.  This Court entered its Notice of Intent to Dismiss on March 17, 1999 and the Defendant's Objections were filed on April 5, 1999.  The Commonwealth supplied it's Answer on April 22, 1999.  The Defendant clams three (3) basis for his Objection to Notice of Intent to Dismiss: the perjured testimony of Russell Thomas; the alleged violation of wire tap law; and ineffective assistance of counsel for failure to seek suppression of electronic surveillance evidence.  As this Court has previously addresses these same issues, it also relies upon the Opinion of March 17, 1999.

Commonwealth v. Romansky, _____ Pa. Super. _____, 702 A.2d 1064 (1997) makes it clear that the Commonwealth's witnesses,

CERTIFIED FROM
THE RECORD
APR 2 8 1999
PROTHONOTARY & CLERK

Russell Thomas and Thomas Smithers failed to disclose the immunity

from prosecution agreement with Smithers.  The Superior Court found

that false testimony to be material because it may have affected

the jury's determination of guilt.  In that case, the immunity from

prosecution was from the same charges faced by the Defendant.  The

jury's verdict could have been reasonably affected by revealing the

Commonwealth's  agreement.    The  Superior  Court  relied  upon

Commonwealth v. Hallowell, 477 Pa. 232, 383 A.2d 909 (1978), which

stated:

> In *Napue v. Illinois*, 360 U.S.
> 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217
> (1959), the United States Supreme
> Court confirmed the principle that
> "a State may not knowingly use false
> evidence, including false testimony,
> to obtain a tainted conviction."
> Id. at 269, 79 S.Ct. at 1177.  We
> have similarly held.   "It is, of
> course, an established principle
> that a conviction obtained through
> the knowing use of materially false
> testimony   may   not   stand,   a
> prosecuting   attorney   has   an
> affirmative  duty  to  correct  the
> testimony  of  a  witness  which  he
> knows to be false." *Commonwealth v.
> Carpenter*, 472 Pa. 10, 372 A.2d 806,
> 810 (1977) Id., 477 Pa. at 236-37,
> 383 A.2d at 911 (emphasis added)

However, this Court distinguishes the materiality in this

case because Smithers' immunity from prosecution did not involve

this case.  Here, Smithers was merely the informant, not

perpetrator of these crimes.  As this Court has previously stated, there exists an adequate remedy to the perjury.  As the perjured testimony was not material to the Wayne County charges. Defendant's claim must fail.

Next, Defendant alleges that his claim of ineffective assistance of counsel for failure to explore the "voluntariness" of the wiretap.

The Commonwealth points to the testimony of Special Agent Russell W. Thomas.

Q.  Did Mr. Smithers voluntarily agree to do participate in these interceptions?

A.  (by special Agent Thomas) Yes, sir.  He contacted me initially in early December and voluntarily requested to engage in this consensual interception.  I, thereafter, contacted you, outlined the facts and received the approval as required by the statute. (Notes of testimony, 09/15/86 Pa. 9a, line 25 - page 10a, line 5).

Although the testimony of Smithers is not available, nonetheless, the Court did have evidence upon which it could rely in allowing the testimony.

Further, Defendant faults counsel for not moving to suppress on the basis of failure to obtain a search warrant.  Looking to <u>Commonwealth vs. Schaffer</u>, 547, Pa. 53, 688 A.2d 1143 (1989).  The

Supreme Court found a right to privacy from wiretaps in 1993, six years after Defendant's trial. Further, the <u>Schaeffer</u> court found a due process violation occurred when the Defendant had a legitimate expectation that his conversation would not be subject to wiretap. <u>Commonwealth v. McCutchen</u>, 463 Pa. 90, 343 A.2d 669 (1975), did not impose responsibility for future changes in the law upon counsel. As this Court finds that the Defendant's allegations are meritless, they must fail.

Accordingly, this Court enters the following:

<u>FINAL ORDER</u>

AND NOW, to wit, this __28th__ day of April, 1999, for the foregoing reasons, it is the **ORDER** of this Court that the Defendants Amended Post-Conviction Petition is **HEREBY DISMISSED.**

The Defendant, Steven L. Romansky, is **HEREBY ADVISED** of his right to appeal from this Final Order to the Superior Court of Pennsylvania within thirty (30) days of the date of this Order.

BY THE COURT:

s/Robert J. Conway

ROBERT J. CONWAY
President Judge
22nd Judicial District

cc: Andrea F. McKenna, Esq., Deputy Att'y Gen'l
Steven L. Romansky
Linda Malakin, Adm. Ass't

APPENDIX B



COMMONWEALTH OF PENNSYLVANIA
OFFICE OF ATTORNEY GENERAL
January 6, 1986

RECEIVED JAN 8 1986

LeRoy S. Zimmerman
ATTORNEY GENERAL

Reply To:
1600 Strawberry Square
Harrisburg, PA  17120
(717) 787-6346

George W. Westervelt, Jr., Esq.
Royle & Westervelt
738 Main Street
Stroudsburg, PA  18360

            Re:  Mr. Thomas Smithers

Dear Mr. Westervelt:

     This letter is to confirm our telephone conversation last
week and to inform you that subject to the following terms and
conditions listed below, your client is not considered a subject
to be charged in the pending investigation involving vehicle
theft and insurance fraud in the northeastern part of Pennsylvania.
Any information provided by your client to the Pennsylvania State
Police or agents of the Office of Attorney General, Bureau of
Criminal Investigation, will not be used against your client in
any prosecution for criminal activities relating to the matters
so described.  Furthermore, by this agreement, any and all
information that your client supplies that would incriminate him
in any other crime for which he is not charged, will not be used
against him except for crimes of violence.  This commitment,
however, does not bind any other federal or state authorities
from independent investigations.  *

     This commitment by the Office of Attorney General is con-
ditional upon your client providing full, complete, and truthful
information regarding the above investigation.  If at any time
it is determined that your client has not been truthful and candid
with this Office or their investigators, or otherwise ceases to
cooperate, then this agreement shall be void and the commitment
of the Commonwealth not to prosecute or to use the information
provided by your client will terminate.

 *  However, neither the Attorney General nor his agents, including
    Pennsylvania State Police officers, will transmit or refer any
    evidence gathered from Mr. Smithers which might incriminate him
    to any other person, including federal, state, or local police
    agencies.

