

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN L. ROMANSKY,                          .

    Petitioner                          .    CIVIL NO. 1:00-CV-01520

    v.                                        .    ( Judge Rambo )

LONNER BLAINE, JR.,                          .

    Respondent.                          .

**FILED**
HARRISBURG, PA

SEP 06 2005

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

BRIEF IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS

Steven L. Romansky
175 Progress Drive
Waynesburg, PA 15370-8090

# TABLE OF CONTENTS

Page:

Table of Contents                                                    2

Index of Authorities                                                 4

Statement of Questions Presented                                     8

Statement of the Case                                                9

   A.   Statement of Proceedings.                              9

   B.   Statement of Facts.                                   11

Summary of Argument                                                  13

Argument                                                            15

   I.   PETITIONER WAS DENIED HIS FIFTH, SIXTH
AND FOURTEENTH AMENDMENT RIGHTS WHEN
THE COMMONWEALTH VIOLATED THE STATUTORY
PROVISIONS OF TITLE 18 P.A. C.S.A. SECTION
5704 (2) (ii).                                                      15

   II.   PETITIONER WAS DENIED HIS FIFTH, SIXTH
AND FOURTEENTH AMENDMENT RIGHTS UNDER
MASSIAH AND ITS PROGENY WHEN THE COMM-
ONWEALTH SURREPTITIOUSLY RECORDED TRIAL
STRATEGY VIA RADIO TRANSMITTER PLACED ON
CO-DEFENDANT AFTER THE RIGHT TO COUNSEL
HAD ATTACHED.                                                      19

III.    PETITIONER WAS DENIED HIS FIFTH, SIXTH
        AND FOURTEENTH AMENDMENT RIGHTS UNDER
        BRADY AND ITS PROGENY WHEN THE COMM-
        ONWEALTH FAILED TO PROVIDE HIM WITH
        THE SURREPTITIOUS RECORDINGS AND EXCUL-
        PATORY EVIDENCE CONTAINED WITHIN.          23

Relief Sought                                      36

Declaration                                        37

Exhibit A ( Tape Recording Transcript )

Exhibit B ( Grand Jury Presentment No. 33 )

Exhibit C ( Office of Attorney General Letter, 11-16-01 )

Exhibit D ( Letter and Affidavit of April Kresge )

Exhibit E ( Addressed Receipts )

# INDEX OF AUTHORITIES

Cases:                                                                    Page:

Beardslee v. Woodford,
327 F.3d 799 (9th Cir. 2003)                                                20


Brady v. Maryland,
373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963)                         24


Commonwealth v. Adams,
362 Pa. Super. 547, 524 A.2d 1375 (Pa. Super. 1987)
allocatur denied, 516 Pa. 631, 533 A.2d 90 (Pa. 1987)                      17


Commonwealth v. Birchbill,
520 Pa. 533, 555 A.2d 82 (Pa. 1989)                                        15


Commonwealth v. Clark,
374 Pa. Super. 308, 542 A.2d 1036 (Pa. Super. 1988)                        16


Commonwealth v. DeMarco,
396 Pa. Super. 357, 578 A.2d 942 (Pa. Super. 1990)                         15


Commonwealth v. Greene,
536 Pa. 599, 640 A.2d 1242 (1994)                                          24


Commonwealth v. Romansky,
373 Pa. Super. 639, 536 A.2d 828 (Pa. Super. 1987)                          9


Commonwealth v. Romansky,
___ Pa. Super. ___, 750 A.2d 374 (Pa. Super. 1999)                          9

*Commonwealth v. Romansky,*
568 Pa. 659, 795 A.2d 974 (Pa. 2000) .......................................... 9

*Commonwealth v. Romansky,*
—— Pa. Super. ——, 823 A.2d 1029 (Pa. Super. 2003) ............ 10

*Commonwealth v. Romansky,*
574 Pa. 753, 830 A.2d 975 (Pa. 2003) .......................................... 10

*Gideon v. Wainwright,*
372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799 (1963) ................... 20

*Johnson v. Zerbst,*
304 U.S. 563, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) ............. 19, 22

*Maine v. Moulton,*
474 U.S. 159, 106 S.Ct. 477, 88 L.Ed. 2d 481 (1985) ............... 20

*Massiah v. United States,*
377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed. 2d 246 (1964) ............ 20, 23

*Mitchell v. Mason,*
325 F.3d 732 (6th Cir. 2003) ....................................................... 20

*Romansky v. Blaine,*
1:00-CV-0152 ................................................................................. 10

*Romansky v. Blaine,*
01-3529 .......................................................................................... 10

*Spano v. New York,*
360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed 2d 1265 (1959) ................. 23

_Strickler v. Greene,_
527 U.S. 263, 119 S.Ct. 1936, 144 L. Ed. 2d 286 (1999)                25

_United States v. Auguis,_
427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed. 342 (1976)                25

_United States v. Bagley,_
473 U.S. 667, 105 S.Ct. 3315, 87 L. Ed. 2d 481 (1985)                25

_United States v. Henry,_
477 U.S. 264, 100 S.Ct. 2183, 65 L.Ed. 2d 115 (1980)                23

_United States v. Spruill_
296 F.3d 580 (7th Cir. 2002)                20


United States Constitution:

Fifth Amendment                13, 19, 20, 24, 25

Sixth Amendment                13, 19, 20, 24, 25

Fourteenth Amendment                13, 19, 24, 25


Federal Statutes:

28 U.S.C. Section 2254                13, 36


Pennsylvania Statutes:

18 Pa. C.S.A. Section 3301 (b)                9

18 Pa. C.S.A.   Section 3301 (c)                                          9

18 Pa. C.S.A.   Section 3302                                              9

18 Pa. C.S.A.   Section 4910 (1)                                          9

18 Pa. C.S.A.   Section 4952 (a)(i)                                       27

18 Pa. C.S.A.   Section 5101                                              27

18 Pa. C. S. A.   Section 5701                                            15

18 Pa. C.S.A.   Section 5704 (2)(ii)                          15, 16, 17, 19, 29

18 Pa. C.S.A.   Section 5714 (a)                                          16


Pennsylvania Rules of Criminal Procedure:

Rule 305                                                                  24

Rule 305 (B)(i)(a)                                                        24

Rule 305 (E)                                                             24

Rule 573                                                                  24

STATEMENT OF QUESTIONS PRESENTED

I.    WHETHER PETITIONER WAS DENIED HIS FIFTH, SIXTH AND FOURTEENTH AMENDMENT RIGHTS WHEN THE COMMONWEALTH VIOLATED THE STATUTORY PROVISIONS OF TITLE 18 Pa. C.S.A. SECTION 5704 (2) (ii).


