FILED
HARRISBURG

NOV - 5 2007

MARY E. D'ANDREA, CLERK
Per _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN L. ROMANSKY      :

     Petitioner        :    Civil No. 1:00-CV-01520

     v.                :       (Judge Rambo)

CONNER BLAINE, Jr.     :

     Respondent        :

PETITIONER'S TRAVERSE

Petitioner, Steven L. Romansky, Pro Se, files the within Traverse as directed by Orders of February 27, 2006, (Doc. 49) and September 26, 2007, (Doc. 55) and states:

I. Procedural History

The genesis of this case is rooted in the arson of a 1979 Ford Bronco which accrued on September 25, 1984, for which Petitioner was arrested and charged on February 14, 1986, with: Count (1) Arson Endangering Persons, 18 Pa. C.S.A. section 3301 (a); Count (2) Arson Endangering Property, 18 Pa. C.S.A. section 3301 (c); Count (3) Reckless

Burning or Exploding, 18 Pa. C.S.A. section 3301 (d); Count (4) Causing or Risking Catastrophe, 18 Pa. C.S.A. section 3302 (a); Count (5) Terroristic Threats, 18 Pa. C.S.A. section 2706; Count (6) Tampering with Evidence, 18 Pa. C.S.A. section 4910 (1); and Count (7) Obstruction of the Administration of Law, 18 Pa. C.S.A. section 5101.

On March 24, 1986, a preliminary hearing was held at which the charge of Obstruction of the Administration of Law was dismissed and the charge of Terroristic Threats was nolle prosed by the Commonwealth. Petitioner proceeded to trial on the remaining charges.

On September 15, 1986, Petitioner was found not guilty of Arson Endangering Persons and convicted of the remaining four charges.

On September 25, 1986, Post Verdict Motions were filed and after argument which was held on November 17, 1986, the Trial Court arrested the judgment of Arson Endangering Property and denied the motion as to: Reckless Burning or Exploding; Causing or Risking Catastrophe; and Tampering with Evidence

State Court Direct Appeal

On March 5, 1987, Petitioner filed a timely Notice of Appeal with the Pennsylvania Superior Court at No. 706 PHL 87 in which Petitioner argued the following seven issues:
(1) The trial Court erred in permitting a witness to offer testimony to a hypothetical question when the facts relied upon were assumed and not introduced into evidence;

2

(2) the trial court erred in allowing Officer Russell Thomas to testify to conversations with Thomas Smithers because such testimony was inadmissible hearsay;

(3) the trial court erred in refusing to grant a mistrial after a Commonwealth witness testified to investigating other activities of appellant;

(4) exposure to jurors of appellant in handcuffs was prejudicial error;

(5) the trial court erred in refusing to apply the doctrine of merger when sentencing appellant;

(6) the sentence imposed was excessive, and

(7) the trial court erred by failing to place on the record the reasons for the sentence imposed.

The Superior Court affirmed the judgment of the Trial Court on November 24, 1987. Commonwealth v. Romansky, 536 A.2d 228 (Pa. Super. 1987)(memorandum). No Petition for Allowance of Appeal was filed with the Pennsylvania Supreme Court.

State Court Collateral Proceedings - First Post Conviction

On September 18, 1995, Petitioner filed his Motion for Post Conviction Collateral Relief raising the following two issues:

(1) Petitioner was denied his state and federal con-

3

stitutional rights when counsel failed to
adequately consult with Petitioner prior
to trial; and

(2) present character witnesses.

On January 7, 1999, Petitioner amended his PCRA to
include the following three issues:

(1) The Commonwealth's Knowing use of
false testimony;

(2) concealment of impeachment evidence;
and

(3) violation of the Pa. Wiretap Act.

On April 28, 1999, the Trial Court denied PCRA and
Petitioner filed a timely Notice of Appeal with the Penn-
sylvania Superior Court at No. 1538 EDA 99 raising the fol-
lowing two issues:

(1) The trial court erred in concluding
that the Commonwealth's use the false
testimony and concealment of impeachment
evidence was harmless error; and

(2) violation of Wiretap Act.

The Superior Court affirmed the Trial Court's order
of April 28, 1999, on December 17, 1999. Commonwealth
v. Romansky, 750 A.2d 374 (Pa. Super. 1999) (memor-
andum). A Petition for Allowance of Appeal was
filed with the Pennsylvania Supreme Court at No. 0241
M.D. 2000, which denied allocatur on July 25, 2000.
Commonwealth v. Romansky, 795 A.2d 974 (Pa. 2000)
(table).

Federal Court Habeas Corpus Proceedings

4

On August 25, 2000, Petitioner filed his Habeas Corpus Petition pursuant to 28 U.S.C. section 2254 at Civil No. 1:00-CV-01520 (Doc. 1). Petitioner alleged the following two grounds:

    (1) Commonwealth's use of false testimony and concealment of impeachment evidence; and

    (2) violation of Wiretap Act

On August 24, 2001, the Honorable Sylvia H. Rambo denied the petition for writ of habeas corpus (Doc. 20). Petitioner filed a timely Notice of Appeal with the Third Circuit Court of Appeals at No. 01-3529 (Doc. 21).