George W. Westervelt, Jr., Esq.
January 6, 1986
Page:  2


    It is agreed that your client's cooperation will consist of
being available for interviews by law enforcement officials at
reasonable times, being available for grand jury and court
appearances, and submitting to polygraph examinations, if necessary,
to confirm compliance with this agreement.  Your client will
further agree to avail himself to our technical service department
for purposes of continuing consensual interceptions with Steven
Romansky and possibly other individuals related to that particular
investigation.

    This agreement does not cover any prosecution for perjury,
false declaration, false statement, obstruction of justice or any
other similar crimes which may occur after this date.

    The Commonwealth is entering into this agreement because your
client's cooperation and truthful testimony is important to the
fair administration of justice and the completion of the grand jury
investigation into criminal activities by others.  This agreement
is made in reliance upon the previous offer of proof made by your
client and represents the full and complete agreement of the
parties.


    I have read and agreed to the above-listed arrangement.

                                                    1-10-85

    _____
    Thomas Smithers


    _____    1/18/
    George W. Westervelt, Esq.
    Attorney for Smithers


    _____
    Gregory B. Abeln
    Deputy Attorney General
    Attorney for the Commonwealth

## PROOF OF SERVICE

STEVEN L. ROMANSKY, the appellant. hereby certifies that I am this day serving the foregoing document upon the persons and in the manner and number indicated below, which service satisfies the requirements of PA.R.A.P. 121:

### Service By First-Class Mail Addressed As Follows:

1.  David A. Szewczak, Prothonotary
    Office of the Prothonotary
    Superior Court of Pennsylvania
    530 Walnut Street, Suite 315
    Philadelphia, PA  19106

    (7 copies)

2.  Andrea F. McKenna, Esquire
    Office Of Attorney General
    16th Floor, Strawberry Square
    Harrisburg, PA  17120

    (1 copy)

Date: 8-4-99

_Steve Romansky_

STEVEN L. ROMANSKY, AY-8324
1100 PIKE STREET
HUNTINGDON, PA  16654-1112

IN THE SUPERIOR COURT OF PENNSYLVANIA
SITTING AT PHILADELPHIA

No. 01538EDA99

COMMONWEALTH OF PENNSYLVANIA
Appellee

V.

STEVEN L. ROMANSKY
Appellant

**BRIEF FOR APPELLEE**

Appeal from the Order of the Court of Common Pleas of Wayne County dated
April 28, 1999, at No. 42-1986, denying appellant's post-conviction petition

D. MICHAEL FISHER
Attorney General

WILLIAM H. RYAN, Jr.
Executive Deputy Attorney General
Director, Criminal Law Division

ROBERT A. GRACI
Assistant Executive Deputy Attorney General
Law and Appeals

ANDREA F. McKENNA
Senior Deputy Attorney General
Appeals and Legal Services Section

Office of Attorney General
16th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 787-6348

Dated:  September 1, 1999

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

SCOPE AND STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

COUNTER-STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.    The Lower Court Properly Determined That The Complained Of
           Testimony Was Not Material And Did Not Afford A Basis For
           Post Conviction Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.    There Is No Arguable Merit To The Claim That Trial Counsel Was
           Ineffective For Failing to Seek Suppression of Consensual
           Recordings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Brady v. Maryland,*
     373 U.S. 83, 83 S. Ct. 1994, 10 L. Ed 2d 215 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Commonwealth v. Clark,*
     374 Pa. Super. 308, 542 A.2d 1036 (1988), *allocatur denied,*
     523 Pa. 635, 565 A.2d 444 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Commonwealth v. Donahue,*
     428 Pa. Super. 259, 630 A. 2d 1238 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Commonwealth v. Floyd,*
     259 Pa. Super. 552, 393 Pa. Super. 963 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Commonwealth v. Galloway,*
     433 Pa. Super. 222, 640 A. 2d 454 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Commonwealth v. Hardcastle,*
     549 Pa. 450, 701 A. 2d 541 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Commonwealth v. Harrison,*
     444 Pa. Super. 321, 663 A.2d 238 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Commonwealth v. Kimball,*
     555 Pa. 299, 724 A. 2d 326 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Commonwealth v. Lutz,*
     492 Pa. 500, 424 A. 2d 1302 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Commonwealth v. McMaster,*
     666 A. 2d 724 (Pa. Super. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Commonwealth v. Romansky,*
     702 A.2d 1064 (Pa. Super. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8

*Commonwealth v. Romansky,*
    No. 02821 Philadelphia 1998 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... . 3

*Commonwealth v. Santiago,*
    439 Pa. Super. 447, 654 A. 2d 1062 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Commonwealth v. Smith,*
    532 Pa. 177, 615 A.2d 321 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Commonwealth v. Todaro,*
    549 Pa. 545, 701 A. 2d 1343 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13

*Commonwealth v. Triplett,*
    476 Pa. 91, 381 A.2d 877 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Giglio v. United States,*
    405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972) . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Bagley,*
    473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed 2d 481 (1985) . . . . . . . . . . . . . . . . . . . . . 10

**STATUTES**

18 Pa.C.S. § 2706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 Pa.C.S. § 3301(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 Pa.C.S. § 3301(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 Pa.C.S. § 3301(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

18 Pa.C.S. § 3301(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 Pa.C.S. § 4910(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 Pa.C.S. § 5101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 Pa.C.S. § 5704(2)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

42 Pa. C. S. § 9543(2)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

42 Pa.C.S. §9543(a)(2)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## SCOPE AND STANDARD OF REVIEW

In reviewing an order dismissing a petition under the Post Conviction Relief Act, the reviewing court does not consider matters de novo. *Commonwealth v. Hardcastle*, 549 Pa. 450, 458 n. 2, 701 A. 2d 541, 545 n. 2 (1977). Appellate review of the grant or denial of post conviction relief is limited to an examination of whether the lower court's determination is supported by evidence of record and is free from legal error. *Commonwealth v. Lutz*, 492 Pa. 500, 506, 424 A. 2d 1302, 1305 (1981); *Commonwealth v. Todaro*, 549 Pa. 545, 550, 701 A. 2d 1343,1346 (1997).