II.    WHETHER PETITIONER WAS DENIED HIS FIFTH, SIXTH AND FOURTEENTH AMENDMENT RIGHTS UNDER MASSIAH AND ITS PROGENY WHEN THE COMMONWEALTH SURREPTITIOUSLY RECORDED TRIAL STRATEGY VIA RADIO TRANSMITTER PLACED ON CO-DEFENDANT AFTER THE RIGHT TO COUNSEL HAD ATTACHED.


III.    WHETHER PETITIONER WAS DENIED HIS FIFTH, SIXTH AND FOURTEENTH AMENDMENT RIGHTS UNDER BRADY AND ITS PROGENY WHEN THE COMMONWEALTH FAILED TO PROVIDE HIM WITH THE SURREPTITIOUS RECORDINGS AND EXCULPATORY EVIDENCE CONTAINED WITHIN.

STATEMENT OF THE CASE

A.  Statement of Proceedings

Petitioner/Defendant Steven L. Romansky was jury tried on September 17, 1986, in the Court of Common Pleas of Wayne County before the Honorable Robert J. Conway. He was convicted of Arson, 18 Pa. C.S.A. Section 3301(c); Reckless Burning or Exploding 18 Pa. C.S.A. Section 3301(b); Causing or Risking Catastrophe, 18 Pa. C.S.A. Section 3302; and Tampering with Evidence, 18 Pa. C.S.A. Section 4910(1). The court subsequently granted Petitioners Motion in Arrest of Judgment as to the arson conviction and Petitioner was sentenced on February 10, 1987, to an aggregate term of 4 to 10 years imprisonment.

Petitioner filed a timely Notice of Appeal with the Pennsylvania Superior Court at No. 00706 PHL 87. The Superior Court Affirmed the Judgment of the Lower Court on November 24, 1987. Commonwealth v. Romansky, 373 Pa. Super. 639, 536 A. 2d 828 (Pa. Super. 1987). No Petitioner for Allowance of Appeal was filed with the Pennsylvania Supreme Court.

On September 18, 1995, Petitioner filed his First Petition for Post-Conviction Relief in the Court of Common Pleas of Wayne County. By order of April 28, 1999, the Honorable Robert J. Conway denied relief without holding an evidentiary hearing.

Petitioner filed a timely Notice of Appeal with the Pennsylvania Superior Court at No. 01538 EDA 99. The Superior Court Affirmed the Judgment of the Lower Court on December 17, 1999. Commonwealth v. Romansky, 750 A.2d 374 (Pa. Super. 1999). The Pennsylvania Supreme Court denied Petitioners Petition for Allowance of Appeal on July 25, 2000, at No. 6241 M. D. Alloc. Commonwealth v. Romansky, 568 Pa. 659, 795

A 2d 974 (Pa 2000).

On August 25, 2000, Petitioner filed a Petition For Writ of Habeas Corpus with the United States Middle District. Romansky v. Blaine, No. 1:00-cv-0152. The Petition was denied by the Honorable Sylvia H. Rambo on August 24, 2001.

On September 6, 2001, Petitioner filed a timely Notice of Appeal to obtain a Certificate of Appealability in the Third Circuit Court of Appeals at No. 01-3529.

On March 7, 2002, the Third Circuit Court of Appeals granted Certificate of Appealability and appointed Mary Gibbons, Esquire and ordered the Attorney General's office to provide Petitioner with the long sought after audiotapes. Romansky v. Blaine, No. 01-3529. Briefing was delayed while Petitioner sought Post-Conviction Relief with the state courts based upon the audiotapes.

On April 17, 2002, Petitioner filed his Second Post-Conviction in the Court of Common Pleas of Wayne County. By Order of July 10, 2002, the Honorable Robert J. Conway denied relief without holding an evidentiary hearing.

Petitioner filed a timely Notice of Appeal with the Pennsylvania Superior Court at No. 02478 EDA 02. The Superior Court Affirmed the Judgment of the Lower Court on March 24, 2003. Commonwealth v. Romansky, 823 A.2d 1029 (Pa. Super. 2003). The Pennsylvania Supreme Court denied Petitioner's Petition for Allowance of Appeal on August 26, 2003, at No. 277 MAL 03. Commonwealth v. Romansky, 574 Pa. 753, 830 A.2d 975 (Pa. 2003).

On May 6, 2004, the Third Circuit Court of Appeals served the issues on appeal and directed the parties initially to address the issue of jurisdiction.

On January 6, 2005, the Third Circuit Court of Appeals due to the fact that the parties agreed that Petitioner was

in custody at the time he filed his habeas petition remanded to this Honorable Court.

B.  Statement of Facts.

At approximately 8:00 a.m. on September 25, 1984, an employee of a construction company located behind the Pennsylvania State Police barracks discovered evidence of a fire trial in the grassed area comming from a construction trailer owned by Dursan Construction and leading to the vehicles under impoundment.

Subsequent investigation by authorities revealed that a 1977 Bronco had been the primary target of the arson attempt.