On March 7, 2002, the Third Circuit Court of Appeals issued an order that appointed Mary Gibbons Esquire as counsel for Petitioner and granted a certificate of appealability, instructed the Commonwealth to provide Petitioner with four cassette tapes (Doc. 29), and stayed briefing to allow Petitioner to return to state court to file a second PCRA.


State Court Collateral Proceedings - Second Post Conviction

Based upon the Third Circuit Court of Appeals Order of March 7, 2002, which compelled the Commonwealth to provide Petitioner with four (4) cassette tapes and in order to meet the provisions of the Pennsylvania Post Conviction Relief Act, 42 Pa. C.S.A. section 9541 et seq. Petitioner filed his second PCRA on April 17, 2002.

Petitioner alleged that he was eligible for relief because of the following:

(1) A violation of the constitution of Pennsylvania or laws of this Commonwealth or the constitution of the United States which in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. (Pa. C.S.A. section 9543 (a)(2)(i))

(2) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and that would have affected the outcome of the trial if it had been introduced. (Pa. C.S.A. section 9543 (a)(2)(vi))

Because this was Petitioner's second PCRA, Petitioner invoked the Trial Court's jurisdiction pursuant to Pa. C.S.A. section 9545(a)(b)(i) (the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the constitution or laws of this Commonwealth or the constitution or laws of the United States). In addition to this exception Petitioner was also required to meet the following provision of Pa. C.S.A. section 9545(a)(b)(2) (Any petition invoking an exception provided in paragraph (i) shall be filed within 60 days of the claim could have been presented). As mentioned above the 60 day time limit started on March 7, 2002, and Petitioner filed his second PCRA on April 17, 2002, well within the time requirements.

Petitioner alleged that he was eligible for relief

because of the following:

Petitioner was denied his compulsory and due process rights to a fair trial under the state and federal constitutions when the Commonwealth failed to provide exculpatory evidence (four (4) cassette tapes) as required by Pa. R. Crim. P. Rule 305 and in violation of Brady v. Maryland.

Although Petitioner's aggregate sentence does not expire until February 15, 2020, the Trial Court claimed it did not have jurisdiction because Petitioner was no longer in custody and that Garlotte v. Fordice, 515 U.S. 39 (1995) only related to federal habeas corpus. Therefore, Petitioner's second PCRA was dismissed for lack of jurisdiction by the Trial Court on July 10, 2002.

On August 1, 2002, Petitioner filed a timely Notice of Appeal with the Pennsylvania Superior Court at No. 2478 EDA 2002 in which he raised the following three (3) issues:

(1) Did the lower court commit reversible error of law by holding that a defendant in custody under the aggregate of consective sentences imposed by three counties in violation of both state and federal constitutions does not meet the requirements and authority of the PCRA?

(2) Did the lower court commit reversible error of law by denying defendant's post conviction petition without the appointment of counsel and holding a hearing in violation of both Pennsylvania and

federal constitutions?

(3) Did the lower court commit reversible error of law by denying defendant his compulsory due process rights to a fair trial under the state and federal constitutions when the Commonwealth failed to provide exculpatory evidence (four (4) cassette tapes) as required by Pa. R. Crim. P. Rule 305 and in violation of Brady?

On March 24, 2003, the Pennsylvania Superior Court affirmed the July 10, 2002, order of the Trial Court. Commonwealth v. Romansky, 823 A.2d 1029 (Pa. Super. 2003) (memorandum). A Petition for Allowance of Appeal was filed with the Pennsylvania Supreme Court at No. 277 MAL 2003 which denied allocatur on August 26, 2003. Commonwealth v. Romansky, 830 A.2d 975 (Pa. 2003). (table).


Federal Habeas Corpus Proceedings

By order of May 6, 2004, the Third Circuit Court of Appeal directed the parties to address the issue of jurisdiction. In sofar as the parties agreed that Petitioner was in custody at the time he filed his habeas petition the Court remanded to this Honorable Court on January 6, 2005, for petitioner to add additional claims based upon the audiotape evidence. (Doc. 31).

On September 7, 2005, Petitioner filed his Habeas Corpus (Doc. 44); Brief in Support of Habeas Corpus

(Doc. 45); and Exhibits A through E (Doc. 46) with this Honorable Court and alleged three grounds for relief:

> (1) Petitioner was denied his fifth, sixth and fourteenth amendment right when the Commonwealth violated the statutory provisions of Title 18 Pa. C.S.A. section 5704 (2) (ii).
>
> (2) Petitioner was denied his fifth, sixth and fourteenth amendment rights under Massiah and its progeny when the Commonwealth surreptitiously recorded trial strategy via radio transmitter placed on co-defendant after the right to counsel had attached.
>
> (3) Petitioner was denied his fifth, sixth and fourteenth amendment rights under Brady and its progeny when the Commonwealth failed to provide him with the surreptitious recordings and exculpatory evidence contained within.