The burden of proving ineffective assistance of counsel is on the appellant as the law presumes that counsel is effective. *Commonwealth v. McMaster*, 666 A. 2d 724 (Pa. Super. 1995). This burden is the same for both direct appeal and collateral review. *Commonwealth v. Kimball*, 555 Pa. 299, 724 A. 2d 326 (1999). In reviewing ineffectiveness claims, the initial determination is whether the underlying claim has merit, for counsel will not be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Donahue*, 428 Pa. Super. 259, 630 A. 2d 1238 (1993). If the underlying claim has arguable merit, analysis then shifts to whether counsel's action or inaction had some reasonable basis designed to effectuate his client's interests. If a "reasonable basis" is found to exist, the inquiry ends and counsel's assistance is deemed effective. *Id.* If a claim survives through these levels of analysis, the final review centers on whether counsel's choice of action prejudices the client. Prejudice is determined by an evaluation of whether "but for the arguably ineffective act or omission there is a reasonable probability that the result would have been different." *Donahue*, 428 Pa. Super. at 262, 630 A. 2d at 1249.

## COUNTER-STATEMENT OF THE CASE

**Form of Action and Procedural History**

This is an appeal from an order entered April 28, 1999, by the Court of Common Pleas of Wayne County at No. 42-1986, denying a petition for post conviction relief filed by Steven L. Romansky ("Romansky").

On February 14, 1986, the Honorable G. Thomas Gates, Supervising Judge of the Third Statewide Investigating Grand Jury, accepted Grand Jury Presentment No. 48 which recommended that Romansky be charged with: Arson Endangering Persons, 18 Pa.C.S. § 3301(a); Arson Endangering Property, 18 Pa.C.S. § 3301(c); Reckless Burning or Exploding, 18 Pa.C.S. § 3301(d); Causing or Risking Catastrophe, 18 Pa.C.S. § 3301(b); Tampering with Evidence, 18 Pa.C.S. § 4910(1); Terroristic Threats, 18 Pa.C.S. § 2706; and Obstruction of the Administration of Law, 18 Pa.C.S. § 5101. Romansky was arrested on February 15, 1986, and charged according to the recommendations made by the grand jury.

After a preliminary hearing on March 24, 1986, Romansky was bound over for trial on all of the above-referenced charges, except Obstruction of the Administration of Law. Upon the Commonwealth's motion, the court ordered a *nolle prosequi* of the charge of Terroristic Threats.

On September 15, 1986, Romansky proceeded to trial on the remaining charges before the Honorable Robert J. Conway and a jury in the Court of Common Pleas of Wayne County. On September 17, 1986, Romansky was found guilty of the charges of Arson Endangering Property, 18 Pa.C.S. § 3301(c); Reckless Burning or Exploding, 18 Pa.C.S. § 3301(d); Causing or Risking Catastrophe, 18 Pa.C.S. § 3301(b); and Tempering with Evidence, 18 Pa.C.S. § 4910(1).

2

Romansky filed post verdict motions seeking an arrest of judgment on September 25, 1986, and filed supplemental motions on October 3, 1986. The lower court granted Romansky's motion to arrest judgment as to the conviction on the charge of Arson Endangering Property, 18 Pa.C.S. § 3301(c), but dismissed the motions seeking an arrest of judgment of the remaining three convictions.

On February 10, 1987, Judge Conway sentenced Romansky to a term of one and a half to four years imprisonment on the charge of Reckless Burning or Exploding; one and a half to four years on the charge of Causing or Risking Catastrophe; and one to two years on the charge of Tampering with Evidence. All of the sentences were imposed consecutively, giving Romansky an aggregate minimum of four years and an aggregate maximum of ten years. With credit for time served, the effective date of the sentence was February 15, 1986.[1]

On February 19, 1987, Romansky filed a Petition for Reconsideration of Sentence which the lower court denied. Romansky then timely brought an appeal which raised the following issues: (1) whether the court erred in permitting a witness to offer testimony to a hypothetical question when facts were assumed and not introduced into evidence; (2) whether the court erred in overruling an objection to hearsay evidence; (3) whether the court erred in failing to grant a mistrial when a

---

[1]In addition to the Wayne County sentence, Romansky was sentenced by the Monroe County Court of Common Pleas to three to six years in prison to be served consecutive to the Wayne County sentence, and by the Court of Common Pleas of Pike County to a term of 9 to 18 years in prison, consecutive to all other sentences imposed. In 1997, Superior Court reversed the denial of post conviction relief on the Pike County charges, vacated Counts 6 through 10 pertaining to a 1979 Ford Bronco and remanded for a new trial because the prosecutor had not revealed the cooperation of a Commonwealth witness. *Commonwealth v. Romansky*, 702 A.2d 1064 (Pa. Super. 1997). Romansky filed a pretrial motion to dismiss alleging that retrial should be barred by the principles of double jeopardy as announced in *Commonwealth v. Smith*, 532 Pa. 177, 615 A.2d 321 (1992). The trial court denied the motion. Romansky has appealed that decision to this Court. *Commonwealth v. Romansky*, No. 02821 Philadelphia 1998.

Commonwealth witness testified that he was involved in investigating Romansky for "suspicious and criminal activity"; (4) whether the jury was prejudiced by seeing Romansky under escort by armed guards; (5) whether the court erred in failing to merge sentences; and (6) whether the court erred in failing to set forth reasons in imposing sentence.

This Court affirmed the judgment of sentence in an order entered November 24, 1987, at No. 00706 Philadelphia 1987. No petition for allowance of appeal in the Supreme Court was filed.

Romansky sought post conviction relief in September 1995, and subsequently filed an amended petition. On or about April 23, 1996, the Commonwealth, through the Office of Attorney General, filed an Answer in Opposition to Romansky's Petition for Post Conviction Relief. The lower court denied the petition without an evidentiary hearing in an order dated April 28, 1999.

**Judge Whose Determination Is To Be Reviewed**

The petition for post conviction relief was denied without an evidentiary hearing by the Honorable Robert J. Conway, President Judge of the Court of Common Pleas of Wayne County.