On May 15, 1985, the Third State Wide Investigating Grand Jury, supervised by the Honorable G. Thomas Gates issued an order accepting Presentment No. 33 in which Thomas E. Smithers was indicted for the following charges pertaining to the 1979 Ford Bronco: Receiving Stolen Property; Conspiracy; Obstruction of the Administration of Law; Intimidation of Witnesses or Victims; Removal or Falsification of Identification Numbers; Dealing in Vehicles With Removed or Falsified Numbers; Dealing in Titles and Plates for Stolen Vehicles; and Fake Application for Certificate of Title or Registration.

Faced with the certainty of incarceration Smithers seeks a deal with the Attorney General's Office. Smithers agrees to wear a body wire aimed at Petitioner and the Attorney General's office agress to hid the fact that Smithers was indicted by the grand jury.

After the surreptitious recordings which took place between December 1985 and January 1986, Petitioner was arrested for arson and related charges.

To mislead the jury the prosecutor put together a hodgepodge of selected sentences excluding any inculpating statements made by Mr. Smithers and omitted the fact that Mr. Smithers was indicted by the grand jury on charges for the very same vehicle.

Interestingly, the tapes now made available to Petitioner reveal that nothing stated by Petitioner on the tapes even comes close to depicting the date of the arson, the scene of the arson or the after effects of the arson.

Therefore, the jurors could not possibly make a fair determination of who committed the arson while remaining ignorant of the fact that Mr. Smithers was indicted for the 1979 Ford Bronco and the opportunity to listen to a complete set of tapes.

## SUMMARY OF ARGUMENT

Petitioner's motion under 28 U.S.C. Section 2254 seeks relief regarding the tape recorded conversations between Petitioner and Co-defendant Thomas E. Smithers, which tapes were only provided to Petitioner by the Third Circuit Court of Appeals pursuant to Order of March 7, 2002, at the time of the granting of the Certificate of Appealability ("COA"). The tapes are a part of the District Court record, however, they were never served on Petitioner when they were filed by Respondent, nor had Petitioner ever previously received these tapes. Thus, there was no opportunity for Petitioner to prepare or submit a transcript of the tapes or indeed even to review their contents or raise any issues concerning the tapes - while the case was before this Court.

Petitioner contends that, after a review of the attached Tape Recording Transcript marked as Exhibit "A" there can be no doubt of constitutional violations. More specifically, Petitioner contends that under the Fifth Amendment of the United States Constitution Petitioner cannot be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law. The Sixth Amendment gives Petitioner the right to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence. The Fourteenth Amendment ensures that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law.

By applying the new evidence in this case it becomes

eminently transparent that the actions of the Commonwealth in withholding the tapes was to cover-up the criminal activity of the Attorney General's Office. Indeed, the Wiretap Act itself criminalizes the actions taken by the Attorney General's Office as Petitioner's first issue will clarify. Petitioner's Second issue - Massiah violation - is clarified by the fact that both Petitioner and Mr. Smithers were indicted by the grand jury on February 4, 1985, and the first recording was December 19, 1985. In Petitioner's third issue he demonstrates how all three elements of a Brady violation are met.

ARGUMENT

I.  PETITIONER WAS DENIED HIS FIFTH, SIXTH AND FOURTEENTH AMENDMENT RIGHTS WHEN THE COMMONWEALTH VIOLATED THE STATUTORY PROVISIONS OF TITLE 18 Pa. C.S.A. SECTION 5704 (2)(ii).

The focus and purpose of the Wiretapping and Electronic Surveillance Control Act of 1978, 18 C.S.A. Section 5701, et seq. (the Act) is the protection of privacy. Commonwealth v. DeMarco, 396 Pa. Super. 357, 371, 578 A.2d 942, 949 (Pa. Super. 1990) The Act does permit law enforcement officials to listen in to the conversations of third parties without their knowledge only when the official complies with the procedures provided for such an interception. The official must have the consent of one of the parties to the call; he or she must have that consent evaluated by the proper authority; and the evaluation must be in writing and must verify that the consent of the individual was voluntary. Commonwealth v. Brachbill, 520 Pa. 533, 546, 555 A.2d 82, 89 (Pa. 1989).

In the present case there was no attempt to comply with the directive of Section 5704(2)(ii). Section 5704, in pertinent part, provides:

Section 5704 Exceptions to prohibition on interception and disclosure of communications:

It shall not be unlawful under this chapter for:

(2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire or oral communication involving suspected criminal activities where:

(i) Such officer or person is a party to the communication; or

(ii) One of the parties to the communication has given prior

consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be made, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception; however such interception shall be subject to the recording and record keeping requirements of section 5714 (a) (relating to recording of intercepted communications) and that the Attorney General, deputy attorney general, district attorney or assistant district attorney authorizing the interception shall be the custodian of recorded evidence obtained therefrom. 18 Pa. C.S. Section 5704 (2) (emphasis added).

In Commonwealth v. Clark, 374 Pa. Super. 308, 542 A.2d 1036 (1988), allocatur denied, 523 Pa. 635, 565 A.2d 444 (1987), the Superior Court concluded that the Wiretap Act requires that the Attorney General District Attorney, or a designee of the Attorney General or District Attorney, review the facts and interview an informant each time a new consent is signed in order to determine the voluntariness of that consent. The Clark Court wrote:

The provisions of the Act must be strictly adhered to in order to insure that safeguards are in place to protect persons from unauthorized surreptitious interceptions. Here, the supervision directed by the Act was not followed. The responsibilities outlined in the Act regarding the duties of the Attorney General, District Attorney or their designee are non-delegable [sic]. Those persons responsible for authorizing interceptions under the Act must personally review the facts, ascertain directly from the consenting party the voluntariness of his or her consent

and give prior approval to the interceptions. The Assistant District Attorneys [sic] designated to authorize the interception of Appellants conversations with Mr. McCullough never performed these prepatory [sic] duties. Rather, these duties were wrongly delegated to and undertaken by the Pennsylvania State Police.