The above stated issues are based upon exhibit A the handwritten transcript of the four audiotapes which were not transcribed - due to the fact that the Department of Corrections lost the audiotapes - until May 19, 2005. As noted above the last state court proceedings were concluded on August 26, 2003, when the Pennsylvania Supreme Court denied allocatur, long before the handwritten transcript was prepared. Also, it should be noted that the Massiah issue has not been presented to the Trial Court because

the Trial Court has clearly indicated that it will not address any of Petitioner's issues due to its miscomprehension of in custody and jurisdiction.

On February 27, 2002, this Honorable Court accepted the amended petition and ordered Respondent to answer the allegations within twenty (20) days. Although Respondent filed its answer with the Court on March 17, 2006, (Doc. 52) Petitioner was never provided with this response. See Doc. 56.

On September 26, 2007, in light of the fact that Respondent's answer only addressed Petitioner's third issue this Honorable Court issued an Order upon Respondent to file a supplemental answer addressing issues one and two within twenty (20) days. The within Traverse is in response to both Court orders of February 27, 2006, (Doc. 49) and September 26, 2007 (Doc. 55).

Finally, it should be noted that Respondent's Response, Doc. 52, is both incomplete and inaccurate. Asking the Court to render a decision based upon what has been presented is like trying to understand a book by reading a handful of pages or comprehend a symphony for which only the overture had been composed. For this reason Petitioner has rewritten the procedural history in an effort to clarify the issues as presented to the state courts and the steps taken to exhaust state remedies.

I.   The Wiretap Act

As noted in Respondent's Answer Pursuant To Order of September 26, 2007, Doc. 57, Petitioner was granted leave to raise additional issues based upon the audiotapes by the Third Circuit Court of Appeals. Doc. 31.

On September 7, 2005, Petitioner filed his amended Habeas Corpus, Doc. 44; Brief, Doc. 45; and Exhibits A-E, Doc. 46, which was unopposed by Respondent and excepted by this Court on February 27, 2006, Doc. 49.

Respondent now claims that Petitioner has not fairly presented this issue to the state courts, Doc. 57, at 3. However, a reading of the above Procedural History at 3-4 clearly indicates that Petitioner did indeed present the Wiretap issue to both the Trial Court and Superior Court and even Respondent admits that Superior Court engaged in no discussion of the provisions of the Wiretap Act. Doc. 57 at 2-3.

Respondent next states that, "As reflected in the record Romansky was aware of the existence of taped conversations prior to trial - as evidenced both by the filing of a pretrial motion to suppress consensually recorded tapes and testimony at trial. Doc. 57, at 4.

What Respondent over looks here is the difference between knowing that tape recordings exist and the obligation of Respondent to provide the recordings to Petitioner. As the record clearly indicates Respondent "did not" provide Petitioner with the tapes "now at issue" in this case until ordered to do so by the Third Circuit Court of appeals on March 7, 2002,

Doc. 29, long after the conclusion of state court pro-
ceedings. And it should be noted that the first Hand-
written Transcript was not completed until May 19, 2005.
Additionally, it should be noted that Petitioner also knows
Respondent is still withholding additional tapes and
other evidence as noted in Petitioner's Brief in sup-
port of Habeas Corpus, Doc. 44, at 31. Such as, recordings
outside the car not yet turned over to Petitioner; Mr.
Smithers' arrest record; receipts; pictures; and dates
of events given to Mr. Smithers, Doc. 44 at 32, and
police report of the arson, Doc. 44 at 33. Thus, common
sense would dictate that it would be impossible for
Petitioner to raise any issues pertaining to evidence that
Respondent has not turned over to Petitioner in a
timely manner. Therefore, there can be no genuine doubt
that any procedural default is clearly attributed to the
fact that Respondent never turned over evidence in this
case until ordered to do so by the Third Circuit Court
of Appeals and is the reason that Petitioner was granted
permission to raise additional issues based on the tapes
in this Court.

Although Respondent continues to urge this Court
to find procedural default it addressed Section 5704
(2)(ii) of the Wiretap Act. Respondent states that
pursuant to the Act it is permissible for Deputy Attorney
Abeln to delegate Agent Russell Thomas to ascertain the
voluntary consent of Mr. Smithers; claimed Mr. Smither's
consent was voluntary; the Act was not violated; and
Commonwealth v. Clark, 542 A.2d 1036 (Pa. 1988)
announced a new rule. Doc. 57 at 5-8.