**Facts Necessary For Determination**

On or about September 25, 1984, a fire occurred in an impoundment where suspected stolen vehicles were being held behind the Pennsylvania State Police Barracks in Honesdale. A trail of flammable liquid, later proven to be gasoline, was poured so as to link together ten vehicles. Rags had been placed in the gas tanks so as to form wicks leading from the trail of gasoline into the vehicles' gas tanks. A burnt book of matches was found at one end of the liquid trail and two Bondo Fiberglass resin cans were also found at the scene.

The most seriously damaged vehicle was a 1979 Ford Bronco, which had been reported stolen and which police discovered at Romansky's home and impounded at the state police barracks.

4

Tom Smithers, who owned a garage at which Romansky's Bronco had been inspected, voluntarily contacted a special agent of the Attorney General and proposed that he engage Romanksy in conversation while wearing a recording device. During these taped conversations, Romansky made admissions against his own interest.

## SUMMARY OF ARGUMENT

Romansky's due process rights were not violated by trial counsel's failure to explore the motivation for Thomas Smithers to cooperate with law enforcement and tape his conversations with Romansky. Smithers' cooperation with law enforcement was patently obvious. His motivation to do so was immaterial. Romansky was his own witness against himself; Smithers merely provided the conduit. The failure to explore Smithers' motitvation to make the tape recording did not so undermine the truth-determining process as to make the verdict unreliable.

The evidence establishes that Smithers' voluntarily agreed to tape his conversations with Romansky; therefore counsel cannot be deemed ineffective for having failed to seek suppression of the tapes on grounds that Smithers' was coerced into making the recordings. Trial counsel cannot be found ineffective for having failed to ascertain that the Attorney General or his designee personally interviewed Smithers to determine the voluntariness of his consent. There was no such requirement at the relevant time and counsel's effectiveness must be judged by the law as it existed at the time of representation.

6

## ARGUMENT

**A.    The Lower Court Properly Determined That The
Complained Of Testimony Was Not Material And
Did Not Afford A Basis For Post Conviction Relief.**

In his petition for post conviction relief, Romansky claimed he was denied due process of

law when Commonwealth witness Special Agent Russell Thomas falsely testified at trial that a

grand jury had not recommended that criminal charges be filed against Commonwealth witness

Thomas Smithers. Petition for Post Conviction Relief ("Petition"), Paragraphs 9, 14. The lower

court properly denied the claim, finding the complained of testimony was not material and could

not have affected the verdict.

The testimony at issue was the following examination of Special Agent Thomas by the

prosecution:

> Q. Was Mr. Smithers called to the grand jury as a witness in regards
> to the Romansky Bronco?
>
> A. Yes, he was.
>
> Q. Did the grand jury make recommendations to prosecute
> individuals involved in an overall--the activities of your
> investigation?
>
> MR, BORDEN (defense counsel): Please note my objection.
>
> THE COURT: Over-ruled.
>
> A. Yes, sir, the grand jury made recommendations to prosecute
> various individuals.
>
> Q. Was any such recommendation made in regard to Thomas
> Smithers.
>
> A. None whatsoever.

(S.R.R. 7b-8b)

In regard to the charges tried in Wayne County (the subject of this appeal), the above-quoted testimony of Special Agent Thomas was true. The charges filed against Romansky in Wayne County resulted from the recommendation of the Third Statewide Investigating Grand Jury in Presentment No. 48. The recommendation of that presentment was that Romansky, and only Romansky, be charged in Wayne County with various criminal offenses. Smithers was never at risk of being prosecuted in Wayne County. The lower court properly found the instant case distinguishable from the Pike County case in which Romansky obtained relief on a similar claim because "Smithers' immunity from prosecution did not involve this case." Appellant's Appendix, p. 2 [2]

Eligibility for post conviction relief is constrained by statute. Relief may be had for, among other things, "[a] violation of the Constitution of the Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa. C. S. § 9543(2) (i). Smithers' unexplored motivation to record his conversations with Romansky cannot be said to have "so under-mined the truth-determining process that no reliable

_____

[2]Charges were filed in Pike County against Smithers, Romansky and others based on the recommendation of a different presentment, Grand Jury Presentment No. 33, emanating from the Third Statewide Investigating Grand Jury. In Romanksy's Pike County prosecution, the same prosecutor who tried the Wayne County charges failed to correct Smithers' testimony to the effect that he was not cooperating with the State Police. In fact ,Grand Jury Presentment No.48 had recommended that charges be filed against Smithers in Pike County. Charges were not filed in exchange for Smithers' cooperation with the prosecution. On collateral review of the Pike County conviction, this Court found there was a reasonable likelihood that Smithers' false testimony as to his cooperation with the Commonwealth could have affected the verdict in regard to charges stemming from a 1979 Ford Bronco and vacated that conviction. *Commonwealth v. Romansky*, 702 A. 2d 1064 (Pa. Super. 1997).

8

adjudication of guilt or innocence could have taken place." Smithers--for whatever reason--wore recording equipment, but Romansky, of his own accord, admitted his involvement in the arson at the State Police barracks during those conversations. Further, as distinct from the Pike County case, the fact that Smithers' was cooperating with law enforcement was patently obvious. Special Agent Thomas testified that Smithers volunteered to engage in taped conversations with Romansky and testified that law enforcement supervised the interception of conversations between Smithers and Romansky. (S.R.R. 9b-10b)

The lower court properly determined that the complained of omission was not material. *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1994, 10 L. Ed 2d 215 (1963), and its progeny set the standard for the determination of what evidence is material. In *Brady,* the United States Supreme Court held that suppression by the prosecutor of requested evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, regardless of the good faith or bad faith of the prosecution. In *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), the United States Supreme Court held that when the reliability of a given witness may be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within the general rule of *Brady*. This Court has held that the *Brady* rule "encompasses the Commonwealth's duty not to conceal the existence of a promise or of an agreement to recommend a specific sentence or leniency for a crucial prosecution witness." *Commonwealth v. Floyd*, 259 Pa. Super. 552, 558, 393 Pa. Super. 963, 966 (1978). "However, to be entitled to a new trial under *Brady, supra*, and its progeny, the evidence affecting credibility must be material." *Commonwealth v. Galloway*, 433 Pa. Super. 222, 229, 640 A. 2d 454, 457 (1994). *Galloway* noted that the United States Supreme Court found evidence to be "material," in the context of *Brady*, when "there is a

9

reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*, at 229, 640 A. 2d at 457, quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed 2d 481, 494 (1985).