Id. 374 Pa. Super. at 317, 542 A.2d at 1040. See also: Commonwealth v. Adams, 362 Pa. Super. 549, 556, 524 A.2d 1375, 1378 allocatur denied, 516 Pa. 631, 533 A.2d 90 (1981).

As previously stated in the present case there was no attempt by Deputy Attorney General, Gregory B. Abeln to comply with the directive of section 5704 (2) (ii). The record indicates that Mr. Abeln improperly delegated to the Agents conducting the investigation the duty to ensure that the consent of Mr. Smithers was voluntary.

On December 17, 1985, the Audiotape Transcript of Tape No. 23 Side One of Case No. 21-298 (Exhibit A) states:

I, William E. O'Connell, Criminal Investigator, Office of Attorney General, Bureau of Criminal Investigation, Certification Number 0025, am placing a body recorder on the person of Thomas E. Smithers this 17th day of December 1985 at approximately 1810 hours. Do you, Thomas E. Smithers, voluntarily consent to the placing of this device upon your purpose to be, upon your person for the purpose of intercepting one Steven Romansky?

Thomas E. Smithers: I do. Id. at page 1.

Mr. O'Connell is an Investigator not the Attorney General or his deputy attorney general designated in writing by the Attorney General.

On December 14, 1986, the Audiotape Transcript of Tape

No. 24A of Case No. 21-298 (Exhibit A) points out the double recording that was being done. Note the placing of a body transmitter on Mr. Smithers and the placing of a Nagra recorder in the vehicle of Mr. Smithers.

I, William E. O'Connoll, Criminal Investigator, Office of Attorney General, Bureau of Criminal Investigation Certification Number 0025, am placing a body transmitter and Nagra recorder in a vehicle belonging to one Thomas E. Smithers, this 14th day of January 1986, at approximately 18:30 hours. Do you Thomas Smithers voluntarily consent to the placing of these devices within your vehicle for the purpose of intercepting your conversation with one Steven Romansky?

Thomas E. Smithers: I do. Id. at page 54, 55.

On January 19, 1986, the Audiotape Transcript of Tape No. 25 Side One of Case No. 21-298 (Exhibit A) states:

I, James A. Dill, Special Agent, Bureau of Criminal Investigation, Office of Attorney General, Investigation Number 0038 am placing a body transmitter on the person of Thomas Smithers this 19th day of January 1986, at 8.40 A.M. Do you Thomas Smithers voluntarily consent to the placing of this device on your person and record your conversation with Steven Romansky?

Thomas E. Smithers: I do. Id. at page 128, 129.

Mr. Dill is an Investigator not the Attorney General or his deputy attorney general designated in writing by the Attorney General. Thus, as the above excerpts clarify the duties imposed by the Act were improperly delegated to the agents conducting the investigation. Therefore, because

these duties were wrongly delegated to the agents conducting the investigation it is eminently clear that the procedure prescribed by 18 Pa. C.S.A. Section 5704(2)(ii) was not followed with respect to the surreptitious recordings between Petitioner and Thomas E. Smithers. Accordingly, Petitioners rights to due process under the Fifth, Sixth and Fourteenth Amendments were indeed circumvented by the agents from the office of the Attorney General.

II.   PETITIONER WAS DENIED HIS FIFTH, SIXTH AND FOURTEENTH AMENOMENT RIGHTS UNDER MASSIAH AND ITS PROGENY WHEN THE COMMONWEALTH SURREPTITIOUSLY RECORDED TRIAL STRATEGY VIA RADIO TRANSMITTER PLACED ON CO-DEFENDANT AFTER THE RIGHT TO COUNSEL HAD ATTACHED.

The Fifth Amendment of the United States Constitution states that Petitioner cannot be deprived of his life, liberty or property, without due process. The compulsory process clause under the Sixth Amendment gives Petitioner the right to the assistance of counsel. The Fourteenth Amendment ensures that no state can abridge any of the privileges or immunities of its citizens without due process of law. However, the relevant facts and procedural history of this case indicates that the Attorney Generals Office felt that our constitution was nothing more than mere words that did not apply to them, and they had no affirmative obligation to respect and preserve it.

Contrary to this evident assessment by Respondents the Sixth Amendment right to counsel applies to all federal and state criminal prosecutions. Johnson v. Zerbst, 304

U.S. 458, 463 (1938). The Sixth Amendment right to counsel in criminal proceedings applies to states through the Fourteenth Amendment. Gideon v. Wainwright, 372 U.S. 335, 342 (1963). The right to counsel attaches at critical stages of criminal prosecution after the initation of adversarial judicial proceedings. United States v. Spruill, 296 F.3d 580, 585 (7th Cir. 2002). Right to counsel attached at post-indictment interrogations. See also Massiah v. United States, 377 U.S. 201, 206 (1964).

If the Sixth Amendment violation pervades the entire proceeding, harmless error analysis is inapplicable and the violation is enough to overturn a conviction regardless of the severity of the results. Mitchell v. Mason, 325 F.3d 732, 741-44 (6th Cir. 2003). Harmless error analysis inapplicable when defendant was denied assistance of counsel during critical pre-trial stage.

Regardless of the uncertainty between proper and improper advocacy, the courts have consistently found that prosecutors may not elicit information from defendant without the presense of defense counsel. Massiah, 377 U.S. at 201, 204. See also Beardslee v. Woodford, 327 F.3d 799, 811 (9th Cir. 2003).

In the annals of jurisprudence finding a prior case that is exactly on point with the present case is indeed a rare occurrence, and when that case is a United States Supreme Court precedent that removes any hazy, indistinct, obscure, shadowy, nebulous doubts that the present case is a case in which relief must be granted it is without a doubt a serendipitous occasion for any litigator.