Contrary to the above, Petitioner's trial was held on September 15, 1986, and in Clark the Defendant moved to suppress evidence obtained from wiretap in the Court of Common Pleas, Erie County, Criminal Division, No. 1347 of 1983, three years before Petitioner's trial in Wayne County. The trial court granted Clark's motion to suppress and Superior Court affirmed. Commonwealth v. Clark, 349 Pa. Super. 255, 502 A.2d 1375 (1985). The Court held that, after reviewing the facts we concluded that the trial court correctly ruled that conversations recorded between Appelle and Commonwealth's informant, Richard McCullough had to be suppressed since the consent issued by Mr. McCullough was not voluntary. However because we found the review and authorization requirements of the Wiretapping and Electronic Surveillance Control Act of 1978, 18 C.S.A. Section 5701, et seq. (the Act) were complied with regarding a recorded conversation between Appellee and a state trooper on January 9, 1983, we reversed the trial court order which suppressed their contents. Commonwealth v. Clark, 374 Pa. Super. 308, 309, 542 A.2d 1036, 1037 (Pa. Super. 1988).

It is well recognized that consent is not voluntary where it is the product of coercion or duress, either expressed or implied. Scheckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047 (1973); United States v. Kelly, 708 F.2d 121, 125 (3d Cir. 1983); Commonwealth v. Harris, 429 Pa. 215, 219, 239 A.2d 290, 293 (1968); Commonwealth v. Hubbard, 472 Pa. 259, 275, 372 A.2d 687, 694 (1977); Commonwealth v. Mamon,

449 Pa. 249, 256, 297 A.2d 471, 495 (1972). Thus, the court must determine in a particular case whether the consent given was so tainted as to render the action involuntary and thus require the suppression of the proffered evidence.

As noted above the trial court in granting a motion to suppress recordings made by Pennsylvania State Police via Richard E. McCullough did so holding that consent to the intercept of communication under 5704 of the Pennsylvania Wiretapping and Electronic Surveillance Control Act of 1978, 18 Pa. C.S. sec. 5704, is not voluntary when the consenting party remains under a threat of prosecution should he fail to continue to cooperate with law enforcement authorities. Commonwealth v. Wintrode, 42 Pa. DC 3d 153 (1983).

Respondent admits that it was indeed Agent Russell Thomas who ascertained the voluntary consent of Mr. Smithers. However, Respondent cited no case law that allows the attorney general or deputy attorney general to designate to any officer of the law the duty of ascertaining the voluntary consent of the consenting party. To the contrary, as Petitioner cited above case law held that if the consenting party remains under a threat of prosecution should he fail to continue to cooperate with law enforcement authorities his consent is not voluntary.

A review of the following direct trial testimony of Agent Thomas reveals the following lies told to the jury by Mr. Thomas.

By Mr. Abeln:

14

Q.  Did the grand jury make recommendations to prosecute individuals involved in an overall-- the activities of your investigation?

A.  Yes, sir, the grand jury made recommendations to prosecute various individuals.

Q.  Was any such recommendation made in regard to Thomas Smithers?

A.  None Whatsoever.

Trial Testimony, September 15, 1986, at 95-96

Respondent's Appendix B, Doc. 57, clearly shows the above statement to be a lie.

Q.  Did Mr. Smithers voluntarily agree to do- participate in the interception?

A.  Yes sir, He contacted me initially in early December and voluntarily requested to engage in the consentual interception - I thereafter contacted you, outlined the facts, and received the approval as required by the statute.

Trial Testimony, September 15, 1986, at 97-98

15

A review of Petitioner's Handwritten Transcript, Exhibit A, Doc. 16, clearly shows this to be a lie.

Russell W. Thomas, Special Agent. (RT)

RT:  Okay don't be so dam cautious and get out front with him. Tell him this, tell him this, the reason, the reason I told them cops what I told them is because I'm fucking saving my own fucking ass that's why Goddam it. Now you tell me what's your fucking story, how can I help you out. Give me your fucking alibi. What did you do with that fucking tag... I know I can get in trouble over it.

Thomas Smithers: (TS)

TS:  You want me to pull that shit?

RT:  Yeah.

TS:  Okay.

Exhibit A at 35

TS:  Well maybe I thought I was going to save my fucking ass, but I don't I don't see that now. I don't know what the hell's going to happen."

Exhibit A at 49-50

TS:    Well somebody did some fucking lying
here cause I know somebody at the
barracks up there and those son's of a
bitches they know something up there
cause the guy that I know up there told
me that my fucking ass is in a sling and I
don't like that Steve.

Exhibit A at 55

A review of the above clearly shows that once again
Mr. Thomas lied to the jury and Mr. Abeln knew he was
lying. And Mr. Smithers was clearly working under the
threat of prosecution in violation of the above stated
case law.    Respondent claims that Mr. Abeln review
the above facts and agreed that Mr. Smither's consent
was voluntary. Doc. 57 at 5-6. If true, Respondent
has once again placed another nail in the coffin of Mr.
Abeln's prosecutorial misconduct.
In sum, the above clearly shows a violation of the
Wiretap Act. Just as clear is the fact that it is indeed
the Handwritten Transcript prepared by Petitioner on May
19, 2005, Exhibit A, Doc. 46, that produced the evidence
of this violation. Therefore, in light of the above evidence
it is unreasonable for Respondent to claim Mr. Smither's
consent was voluntary. Just as unreasonable is the fact that
after more than twenty years of withholding evidence the
Respondent still withholds evidence and stands in the

17

way of Petitioner proving his innocence and at the same time urge this Court to find Petitioner in procedural default when it is clear from the record that it is indeed Respondent that has deliberately caused the procedural default. Accordingly, Petitioner respectfully request this Court grant his petition and discharge Petitioner.