Determination of the materiality of withheld evidence requires that the evidence be viewed in the context of the entire case.

> We must avoid concentrating on the suppressed evidence in isolation. Rather, we must place it in the context of the entire record. Evidence that may first appear to be quite compelling when considered alone can lose its potency when weighed and measured with all the other evidence, both inculpatory and exculpatory. Implicit in the standard of materiality is the notion that the significance of any particular bit of evidence can only be determined by a comparison to the rest.

*Commonwealth v. Santiago*, 439 Pa. Super. 447, 466-67, 654 A. 2d 1062, 1072 (1994).

Measured against the appropriate standards, it strains credibility to accept Romansky's claim that his due process rights were violated because the jury did not know of the existence of a a grand jury presentment which recommended that Smithers be criminally charged in another county. Romansky's own admissions, recorded on tape, determined his fate; the fact that Smithers' motivation to record their conversations was not known to the jury did not undermine the truth-determing process and make the verdict unreliable. Romansky, through the mechanism of tape recordings, was his own witness against himself. Smithers did nothing more than provide the conduit through which Romansky transported evidence against himself.

The lower court properly denied the claim for relief. This Court should affirm.

**B.**    **There Is No Arguable Merit To The Claim That
Trial Counsel Was Ineffective For Failing to Seek
Suppression of Consensual Recordings.**

Romansky asserts the lower court erred in denying him post conviction relief on the claim

that trial counsel was ineffective in failing to seek suppression of tape-recorded conversations on

the theory that the Commonwealth had coerced Thomas Smithers into wearing a hidden recorder

and secretly recording conversations between Romansky and Smithers. Petition, Paragraphs 7,11,

and because "neither the Attorney General nor his designee" personally interviewed Smithers to

determine the voluntariness of his consent. The lower court properly denied these claims for relief.

The order below should be affirmed.

Trial testimony reflects that Smithers voluntarily contacted an agent of the Attorney General

and proposed that he engage Romansky in conversation while wearing a recording device.

> Q.    Did Mr. Smithers voluntarily agree to do--participate in these
> interceptions?
>
> A.    (by Special Agent Thomas)  Yes, sir.  He contacted me
> initially in early December and voluntarily requested to
> engage in this consensual interception.  I thereafter contacted
> you [deputy attorney general], outlined the facts, and received
> the approval as required by the statute.

(S.R.R. 9b)

This testimony should be sufficient to end the inquiry. Further, because eligibility for post

conviction relief is governed by statutory standards, any claimed ineffective assistance of counsel

must by pled and proved to have "so undermined the truth-determining process that no reliable

adjudication of guilt or innocence could have taken place." 42 Pa.C.S. §9543(a)(2)(ii). Trial

counsel's failure to question Smithers' motivation to wear a recording device can hardly be found

11

to have so undermined the truth-determining process as to make the verdict unreliable. In the taped

conversations, Romansky made admissions of his own criminal wrong-doing. Smithers simply

agreed to wear the recording device. What Romansky said during those taped conversations was

entirely up to him. As it happened, Romansky made admissions of his own criminal wrong-doing.

The fact that trial counsel failed to inquire into Smithers' motivation to make the recordings does

not make out a claim that counsel's ineffectiveness "so undermined the truth-determining process

that no reliable adjudication of guilt or innocent could have taken place." Counsel cannot be found

ineffective for failing to pursue a baseless claim. *Commonwealth v. Harrison*, 444 Pa. Super. 321,

663 A.2d 238 (1995). The lower court properly denied this claim for relief. This Court should

affirm the decision of the court below.

The related claim that trial counsel was ineffective for failing to seek suppression of the tape

recordings on the grounds that the prosecutor did not personally interview Smithers and determine

the voluntariness of Smithers' consent also lacks arguable merit. Controlling law at the time of

Romansky's conviction and appeal imposed no such requirement and counsel cannot be found

ineffective.[3]

Romansky was charged February 15, 1986. The conversations at issue were recorded prior

to that date. Superior Court affirmed the judgment of sentence November 24, 1987. The plain

language of the Wiretap Act requires that before a consensual recording is made the Attorney

General, or his designated deputy, "review the facts and is satisfied that the consent is voluntary

. . . ." 18 Pa.C.S. § 5704(2)(ii). Not until June 6, 1988, when this Court decided *Commonwealth v.*

---

[3]Testimony at S.R.R. 9b-10b, quoted above, implies that the prosecutor did not personally
interview Smithers to determine the voluntariness of his consent.

12

*Clark*, 374 Pa. Super. 308, 542 A.2d 1036 (1988), *allocatur denied*, 523 Pa. 635, 565 A.2d 444 (1989), was section 5704(2)(ii) construed to require that the Attorney General, or his designee, *personally* interview the consenting party and *personally* make a determination as to the voluntariness of the consent.

When *Clark* was announced, Romansky's direct appeal had long been final. It has long been established that counsel cannot be found ineffective for failing to foresee developments in the law, *Commonwealth v. Triplett*, 476 Pa. 91, 381 A.2d 877 (1977). At the time Romansky was charged, and continuing to the conclusion of his direct appeal, nothing in either statutory or decisional law instructed trial counsel to ascertain that the Attorney General, or his designee, had personally interviewed the consenting party. Trial counsel cannot be found ineffective for having failed to adhere to decisional law not yet announced at the time of his representation. *Triplett, supra; Commonwealth v. Todaro*, 549 Pa. 545, 701 A. 2d 1343 (1997)(in judging merit of ineffectiveness claim, must determine status of law at time of trial).

Further, for the same reasons stated herein, the failure of the prosecutor to have personally interviewed Smithers to determine the voluntariness of his consent cannot be said to have "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(2)(i) and (ii). Smithers may, or may not, have been coerced to make the recordings. His motivation to wear the recording device cannot be said to have caused Romansky to make damaging omissions against his own penal interest. The claim for relief was properly denied without hearing.

13

## CONCLUSION

For the reasons stated herein, the Commonwealth respectfully requests this Honorable Court to affirm the order of the Court of Common Pleas of Wayne County dated April 28, 1999, at No.42-1986, denying petition for post conviction relief.