Just such a case can be found in Maine v. Moulton, 474 U.S. 159, 106 S.Ct. 477 (1985). In Maine, a Waldo County grand jury returned indictments charging Moulton and Colson with four counts of theft by receiving involving

vehicles and automotive parts. Id, at 480.

Both Moulton and Colson were released on bail pending trial. While on bail Colson, accompanied by his lawyer, met with Police Chief Keating and State Police Detective Rexford Kelley. At these meetings, Colson gave full confessions of his participation with Moulton in committing the crimes for which they had been indicted. In addition, Colson admitted that he and Moulton had not merely received stolen automotive parts, but also had broken into the local Ford dealership to steal the parts. Colson also stated that he and Moulton had set fire to the dump truck and had committed other thefts. The officers offered Colson a deal: no further charges would be brought against him if he would testify against Moulton and otherwise cooperate in the prosecution of Moulton on the pending charges Colson agreed to cooperate. Id, at 480.

Colson also agreed to the placing of a recording device on his telephone and consented to be equipped with a bodywire transmitter to record what was going to be said at a meeting between him and Moulton to work out the details on the pending charges. Id, at 480-481.

At the meeting as was to be expected from the recorded telephone conversations, consisted of a prolonged discussion of the pending charges-- what actually occurred, what the State's evidence would show and what Moulton and Colson should do to obtain a verdict of acquittal. Id, at 481. These statements were later admitted into evidence against Moulton at trial. Id, at 482.

Moulton filed a pretrial motion to suppress recorded statements he made to Colson and the statements he made at the meeting with Colson. In denying the motion the trial court found that the recordings were made "in order to gather information concerning the anonymous threats that

Mr. Colson had been receiving, to protect Mr. Colson and to gather information concerning defendant Moulton's plans to kill Gary Elwell." Id., at 482.

Moulton appealed his convictions on the ground that the admission into evidence of his statements to Colson violated his Sixth Amendment right to the assistance of counsel. The Supreme Judicial Court of Maine held that the State cannot use against Moulton at trial recordings of conversations where the state "knew, or should have known" that Moulton would make incriminating statements regarding crimes as to which charges were already pending. Id., at 482, 483.

The Solicitor General argued that the incriminating statements obtained by the Maine police nevertheless should not be suppressed because the police had other legitimate reasons for listening to Moulton's conversations with Colson, namely, to investigate Moulton's alleged plan to kill Gary Elwell and to insure Colson's safety. Id., at 488.

The Maine Court stated that, "the right to the assistance of counsel guaranteed by the Sixth and Fourteenth Amendments is indispensable to the fair administration of our adversarial system of criminal justice. Embodying 'a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself.' Johnson v. Zerbst, 304 U.S. 458, 462-463, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938), the right to counsel safeguards the other rights deemed essential for the fair prosecution of a criminal proceeding." Id., at 463.

The Maine Court also held that "Once the right to counsel has attached and been asserted, the State must of curse honor it. This means more than simply that the State cannot prevent the accused from obtaining the assistance of counsel. The Sixth Amendment also imposes on the State an affirmative obligation to respect and preserve the accused's choice to

seek this assistance. We have on several occasions been called upon to clarify the scope of the States obligation in this regard, and have made clear that, at the very least, the prosecutor and police have affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel. Id., at 481. Citing Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed. 2d 1265 (1959); Missiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed. 2d 246 (1964); and United States v. Henry, 477 U.S. 264, 100 S.ct. 2183, 65 L.Ed 2d 115 (1980).

In the present case both Petitioner and Mr. Smithers were called before the grand jury on February 4, 1985, and represented by counsel. The grand jury indicted on May 15, 1985, for various vehicle charges. Petitioner's charges involved a 1977 GMC Truck and Mr. Smithers was charged with the 1979 Ford Bronco. The supposed target of the arson. See Exhibit B. The first surreptitious recording took place on December 19, 1985. Thus, no complex calculations are required to ascertain that the right to counsel attached several months before the first recording.

Therefore, because this Sixth Amendment violation pervades the entire proceeding, harmless error analysis is inapplicable. Just a casual reading of Exhibit A makes it evident that the Attorney Generals' Office has exclusive control over all the evidence and witnesses in all three of Petitioner's trials.

III.   PETITIONER WAS DENIED HIS FIFTH, SIXTH AND FOURTEENTH AMENDMENT RIGHTS UNDER BRADY AND ITS PROGENY WHEN THE COMMONWEALTH FAILED TO PROVIDE HIM WITH THE SURREPTITIOUS RECORDINGS AND EXCULPATORY EVIDENCE CONTAINED WITHIN THE AUDIOTAPES.

Under the United States Constitution Amendments Five and Six, Petitioner has the right to due process of the law. The Fourteenth Amendment ensures that the state cannot abridge the privileges or immunities of Petitioner without due process of law. All of the above were violated by the Commonwealth's withholding of the surreptitious tape recordings as the following more fully sets fourth.

Rule 305 of Pa. R. Crim. P. (Repealed) and renumbered as Rule 573 effective April 1, 2001, was promulgated in response to the dictates of <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.ct. 1194, 10 L. Ed. 2d 215 (1963). See <u>Commonwealth v. Green</u>, 536 Pa. 599, 607, 640 A.2d 1242, 1146 (1994). The rule provides, in pertinent part, as follows:

(B)  Disclosure by the Commonwealth.

(i)  Mandatory. In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(a)  Any evidence favorable to the accused which is material either to guilt or to punishment, and which is within the possession or control of the attorney for the Commonwealth. Pa. R. Crim. P. 305 (B)(i)(a).

In the event of a violation of Rule 305, the trial court "may order [the offending] party to permit discovery or inspection, may grant a continuance, or may prohibit [the offending] party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances." Pa. R. Crim. P. 305 (E).