## II. The Massiah Issue

Respondent states that, the decision of Thomas Smithers to cooperate with police and obtain information against Romansky through consensual recordings did not violate Massiah v. United States, 377 U.S. 201 (1964), Doc. 57 at 12, because Smithers was not named in the presentment, nor was he ever charged. Doc. 57 at 14.

Assuming for the sake of argument that Mr. Smithers was never at risk for any vehicles or arson charges on the Bronco and never a co-defendant of Petitioner's, this would still not allow the state to use Mr. Smithers as a conduit to deprive Petitioner of his rights secured to him under the fifth and sixth amendments of the United States Constitution.

In the present case there is no argument that Petitioner was indicted, retained a lawyer, pleaded not guilty and was released on bail, and once the right to counsel has attached and been asserted, the state must honor it. At the very least, the prosecutor and police have an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to Counsel. Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed. 2d 1265 (1959); Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed. 2d 246 (1964); United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed. 2d 115 (1980). Maine v. Moulton, 474 U.S. 159, 169-173, 106 S.Ct. 477, 484-486, 88 L.Ed. 2d 481 (1985).

In Massiah, the Supreme Court granted certiorari to consider whether prosecution's use at trial of evi-

19

dence of petitioner's own incriminating statements deprived him of any rights secured to him under the fifth and sixth amendments of the federal constitution. The court concluded that the statements obtained by federal agents could not constitutionally be used by the prosecution as evidence against Massiah. Id., at 207, 84 S.Ct., at 1205.

Therefore, the question is not how the state got the evidence or through whom they got the evidence from, but when they got the evidence. And if the state got the evidence after the right to counsel had attached then it is a violation of the Massiah rule.

In the present case, Petitioner was indicted on May 15, 1985, for the Bronco and retained counsel. The first recording was made on December 19, 1985, several months after the right to counsel had attached. Therefore any and all evidence pertaining to this Bronco is inadmissible regardless of whether Mr. Smithers was a co-defendent or not and could not be used before the grand jury for an indictment or at trial for a conviction.

Respondent's Appendix A, Doc. 57 again shows a long list of evidence and information withheld from Petitioner at the time of trial as is evident by the order to unseal dated February 1, 1999. In addition to this long list of physical evidence stated in Appendix A that was never turned over to Petitioner the location of where the evidence was found is different. Appendix A clearly states that: Two one-gallon cans with the price of $23.00 were recovered, one in the bed of a truck and the other under the door of the green and white Ford Bronco, confiscated from Romansky. Id., at 4.

Had this information been provided to Petitioner there can be no doubt that the owner of the truck would have been a defense witness. And Petitioner's Exhibit E, Doc. 46 clearly shows that no Ford Bronco was confiscated from Petitioner's residence.

On October 5, 1984, Trooper Novatnak and others personally went to the residence of Steven Romansky, Star Route, Box 40, Sterling, Pike County, Pennsylvania, Id., at 6. Again a false statement when compared to Exhibit E, Doc. 46. Pocono Summit is not even in Pike County. It's in Monroe County. The same County Petitioner resided in all his life.

Another interesting idem can be found at Id. 10, "They didn't touch my truck until six months later. None of them moves." The refered to truck is a 1978 Chevrolet, the "only" vehicle confiscated from Petitioner. It should be noted that this is the "only" vehicle Petitioner had in the impound yard and that it was "not" a part of the arson. It should also be noted that Petitioner was found not guilty of all the charges pertaining to this truck. Why would Petitioner burn a vehicle that has no connection to him and leave his own vehicle untouched. This makes no sense at all.

An important fact that needs emphasizing here is the fact that at the time of the arson the ownership of the Bronco had not yet been ascertained. Even after the arson trial in Wayne County the ownership of the Bronco was not yet ascertained. The reason for this becomes self evident after a review of Petitioners Handwritten Transcript, Exhibit A, Doc. 46.

21

Special Agent Russell Thomas systematically removed all physical evidence and statements made by Mr. Smithers that connected him to the Bronco and this is why the three trials were held in reverse order.

As is true with most epic stories of deception, they start with a single lie. In this case that lie can now be seen thanks to Appendix 13, Doc. 57 at 14: "Special Agent Thomas received information that Stephen Romansky had possession of a stolen green and white Ford Bronco." There can no longer be any doubt that Agent Thomas received this information from Mr. Smithers. Had this information been known at trial Petitioner could have produced several witnesses that would state otherwise. Such as, Exhibit D, Doc. 46, which clearly shows that it was Mr. Smithers who stowed the Bronco in Lake Wallenpaupack.