Respectfully submitted

D. MICHAEL FISHER
Attorney General

WILLIAM H. RYAN, Jr.
Executive Deputy Attorney General
Director, Criminal Law Division

ROBERT A. GRACI
Assistant Executive Deputy Attorney General
Law and Appeals

By:  _Andrea F. McKenna_

ANDREA F. McKENNA
Senior Deputy Attorney General
Appeals and Legal Services Section

Office of Attorney General
Appeals & Legal Services Section
16th Floor, Strawberry Square
Harrisburg, PA  17120
(717) 787-6348

14

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

COMMONWEALTH OF PENNSYLVANIA, :    No. 0241 M.D. Alloc. Dkt. 2000

:

           Respondent      :    Petition for Allowance of Appeal from

:    Superior Court

:

            v.                :

:

STEVEN L. ROMANSKY,         :

:

           Petitioner        :

:

:

## ORDER

**PER CURIAM**

      **AND NOW**, this 25th day of July, 2000, the petition for allowance of appeal is denied.

TRUE & CORRECT COPY

ATTEST: JUL 2 5 2000

_Shirley J. Phipps_

SHIRLEY J. PHIPPS
APPELLATE CLERK



J. S93034/99

COMMONWEALTH OF PENNSYLVANIA,　　　　:　　IN THE SUPERIOR COURT OF
　　　　　　　　　　　Appellee　　　　　　:　　　　　　PENNSYLVANIA
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　v.　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
STEVEN L. ROMANSKY,　　　　　　　　:
　　　　　　　　　　　Appellant　　　　:　　No. 1538 EDA 1999

Appeal from the Post Conviction Relief Act, April 28, 1999
In the Court of Common Pleas of Wayne County
Criminal, No. 42-1986

BEFORE: JOYCE and LALLY-GREEN. JJ., and CIRILLO, P.J.E.

*J U D G M E N T*

*ON CONSIDERATION WHEREOF, it is now here ordered and adjudged by this Court that the judgment of the Court of Common Pleas of* WAYNE *County be, and the same is hereby* AFFIRMED.

BY THE COURT:

*PROTHONOTARY*

*Dated:*　DECEMBER 17,1999

J. S93034/99

COMMONWEALTH OF PENNSYLVANIA,       :       IN THE SUPERIOR COURT OF
                     Appellee       :              PENNSYLVANIA
                               :
           v.       :
                               :
STEVEN L. ROMANSKY,       :
                  Appellant       :       No. 1538 EDA 1999

Appeal from the Post Conviction Relief Act, April 28, 1999
In the Court of Common Pleas of Wayne County
Criminal, No. 42-1986

BEFORE: JOYCE and LALLY-GREEN. JJ., and CIRILLO, P.J.E.

MEMORANDUM:       FILED    DEC 1 7 1999

      Appellant, Steven L. Romansky, appeals *pro se* from the order of the

lower court denying his request for collateral relief under the Post Conviction

Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  For the reasons set forth

below, we affirm.  The relevant facts and procedural history of this case are

as follows.

      On September 25, 1984, a fire occurred at the Pennsylvania State

Police Barracks in an area where stolen vehicles were impounded.  The most

serious damage to the vehicles was sustained by a 1979 Ford Bronco, which

had been impounded at Appellant's home following a report that it had been

J. S93034/99

stolen.[1]  On February 15, 1986, the police arrested Appellant pursuant to the recommendations of the Statewide Investigating Grand Jury and charged him with arson endangering persons,[2] arson endangering property,[3] reckless burning or exploding,[4] causing or risking catastrophe,[5] tampering with physical evidence,[6] terroristic threats[7] and obstructing administration of law.[8]  On September 15, 1986, following trial, Appellant was found guilty of arson endangering property, reckless burning or exploding, causing or risking catastrophe and tampering with evidence.  The court granted a post-verdict motion for arrest of judgment relating to the charge of arson endangering property.

---

[1] A trial was held in Pike County based on charges relating to the theft of the vehicles.  In that case, Appellant was sentenced to nine (9) to eighteen (18) years' imprisonment.  This Court ultimately reversed and remanded for a new trial on the counts relating to the theft of the Ford Bronco finding that the prosecutor had failed to reveal the cooperation of a Commonwealth witness in exchange for the testimony implicating Appellant. **Commonwealth v. Romansky**, 702 A.2d 1064 (Pa. Super. 1997), *appeal denied*, 555 Pa. 699, 723 A.2d 670 (1998).

[2] 18 Pa.C.S.A. § 3301(a).

[3] 18 Pa.C.S.A. § 3301(c).

[4] 18 Pa.C.S.A. § 3301(d).

[5] 18 Pa.C.S.A. § 3302(b).

[6] 18 Pa.C.S.A. § 4910(1).

[7] 18 Pa.C.S.A. § 2706.

[8] 18 Pa.C.S.A. § 5101.

J. S93034/99

The court sentenced Appellant on February 10, 1987 to an aggregate term of four (4) to ten (10) years' imprisonment. The trial court denied Appellant's petition for reconsideration. On appeal, this Court affirmed the judgment of sentence. **Commonwealth v. Romansky**, No. 706 Philadelphia 1987 (Pa. Super. filed November 24, 1987). Appellant filed his first PCRA petition in September of 1995. Counsel was appointed, however he subsequently withdrew and Appellant proceeded *pro se*. The lower court denied the petition on April 28, 1999 without a hearing. This timely appeal followed.

Appellant raises the following issues for our review: (1) whether the trial court improperly determined that the testimony of Commonwealth witness, Thomas Smithers, was not material; and (2) whether trial counsel was ineffective for failing to seek suppression of the consensual recordings.

Our review of a post-conviction court's grant or denial of relief is limited to a determination of whether the court's findings are supported by the record and the court's order is otherwise free of legal error. **Commonwealth v. Yager**, 685 A.2d 1000, 1003 (Pa. Super. 1996) (*en banc*), *appeal denied*, 549 Pa. 716, 701 A.2d 577 (1997). We will not disturb findings that are supported by the record. **Id**. In accordance with these principles, we now turn to the issues presented for our review.