The governing law of Brady is easily enough stated. In Brady, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. 1194. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused. United States v. Agurs, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed. 2d 342 (1976), and that the duty encompasses impeachment evidence as well as directly exculpatory evidence. United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 3381, 87 L.Ed. 2d 481 (1985). On the question of materiality the Court has noted that "[s]uch evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Strickler v. Greene, 527 U.S. 263, 281, 119 S.Ct. 1936, 1948, 144 L.Ed. 2d 286 (1999) (quoting Bagley, 473 U.S. at 682, 105 S.Ct. 3375). The materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. "Rather, the question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" Id. at 290, 119 S.Ct. 1936 (quoting Kyles, 574 U.S. at 435, 115 S.Ct. 1555). Thus, there are three necessary components that demonstrate a violation of the Brady strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensured. Id. at

281, 119 S. Ct. 1936.

In the present case, the evidence is both exculpatory and impeaching. Impeaching in regards to Special Agent Russell W. Thomas' testimony. Interestingly, and perhaps the most important thing to keep in mind is the fact that Prosecuting Attorney Gregory B. Abeln chose to ignore the evidence - Exhibit B- and recommendations of the Honorable G. Thomas Gates and prosecute who he wanted for what he wanted and when he wanted. To accomplish his goal it was imperative that Mr. Abeln deny the recommendations made by the grand jury.

The following excerpts from trial before the Honorable Robert J. Conway held September 15, 16, 1986, makes this point clear. The following took place at side bar: Mr. Abeln to the Court:

I'm not going to offer any evidence through Mr. Thomas or Mr. Smithers or any body else to the course of this car, only that Mr. Thomas had investigated Mr. Smithers and there was no intention on our office whatsoever to prosecute this individual [Thomas E. Smithers] at any time. Id., at 94.


Mr. Abeln questing Special Agent Russell W. Thomas:
Q. In relation to the inspection records of the Bronco, the defendant's Bronco, did Mr. Smithers inspect that Bronco?
A. No. A mechanic employed by him at his station did that, according to the records, and according to what he told me.
Q. Was Mr. Smithers called to the grand jury as a witness in regards to the Romansky Bronco?
A. Yes, he was.
Q. Did the grand jury make recommendations to

prosecute individuals involved in an overall -- the activities of your investigation?

Mr. Borden: Please note my objection.

The Court: Overruled.

A. Yes, sir, the grand jury made recommendations to prosecute various individuals.
Q. Was any such recommendation made in regard to Thomas Smithers?
A. None whatsoever.

Id., at 95, 96.

A review of Exhibit B makes two things clear. One the grand jury refered to the 1979 Ford Bronco as the Smithers Bronco. Two the grand jury recommended Mr. Smithers be charged with various vehicle charges. In addition, Mr. Smithers was to be charged with Obstruction of the Administration of Law, 18 Pa. C.S.A. Section 5101 and Intimidation of Witnesses or Victims, 18 Pa. C.S.A. Section 4952 (a)(1).

Mr. Abeln is the very same Prosecuting Attorney who fought hard in presenting his case before the grand jury seeking an indictment against Mr. Smithers. After he receives his indictment he becomes obsessed in hiding the fact Mr. Smithers was indeed indicted. He refers to the Bronco as the Romansky Bronco and elicits false testimony from arresting officer Special Agent Russell W. Thomas.

There can be no genuine doubt that Petitioner's life and liberty depended upon the jury's estimate of the truthfulness and reliability of the Prosecuting Attorney and his witness.

However, in this case the jury was told lie after lie by the Attorney General's Office which perpetrated a falsehood and a fraud upon the Court, jury and the people of the Commonwealth.

Therefore, the evidence - Exhibit B - was impeaching in regards to Special Agent Russell W. Thomas and exculpatory because it would have shown the jury that it was indeed Mr. Smithers that was indicted for the 1979 Ford Bronco and not Petitioner. In regards to being suppressed by the prosecutor, either willfully or inadvertently, Petitioner believes and justly so that the above excerpt from trial testimony leaves no doubt that both Mr. Abeln and Mr. Thomas with their shuck-and-jive routine willfully lied to the court and jurors, and without being armed with the fact that Mr. Smithers was indeed indicted for the Bronco there can be no doubt that prejudice ensured.

Turning to the second Brady issue - Exhibit A, Transcript of Surreptitious Tape Recordings - Petitioner believes and therefore avers that the evidence at issue is favorable, exculpatory and impeaching. Thus, Petitioner has transcribed the tapes to the best of his ability and attached same to the within brief for this Court's review. Because the transcript contains an overwhelming amount of evidence that pertains to three trials in three counties Petitioner will limit the following excerpts to the Wayne County case that is now before the Court as it relates to the arson on the 1979 Ford Bronco.

After decades of minimalism by the office of the Attorney General, it is refreshing to have at last a transcript of the elusive tapes for the first systematic refutation from the opposite position. Due to the fact that Deputy Attorney General Gregory B. Abeln was skilled in the art of deception it is important to keep a few facts and dates in mind

that cannot be ascertained by a reading of the transcript alone.

First, as mentioned above Petitioner and Mr. Smithers were indicted by the grand jury on May 1st, 1985, on vehicle charges, and naturally should have been tried on those charges first. However, had Mr. Abeln tried that case first he would have had to turn over the surreptitious tape recordings to Petitioner. This in turn would have made the Massiah issue and the violation of 18 Pa. C.S.A. section 5704 (2) (ii) clear to the defense. In addition, the exculpatory evidence within the tapes would have jeopardized a conviction on the vehicle charges. Thus, it was imperative for Mr. Abeln to try the cases in reverse order and keep the Smithers indictment and the evidence within the tapes from the hands of the defense.

Second, inspite of the fact that selected parts of these tapes were used to convict Petitioner the Attorney Generals Office felt that it was under no legal obligation to provide copies to the defense. See Exhibit C. A classic example of Orwellian doublespeak, insofar as it can be interpreted to commend in the same breath two diametrically opposite courses of action. Clearly if the tapes are to be used at all they should be made available to both sides.