Finely, and perhaps most importantly is the fact that not one time did Mr. Thomas tell the grand jury that the information he used before the grand jury was obtained by placing a body wire on Mr. Smithers after the right to counsel had attached. And that the information he obtained was sanitized to remove all the inculpating statements of Mr. Smithers.

Although Respondent cited <u>Brewer v. Williams</u>, 430 U.S. 387 (1977) as a case that holds the sixth amendment right to counsel to be offense specific, Doc. 57 at 14, the Third Circuit Court of Appeals in <u>United States v. Arnold</u>, 106 F.3d 37 (3d Cir. 1997) cited both Brewer and Moulton as establishing a limited exception to the offense specific rule if

pending charge is inextricably intertwined with charge under investigation.

Relying on Brewer and Moulton, the Third Circuit stated that many courts have held that once the right to counsel attaches with respect to a charged offense, it carries over to "closely related" but uncharged crimes. See case law at Id., 40 n. 1. The reasoning underlying this exception is consistent with the purposes and protection of the Sixth Amendment. When the pending charge is "so inextricably intertwined" with the charge under investigation, "the right to counsel for the pending charge cannot constitutionally be isolated from the right to counsel for the uncharged offense." Hines, 963 F.2d at 257; see also Cooper, 949 F.2d at 743. "[T]o hold otherwise[] would allow the [ government] to circumvent the Sixth Amendment right to counsel merely by charging a defendant with additional related crimes" after questioning him without counsel present. In re Pack, 616 A.2d at 1011. Id., at 40-41.

In the present case there can be no doubt that Petitioner falls within the limited exception to the offense specific rule considering that all the charges arise from the very same vehicle, that is, the 1979 Ford Bronco at issue before this Court.

The sealing of Presentment No. 48, Appendix A, Doc. 57, was Mr. Abeln's first clandestine step in trying Petitioner's three trials in reverse order. Had Petitioner went to trial in Pike County first on the charges he was first arrested for and the tapes provided to Petitioner as the law requires there is no doubt that the recordings

23

would have been suppressed due to the Massiah violation and therefore prevented all three trials As is self-evident the withholding of the tapes not only denied Petitioner the right to fair trials, it denied Petitioner the right to make the Massiah claim before trial and perhaps prevent the trials. However, now that the claim is available for the first time Respondent urges this Court to find Petitioner guilty of procedural default. Clearly, such a finding after all the skulduggery uncovered in this case would be a miscarriage of justice. Accordingly, Petitioner respectfully request this Court grant his petition and discharge Petitioner.

III.   The Brady Issue

In _Brady v. Maryland_, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed. 2d 215 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." The issue in the present case concerns the standard of materiality to be applied in determining whether Petitioner's conviction should be reversed because the prosecutor failed to disclose both exculpatory and impeachment evidence, and whether this omission is of sufficient significance to result in the denial of Petitioner's right to a fair trial.

In Agurs the Court stated: "[T]he truth-seeking process is corrupted by the withholding of evidence favorable to the defense, regardless of whether the evidence is directly contradictory to evidence offered by the prosecution." _United States v. Agurs_, 427 U.S. 97, 120, 96 S.Ct. 2392, 2405 (1976).

A review of the following can only be seen as an effort to sow confusion into the case that is now before the Court: "In the Pike County matter at 702 A.2d 1064 Superior Court analyzed the claim under _Brady v. Maryland_, 373 U.S. 83 (1963)..." Respondent's Response, Doc. 52, at 8. It should be noted that the Pike County case came after the Wayne County case and has no bearing on the evidence that was withheld from the jury in Wayne County. The question in this case is whether the evidence that the Commonwealth failed

25

to disclose to Petitioner - considered collectively, not item-by-item - violated Brady and denied Petitioner a fair trial

Although Respondent states that Superior Court analyzed Petitioner's Pike County claim under Brady this is not true. The Superior Court stated that: "Since we conclude that the presentation of the false testimony, in itself, requires grant of a new trial, we need not consider whether the Commonwealth violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963), by failing to disclose the existence of the agreement not to prosecute." 702 A.2d 1065 n. 2. It should also be noted that the exact same lie told in Wayne County - that the grand jury "did not" issue a pre-sentment against Thomas Smithers recommending prosecution for charges on the Bronco when infact it did - by Agent Russell Thomas when he was asked on direct examination by Deputy Attorney General Gregory B. Abeln: Q. Was any such recommendation made in regard to Thomas Smithers? A. None Whatsoever. Wayne County, Notes of Testimony, No. 42-1986-Criminal, September 15, 1986, at 96.