Appellant contends that the trial court erred when it determined that false testimony provided by Commonwealth witness, Agent Russell Thomas,

- 3 -

was not material and therefore, could not have affected the verdict. Primarily, Appellant disagrees with the trial court's determination that the testimony was not material to the charges brought in this jurisdiction and could not have attributed to the verdict. As summarized by this Court on appeal from charges brought in Pike County:

> On January 6, 1986, Smithers and Gregory B. Abeln, Deputy Attorney General for the Commonwealth, entered into a letter *agreement*. The agreement provides that "subject to the following terms and conditions," Smithers would not be considered a "subject to be charged in the pending investigation involving vehicle theft and insurance fraud in the northeastern part of Pennsylvania." The letter also provides that no information given by Smithers to authorities would be used against him. The commitment by the Office of Attorney General was "conditional upon [Smithers] providing full, complete, and truthful information regarding the above investigation." The letter also states that Smithers' cooperation would "consist of being available for interviews by law enforcement officials at reasonable times, being available for grand jury and court appearances, and submitting to polygraph examinations."

*Commonwealth v. Romansky*, 702 A.2d at 1066.

In ***Romansky,*** *supra*, the Court considered testimony provided by Mr. Smithers in which he claimed that he had not reached any deal with the Commonwealth. The Court determined that this testimony was knowingly false and was material to the outcome of the case, therefore warranting a remand for a new trial. The Court based its conclusion on the fact that the prosecution knew that Smithers had been offered freedom from prosecution in exchange for his testimony and further that Smithers had been

J. S93034/99

recommended for charges by the investigating grand jury, and despite this

knowledge, the prosecutor, Mr. Abeln, did nothing to correct such testimony.

The Court then turned to the standard enunciated in **Brady v. Maryland**,

373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and considered three

situations in which the defense discovered information subsequent to trial,

which the prosecution had known during the trial but failed to reveal.

Relevantly, the Court found **Brady** applicable in three situations:

> In the first situation, typified by *Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, the undisclosed evidence demonstrates that the prosecution's case included perjured testimony and that the prosecution knew, or should have known, of the perjury. In a series of subsequent cases, [this] court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside *if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.*
>
> In addition, in *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the court addressed a situation identical to the one at issue. The government had failed to reveal to defense counsel that its key witness had been promised that he would not be prosecuted if he testified for the government. The witness was the defendant's co-conspirator and testified that the defendant instigated the crimes at issue, which included forgery of money orders. Further, when cross-examined, the witness denied that he had been promised that he would not be prosecuted if he testified against the defendant.
>
> The *Giglio* court noted that the presentation by the prosecution of known, false evidence is not compatible with the basic demands of justice and the same analysis applies when the prosecution allows false testimony to go uncorrected. It held that a new trial is required if the false testimony could in any reasonable likelihood have affected the jury's verdict. In *Giglio*, the Court noted that the

J. S93034/99

government's case rested almost entirely on the witness's testimony and that accordingly, his credibility was an important issue.   In conclusion, the Court held that evidence of an understanding or agreement regarding future prosecution would be relevant to his credibility and the jury should have been informed of it.   The Court granted the defendant a new trial.

In addition to *Giglio*, we find guidance in *Commonwealth v. Wallace*, 500 Pa. 270, 455 A.2d 1187 (1983).   In *Wallace*, a key witness testified that the defendant confessed to the crime while the witness and the defendant were jailed.   That witness also gave false information concerning the pendency of criminal charges against him at the time of trial, the nature of other crimes for which he had been convicted, and his jail status over the years.   The testimony was not corrected by the Commonwealth.

The Court in *Wallace*, utilizing the above federal standards, observed that in the situation where the prosecution obtains a conviction through the use of false or perjured testimony, a strict standard of materiality must be applied.   Under that criterion, the false testimony is considered material if it could in any reasonable likelihood have affected the verdict.   The Court also stated that where a witness's reliability may be determinative of guilt or innocence, failure to correct evidence relating to credibility falls within this rule.   Finally, the *Wallace* Court concluded that the state of mind of the prosecutor is not material, but rather, the important issue is whether the accused received a fair trial.

***Commonwealth v. Romansky***, 702 A.2d at 1064 (citations omitted).

Under the cases set forth above, we are unable to agree with the trial

court's finding that the false testimony provided was not material to the

outcome of the case.   The trial court attempts to distinguish this case from

the charges brought in Pike County, finding that the testimony was material

to the Pike County charges because the agreement reached with Smithers

J. S93034/99

pertained to the same charges faced by Appellant.  Considering this case,

the trial court contends that because Smithers' immunity agreement does

not deal with the charges faced by Appellant, any testimony concerning the

deal reached by the parties would not be material.  We cannot agree with

this assessment.

The agreement does not disclose the specific charges that Smithers

may face absent his cooperation.  Rather, the agreement concerns any

charges that may be brought pursuant to the auto theft ring underlying each

of Appellant's cases.  Furthermore, the charges in this case relate to the

same 1979 Bronco as in the Pike County case, where the Court determined

remand was necessary because both Smithers and Appellant accused each

other of stealing and burning down the vehicles.  We cannot reach a

contrary conclusion here, as it is clear that Smithers' credibility was a crucial

issue and his testimony was material.

Despite this finding of materiality, however, we are compelled to

conclude that the trial court's error was harmless.

> It is settled that an error is harmless where the properly
> admitted evidence is so overwhelming and where the
> prejudicial impact of the error is so slight that it can be
> concluded beyond a reasonable doubt that the error could
> not have contributed to the verdict.  The harmless error
> doctrine reflects a fundamental principle which we think is
> particularly apt here, i.e., "that the central purpose of a
> criminal trial is to decide the factual question of the
> defendant's guilt or innocence, and promotes public
> respect for the criminal process by focusing on the
> fundamental fairness of trial rather than on the virtually
> inevitable presence of immaterial error."  If this court can

J. S93034/99

conclude beyond a reasonable doubt that the error
complained of did not contribute to the verdict, no new
trial is warranted.

*Commonwealth v. Weisman*, 584 A.2d 980, 985 (Pa. Super. 1990)
(citations omitted).