Third, it should be keep in mind that at the time of the Wayne County trial the ownership of the 1979 Ford Bronco had not been ascertained. In fact, the grand jury indictment was not discovered for another decade. However, Mr. Abeln continued to refer to the Bronco as the Romansky Bronco or the Defendant's Bronco. Exhibit D clearly shows that Mr. Abeln also knew this to be a lie.

Fourth, it should be keep in mind that the residence of Petitioner from 1980 until his incarceration in 1986 was Pocono Summit, Pennsylvania and not Lake Wallenpaupack as the Attorney General's office was led to believe by Mr.

Smithers. See Exhibit E.

In reviewing Exhibit A (Tape Transcript) will be refered to by page (P) and line (L). Hereafter refered to as (E.A., P.__, L.__)

The first mention of the arson on the Bronco can be found in E.A., P.7, L.7, Petitioner states they have nothing on him pertaining to the arson. E.A., P.8, L.4, Mr. Smithers still sees a problem with the arson. And Petitioner states that it's not possible to be in two places at the same time. E.A., P.16, L.19-28. Petitioner states that the receipt for the Bronco came through Mr. Smithers - this is the same receipt given to Mr. Smithers at Twin Rocks. Petitioner also places the Bronco in the back of the Smithers' garage. E.A., P.25, L.21-23, Petitioner is trying to track down the owner of the Bronco. E.A., P.25, L.27-32, Mr. Smithers prevents this. E.A., P.26, L.22-28, Petitioner is looking for the truth about the Bronco. E.A., P.30, L.29-33 and P.31, L.1-3, Petitioner is asking how he can give testimony without involving Mr. Smithers. At this point the conversation is over. E.A., P.34, L.31. However, Special Agent Russell W. Thomas is not happy and points that fact out to Mr. Smithers. E.A., P.35, L.13-21.

E.A., P.39, Mr. Smithers asks about the arson and Petitioner states that nothing went on with the arson. Also this is the first mention of fiberglass. E.A., P.42, L.12,13. Petitioner states the arson is a bull shit story. E.A., P.44, Petitioner makes it clear that he is being pressured to give up Smithers for the arson. E.A., P.54, ends the recording for December 19, 1985.

After the deal with Mr. Abeln Mr. Smithers is sent back to Petitioner on January 14, 1986. E.A., P.55, L.26-31, Mr. Smithers makes it clear that the office of the Attorney General knows that he is the arsonist. E.A., P.56, L.9-16, Petitioner makes it clear that he will not agree to help convict Mr. Smithers. E.A., P.63, L.6, Mr. Smithers states that he read the report on the arson. E.A., P.63, L.22-23, Mr. Smithers

has his tit in a wringer over the arson. E.A., P.68, L.22, 23, Mr. Smithers again makes it clear that they knew that he is the arsonist. E.A., P.83, L.19, 20, Petitioner gives up his alibi as the Webb. E.A., P.84, L.28-30, Petitioner states, "I didn't do it."

E.A., P.100, L.16, is where we get out of the car. We are out for about half an hour and none of this is recorded. E.A., P.101, L.23-33 and P.102, L.1, 2, Mr. Smithers states that it was Alexander Horek from the Pa. State Police in Honesdale, Pa. that told him about the arson. E.A., P.102, L.24, 25, Mr. Smithers tries to place Petitioner on a motorcycle because it fits the police report.

The following excerpt of the conversation between Petitioner (SR) and Mr. Smithers (TS) is copied verbatim due to the significant difference of what actually happened at the arson scene and what Petitioner stated happened. The fire was not discovered by anyone at the PSP barracks. In fact, it was discovered by a construction worker when he noticed a fire trail through the high grass. The fire burnt its self out and went on noticed for days and did very little damage. However, that is not the picture that Petitioner paints below.

E.A., P.120, L.5 to P.121, L.6:

TS: Did you burn all the vehicles? Excuse me. How can I word this. How can I word this thing?

SR: You shouldn't know. It won't do you any good to know and you shouldn't know. Because if they start to ask you about that and you do know something that you shouldn't you could only get it from one other person.

TS: I didn't.

31

SR:  You'll get your self trapped.

TS:  Okay I don't want to know. But I want to know one thing.

SR:  Um huh.

TS:  Is the Bronco burned up?

SR:  Completely.

TS:  Yeah.

SR:  It's gutted.

TS:  It's gutted.

SR:  You can't melt steel in a motor okay. There's no paint left on it. It's wall to wall rust. It doesn't matter. It was done legally. You know you could legalize that Bronco for me. You know there's two people there's a special title for that piece of paper to have it done.

E.A., P. 122, L. 17-25, Mr. Smithers is asking Special Agent Russell W. Thomas if they got enough information yet. E.A., P. 127, to P. 128, L. 8, we're talking about the first time Mr. Smithers was arrested for vehicle charges. E.A., P. 128 ends the tape recording from January 14, 1986.

E.A., P. 131, L. 1-20, is when Petitioner hands Mr. Smithers receipts, pictures and dates of events as he requested at their January 19, 1985, meeting. Evidence that has never been turned over to Petitioner. E.A., P. 133, L. 5-7, Mr.

Smithers is talking about the police report on the arson. E.A., P. 133, L. 23, 24, Mr. Smithers states that there is a Dorphin Construction Company near the Police Barracks. E.A., P. 133, L. 30, Petitioner states he does not know the name of the place. E.A., P. 134, L. 1, Petitioner reads -Through high grass- on the Police Report. E.A., P. 134, L. 3, 4, Mr. Smithers reads that there was two people and something about paint cans. E.A., P. 134, L. 6-14, Petitioner states that there is no high grass, no two people and no paint cans.