Respondent next stated that: "Appellant's roles in the arson and related crimes was clearly established through his own admission in the wiretapped conversation." Id at 10. Contrary to this statement the Trial Transcript makes no such admission, nor has the Commonwealth cited any such statement in the handwritten transcript. However, a review of the handwritten transcript will reveal that Mr. Smithers made the following

26

admissions: "Well maybe I thought I was going to save my fucking ass, but I don't, I don't see that now. I don't know what the hell's going to happen." E.A. at 49-50, and "Well somebody did some fucking lying here cause I know somebody at that barracks up there and those son's of a bitches they know something up there, cause the guy that I know up there told me that my fucking ass is in a sling and I don't like that steve." E.A. at 55. For a more detailed list of inculpatory statements made by Mr. Smithers see Petitioner's Brief in Support of Petition for Writ of Habeas Corpus, Doc. 45 at 30-35, and incorporated herein by reference. There can be no genuine doubt that this handwritten transcript would have been a valuable tool for a defense attorney. The statements made by Mr. Smithers would indeed be found inculpatory by anyone of average intelligence, however, the triers of fact were left unaware of any such statements made by Mr. Smithers thanks to the lies told by Mr. Abeln and Mr. Thomas about the Smithers indictment to shift suspicion away from Mr. Smithers knowing automatically that the truth would have established a foundation for cross-examination and effected the judgment of the jury. Thus, denying Petitioner a fair trial and his right to cross-examination under _Davis v. Alaska_, 94 S.Ct. 1105 (1974).

Although, Respondent has alleged that Petitioner made admissions against his own interest on the tapes, and that the tapes were played for the jury, Respondent

27

has failed to direct this Court to any section of the Trial Transcript where such statements were made. In addition, it should be noted that after Petitioner has painstakingly made Transcripts of the Tapes available to all parties Respondent has failed to direct this Court to any such admissions. There is not a single utterance made by Petitioner that even comes close to depicting the scene of the arson. On the other hand, Mr. Smithers description is right on point with the actual scene. How could Mr. Smithers know that paint cans were removed from the scene of the arson? See Handwritten Transcript of Tapes at page 163, line 23, and why would Deputy Attorney General, Gregory B. Abeln tell the jury that two Bondo cans were located at the scene - Trial Testimony of September 15, 1986, at 58 - when in fact they were not. The conclusion is clear. Mr. Abeln made a deal with the devil (Mr. Smithers) to mislead the jury, deny Petitioner a fair trial and convict an innocent man. Mr. Abeln can be seen as nothing less then the snake in the garden of eden being a liar and deceiver. Instead of seeking justice he acted as a trusted petty tyrant who wanted the jury to remain unconscious of the truth.

In light of the fact the Superior Court had no Trial Transcript wherein Petitioner made any admissions, nor did it have any part of any of the audiotape transcripts wherein Petitioner made any admissions it's incredible that Superior Court found the false testimony material, but found the error harmless.

In this case, Appellant's role in the arson

and related crimes was clearly estab-
lished through his own admission in the
wiretapped conversation. Although Smithers
was the party participating in the wiretap,
the testimony relating to an underlying deal
which the prosecution had reached with
him, had no bearing on Appellant's ultimate
admissions. Although we cannot condone
the prosecution's conduct in concealing
this information, we cannot find that
the false information contributed to the
verdict.   Thus, we cannot conclude
Appellant is entitled to a new trial on
such grounds.

Commonwealth v. Romansky, slip op. at 8  ( No. 1538
EDA 1999) ( Pa. Super. Dec. 17, 1999).

    Because of Respondent's ongoing refusal to pro-
vide the Brady material to which Petitioner was en-
titled, even after having filed the tapes in this Court,
this will be the first opportunity any court has had to
consider the confidence in the verdict - using all the
evidence Petitioner supplied - and apply the correct
standard of materiality.   Speaking recently to this
standard, the Supreme Court noted:

    "Our touchstone on materiality is
    Kyles v. Whitley, 514 U.S. 419 (1995).
    Kyles instructed that the materiality
    standard for Brady claims is met when
    'the favorable evidence could reason-
    ably be taken to put the whole case in

29

such a different light as to undermine confidence in the verdict." 514 U.S. at 435, 115 S.Ct. 1555." <u>Banks v. Bretke</u>, 124 S.Ct. 1256, 1272 (2004).

To apply the foregoing context, to the case now before the Court it will be necessary to assess the significance of all the favorable evidence which was improperly withheld from the defense in violation of the requirements of Brady.   This evidence consist of the following:

### The Indictment

On May 15, 1985, the Honorable G. Thomas Gates accepted Presentment No. 33 which charged Mr. Smithers with the following: Receiving Stolen Property - 1979 Ford Bronco at issue in this case; Conspiracy; Obstruction of the Administration of Law; Intimidation of Witnesses or victims - Otto Stranaka a witness Mr. Smithers shot; Removal or Falsification of Identification Numbers; Dealing in Vehicles with Removed or Falsified Numbers; Dealing in Titles and Plates for Stolen Vehicles; and False Application for Certificate of Titles or Registration.  See Doc. 46, Exhibit 13, page 21.

### The Deal

See agreement of January 6, 1986, not to prosecute Mr. Smithers for the above stated charges.