In this case, Appellant's role in the arson and related crimes was
clearly established through his own admission in the wiretapped
conversation. Although Smithers was the party participating in the wiretap,
the testimony relating to an underlying deal which the prosecution had
reached with him, had no bearing on Appellant's ultimate admissions.
Although we cannot condone the prosecution's conduct in concealing this
information, we cannot find that the false information contributed to the
verdict. Thus, we cannot conclude Appellant is entitled to a new trial on
such grounds.

Next, Appellant asserts that trial counsel was ineffective for failing to
seek suppression of the consensual recordings obtained through the wiretap
where allegedly Smithers' consent to wear the hidden recorder was
involuntary. Counsel is presumed to be effective. The Appellant has the
burden of establishing otherwise. *Commonwealth v. Garnett*, 613 A.2d
569 (Pa. Super. 1992), *appeal denied*, 533 Pa. 630, 621 A.2d 577 (1993).
In order to prove ineffectiveness, Appellant must meet a three prong test:
(1) that the underlying claim is of arguable merit; (2) that counsel's act or
omission had no reasonable basis designed to effectuate Appellant's interest;

- 8 -

J. S93034/99

and (3) that the client suffered prejudice from counsel's ineffectiveness. ***Commonwealth v. Crawley***, 541 Pa. 408, 414, 663 A.2d 676, 679 (1995), *cert. denied*, 517 U.S. 1212, 116 S.Ct. 1832, 134 L.Ed.2d 936 (1996).  The prejudice prong is met where Appellant established that the commission or omission of counsel so undermined the truth-determining process that the result would have been different.  ***Id***.  Where it is clear that a defendant has failed to meet the prejudice prong, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met.  ***Commonwealth v. Wilson***, 543 Pa. 429, 440, 672 A.2d 293, 298, *cert. denied*, 519 U.S. 951, 117 S.Ct. 364, 136 L.Ed.2d 255 (1996).

In spite of Appellant's claim, the record reveals that his counsel, Randolph Borden, Esquire, did file a suppression motion on May 23, 1986 seeking suppression on the same ground now alleged.[9]  Thus, Appellant's claim to the contrary lacks merit where the claim was set forth and denied. Finding no basis upon which to disturb the findings of the trial court, we affirm.

Order affirmed.

Lally-Green, J. files concurring statement.

---

[9] We note that the record does not indicate a disposition of this motion. However, the court's opinion fully addresses the suppression issue set forth by trial counsel and the reason for its denial.  Trial Court Opinion, 4/28/99, at 3-4.

ALS981183-24

RECEIVED

DEC 21 1999

Appeals & Legal Services Section

J. S93034/99    ●                    ●

COMMONWEALTH OF PENNSYLVANIA,    :    IN THE SUPERIOR COURT OF
                Appellee    :    PENNSYLVANIA

            v.    :

STEVEN L. ROMANSKY,    :
                Appellant    :    No. 1538 EDA 1999

Appeal from the Post Conviction Relief Act, April 28, 1999
In the Court of Common Pleas of Wayne County
Criminal, No. 42-1986

BEFORE: JOYCE and LALLY-GREEN. JJ., and CIRILLO, P.J.E.

CONCURRING STATEMENT BY LALLY-GREEN, J.:    FILED    DEC 1 7 1999

    I concur in the result, using a somewhat different analysis from the majority's analysis. The majority reasons that Agent Thomas's false testimony was "**material** to the outcome of the case," but that admission of this testimony was **harmless error** because it "had no bearing on Appellant's ultimate admissions" on tape. Majority Memorandum at 7-8. I respectfully submit that no such distinction exists between materiality and harmless error.

    In **Commonwealth v. Romansky**, 702 A.2d 1064, 1068 (Pa. Super. 1997) (the "1997 Case"), we wrote that "false testimony is considered material if it could in any reasonable likelihood have affected the verdict." **See also Kyles v. Whitley**, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566 (1995) (touchstone of materiality is a "reasonable probability of a different result," which is established when the prosecution's action "undermines confidence in the outcome of the

J. S93034/99

trial"). Under these standards, I would hold that Agent Thomas's testimony was not material to the outcome of the case, because there was no reasonable probability that the result would have been different if he had testified truthfully regarding Thomas Smithers' immunity agreement with the prosecution. Similarly, I would hold that under the circumstances of this case, Agent Thomas's testimony was not material because it did not undermine confidence in the outcome of the trial.

The instant case can be distinguished from the 1997 Case even though the facts underlying both cases are similar. In the 1997 Case, Romansky was charged with receiving stolen property, removal/falsification of identification numbers, dealing in vehicles with removed or falsified numbers, and related crimes. *Romansky*, 702 A.2d at 1064. One of those vehicles was the 1979 Bronco at issue in the instant case. *Id.* at 1065. Smithers implicated Romansky and denied that Smithers had any bargain with the Commonwealth. *Id.* at 1066-1067. The Commonwealth knew that Smithers had, in fact, been given immunity in exchange for his testimony and that a grand jury had recommended that Smithers be prosecuted for various charges connected to the Bronco. *Id.* at 1067.

Romansky argued on appeal that had the jury known that Smithers was indicted for charges connected with the 1979 Bronco,

2

J. S93034/99

the jury may have acquitted Romansky. Thus, he argued that the information was material to his case because the outcome might have been different. We agreed and vacated Appellant's convictions related to the Bronco because the case essentially amounted to a credibility battle between Smithers and Romansky, each of whom accused the other of the crimes. *Id.* at 1071. Under these circumstances, "[t]he fact that Smithers was recommended to be charged by the grand jury on the Bronco charges and was testifying against Appellant in exchange for immunity from prosecution may have affected the jury's verdict as to the 1979 Bronco. . . . Had the jury known that Smithers was indicted for the 1979 Bronco, it may have also acquitted Appellant of charges related to it." *Id.* at 1072.

The instant arson case respecting the same 1979 Bronco can be distinguished because the evidence against Appellant Romansky came primarily from tape recorded admissions by Appellant himself and not from the testimony of Smithers. Thus, the credibility of Smithers was not material to the result such that there existed a reasonable probability that the result would have been different. In other words, the challenged false testimony was not material to the outcome and, thus, admission of it constituted harmless error.

J. S93034/99

Because the Majority ultimately concludes that the trial court's actions did not constitute reversible error, I respectfully concur in the result.

4LS98 1183-24



RECEIVED

DEC 2 1 1999

Appeals & Legal Services Section

4