E.A., P. 149, L. 8, Petitioner states that two guys came out about twenty minutes after the fire started. E.A., P. 150, L. 93, Petitioner states that he never heard of the construction outfit that was in the Police Report. E.A., P. 162, L. 25, 26, again Mr. Smithers states they got paint cans at the arson scene. E.A., P. 163, L. 30, Petitioner states that there is no high grass.

Again because what is stated below is so significantly different from the actual fire scene it is taken verbatim from the tapes as follows:

E.A., P. 175, L. 1-29,

TS:  Well who put the fire out?

SR:  Those guys.

TS:  Who did?

SR:  The fire comedy come right after that.

TS:  The guys.

SR:  One come running out with a foam extinguisher and the other one come running out with a firehose ten minutes later. It isn't something that went out

33

right away it just, it was just that it kind of picked it self up. Didn't stay in the same area, okay. It was good. Like a well oiled plan. Just enough to get attention. Do you realize what it's costing them people to fence them in there like that. Another way they tried to nail me is they tried to say mine was the only one that burnt and they did that right up to Harrisburg. All the way they keep spreading that lie. All the way.

TS:   Wasn't yours the only one?

SR:   There was at least a dozen. They was there for three hours running around.

TS    They were there for three hours.

As stated above the fire went unnoticed by anyone at the PSP barracks and was not put out by anyone. It simply burnt it self out and the only thing noticable was a fire trail in the high grass, noticed by a construction worker.

E.A., P. 187, L.6, Petitioner gives the date of the arson as December. [The Arson was in September] E.A., P. 188, L. 13, Petitioner asks Mr. Smithers if the title is okay for the Bronco.

After a review of the above tape recording excerpts there can be no genuine doubt that the snaking trail of deception starts with Thomas E. Smithers and winds further up the chain of command until it reaches the mastermind of deception. Deputy Attorney General, Gregory B. Abeln. Mr. Abeln had specific knowledge of the abhorrent methods used in this prosecution. He knew that Mr. Smithers was indicted for the 1979 Ford Bronco by the grand jury. He knew that Mr.

34

Smithers had his ass in a sling over the arson on the Bronco, (E.A. P.26, L. 26, 31) and his tit in the wringer. (E.A. P.63, L. 22, 23).

From the stand point of intelligence it would strain credibility for the Attorney Generals' Office to argue that it was under no legal obligation to turn over the tapes to Petitioner. The above excerpts are indeed exculpatory due to the fact that not one statement made by Petitioner even comes close to depicting the scene of the arson. The fiberglass cans that the jury was led to believe were found at the scene were not. The tape recordings clearly state paint cans. (E.A. P. 134, L. 6-14 and P. 162, L. 25, 26). Thus, impeaching evidence was withheld. Exhibit C confirms that the evidence was suppressed willfully. Therefore, because Petitioner, the jury and the court was denied this evidence it stands to reason that prejudice ensured.

Because it is plain from the record that Petitioner was denied due process under the Fifth, Sixth and Fourteenth Amendments by the intentional, indisputable misconduct of both the Prosecutor and the egregious behavior of its officers which led to the conviction of an innocent man together with the willfull withholding of the above evidence which establishes the criminal intent of the Prosecutor this case plainly shows that a miscarriage of justice has occured which no civilized society would tolerate irremediably tainting Petitioner's conviction requiring discharge.

## RELIEF SOUGHT

WHEREFORE, Petitioner Steven L. Romansky moves this Honorable Court to grant the following relief:

a) Accept jurisdiction over the case pursuant to 28 U.S.C. Section 2254;

b) Require the Respondent to answer the allegations in this Petition and the Brief in Support;

c) Hold such evidentiary hearing as this Court may deem necessary or appropriate;

d) Issue an order that this Court will grant a Writ of Habeas Corpus unless the state holds a new trial within a specified time; and

e) Issue a Writ of Habeas Corpus freeing Petitioner from his unconstitutional confinement.

Respectfully submitted,

Steven L. Romansky
175 Progress Drive
Waynesburg, PA 15370-8090

Dated: September 2, 2005

36

DECLARATION OF STEVEN L. ROMANSKY

I, Steven L. Romansky, states and declare as follows:

1. I am the pro se Petitioner in the above entitled matter. This case arises from Petitioner's 1986 conviction in Wayne County, Pennsylvania of Reckless Burning or Exploding, Causing or Risking Catastrophe, and Tampering with Evidence. The charges arose from a fire at the Pennsylvania State Police Barracks of a 1979 Ford Bronco.

2. Pursuant to a March 7, 2002, Order of the Third Circuit Court of Appeals the Commonwealth was compelled to provide Petitioner with four (4) audiotapes. Romansky v Blaine, C.A. No. 01-3526.

3. The four (4) audiotapes at issue here contains conversations between Petitioner and Thomas Smithers several months after the right to counsel had attached. Had the tapes been disclosed in compliance with Brady v. Maryland, 373 U.S. 83 (1963), Petitioner would have had significant evidence to utilize. In particular, the audiotapes include dates and statements that clarify issues I and II. In addition, the tapes also include admissions by Mr. Smithers which go to his mental state in regard to his having obtained immunity from prosecution.

4. Petitioner first gained access to the four (4) audiotapes of his conversations with Smithers only after years of effort to obtain them. The Commonwealth refused to provide him with the tapes, even after having filed them in this Court. The Commonwealth filed a

"Response In Opposition To Motion To Compel The Commonwealth To Turn Over Copies of Cassette Tapes To Petitioner" which acknowledged that the tapes had been provided to the District Court but never served on Petitioner.

5. Based upon the fact that the jurors remained ignorant of the grand jury indictment of Mr. Smithers and the audiotapes which include admissions by Mr. Smithers together with the fact that nothing stated by Petitioner about the arson corresponded with the actual arson there can be no doubt that an innocent man has been convicted.

   I declare under the penalty of perjury that the foregoing is true and correct.

Dated: September 2, 2005

Steven L. Romansky