## Possession of the Bronco

The Bronco was in the control of Mr. Smithers. See Doc. 46, Exhibit D.

## Residence of Petitioner

Petitioner's residence at the time was Pocono Summit, not Lake Wallenpaupack as the jury was led to believe. See Doc. 46, Exhibit E.

## The Audiotapes

See Doc. 45 page 30-35 which is incorporated herein by reference for condence version of favorable evidence that could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

In assessing the significance of the above stated evidence one must bear in mind that every item of the state's case would have been directly undercut if the

Brady evidence had been disclosed. Therefore, based upon the fact that the jurors remained ignorant of all the above stated evidence together with the intentional, indisputable misconduct of both the Prosecutor and the egregious behavior of its officers, it's clear that the omission of evidence is of sufficient significance to result in the denial of a fair trial.

In addition to all the forgoing reasons stated above for the grant of Petitioner's petition, Petitioner would like to derect this Court to the fact that the skulduggery in this case is still persistently going on. As this Court is aware before Petitioner could produce the Handwritten Transcript, Exhibit A, Doc. 46, in this case the audio-tapes disappeared from a locked storage room from which only a very limited number of staff have access to. See Doc. 36.   Because there is only one entity - the Attorney General's Office - that has a vested interest in this case there is only one direction in which to point the fickle-finger-of-fate. However, there was no conclusive evidence at that time to show a deliberate act of unscrupulous behavior.

Next, the Attorney General's Office filed its Response to Amended Petition for Writ of Habeas Corpus, Doc. 52, with a Certificate of Service dated: March 17, 2006, and filed with the Court on the very same day. However, Petitioner was never provided with this response so that he could respond. In fact, if it was not for this Court's order of September 26, 2007, Doc. 55, Petitioner would have never known that a response was filed in this case. Upon receiving this order Petitioner sent a letter to the

Office of the Clerk asking for an up-to-date copy of the docket entries, and a copy of Respondent's Response. Doc. 56, which the Clerk provided.

On October 16, 2007, Respondent filed its supplemental answer with this Court, Doc. 57. Although Respondent's Certificate of Service is dated: October 16, 2007, once again Petitioner did not receive this answer until after contacting the Clerk, Doc. 58.

There can no longer be any genuine doubt that these tactics are deliberately orchestrated to cause a procedural default. Had it not been for this Court's order of September 26, 2007, Doc. 55, this Court would have rendered its decision without Petitioner having the opportunity to respond and once the Court rendered its decision there would be no way to reverse it.

However, this time Petitioner has evidence of the skulduggery. Although Respondent's Certificate of Service is dated: October 16, 2007, and filed with the Court on the same day, Doc. 57, the envelope which Petitioner will provide to this Court upon request is clearly dated: October 22, 2007, and Petitioner never received it until October 24, 2007. If not for Petitioner's letter to the Clerk its clear that once again Respondent had no intention of providing Petitioner with a copy so that he could respond. Accordingly, Petitioner respectfully request this Court grant his petition and discharge Petitioner.

WHEREFORE, for all of the forgoing reasons, Petitioner respectfully requests this Honorable Court to grant his petition for writ of habeas corpus and discharge Petitioner.

Respectfully submitted,

Steve Romansky, Pro se

Dated: October 29, 2007

34

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN L. ROMANSKY          :

     Petitioner          :     Civil No. 1:00-cv-01520

     v.          :     (Judge Rambo)

CONNER BLAINE, Jr.          :

     Respondent.          :

CERTIFICATE OF SERVICE

I hereby certify that I am this day serving one copy of the foregoing Traverse upon the person and in the manner indicated below:

Service by first class mail addressed as follows:

Andrea F. McKenna, Esq.
Office of Attorney General
16th Floor Strawberry Square
Harrisburg, PA 17120

Steve Romansky

Dated: October 29, 2007

35

Steve Romansky AY-8324
175 Progress Drive
Waynesburg, PA 15370-8090
October 29, 2007

Office of the Clerk
United States District Court
Middle District of Pennsylvania
U.S. Courthouse
228 Walnut Street
P.O. Box 983
Harrisburg, PA 17108

Re: Romansky v. Blaine, Civil No. 1:00-CV-01520-SHR

Dear Clerk:

Enclosed for filing in the above caption case you will find Petitioner's Traverse. I apologize for not stapling, however, I'm told that the large stapler is broken. Thank you for your attention and cooperation.

Sincerely,

Steve Romansky

C: Andrea F. McKenna, Esq.

INMATE MAIL
PA DEPT
OF CORRECTIONS

$ 01.82
UNITED STATES POSTAGE
PITNEY BOWES
02 1A
0004377075
OCT 30 2007
MAILED FROM ZIP CODE 15370

Steve Romansky, AY-8324
175 Progress Ave.
Waynesburg, PA 15370-8090

Office of the Clerk
United States District Court
Middle District of Pennsylvania
U.S. Courthouse
228 Walnut Street
P.O. Box 983
Harrisburg, PA 17106