IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEVEN L. ROMANSKY,** | : | |
| | : | |
| **Petitioner** | : | **CIVIL NO. 3:CV-00-1520** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **CONNER BLAINE, JR.,** | : | |
| | : | |
| **Respondent** | : | |

## <u>MEMORANDUM</u>

Steven Romansky, an inmate confined at the State Correctional Institution at Greene, in Waynesburg, Pennsylvania ("SCI-Greene") filed the above captioned petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. He challenges a 1986 Wayne County conviction. Presently before the Court is Romansky's amended petition for writ of habeas corpus. (Doc. 44.) The amended petition is ripe for disposition. For the reasons set forth below, the amended petition for writ of habeas corpus will be denied.

I.    **Background**

A.    **Procedural History**

On August 24, 2000, Romansky filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. (Doc. 1.) Along with his petition, Romansky filed an application to proceed *in forma pauperis* (Doc. 2) which was granted by Court Order (Doc. 5) dated January 11, 2001.

Romansky's petition challenged his 1986 Wayne County conviction on the following two grounds: (1) the Commonwealth knowingly used false testimony and concealed impeachment evidence; and (2) ineffective assistance of counsel for failure to suppress recordings made in violation of Pennsylvania's Wiretap Act. (Doc. 1 at 5.)

By Memorandum and Order dated August 24, 2001, this court denied relief on the petition, finding that Petitioner failed to establish that United States Supreme Court precedent required a contrary outcome to that reached in state court regarding his two claims before this Court. (Docs. 19, 20.) On September 6, 2001, Petitioner filed an appeal to the United States Court of Appeals for the Third Circuit. (Doc. 21.)

On March 7, 2002, the Third Circuit Court of Appeals granted Romansky's request for a certificate of appealability, "limited to the issue of whether Romansky

was denied due process by the Commonwealth's failure to disclose that it had a

cooperation agreement with Thomas Smithers and by knowingly using false

testimony from Special Agent Russell Thomas."[1]  (Doc. 29.)  The Order also directed

---

[1]Romansky states that several years after his conviction and sentence, he uncovered evidence revealing that an investigating grand jury had issued a presentment against Thomas Smithers recommending prosecution in Pike County for the 1979 Ford Bronco that was at issue in this case, and an agreement not to prosecute Smithers in exchange for his cooperation.  (Doc. 3 at 3.)  A letter of agreement was signed by Smithers, his attorney, and Deputy Attorney General Abeln in January 1986 in which the Office of Attorney General agreed not to charge Smithers in their pending investigation involving vehicle theft and insurance fraud in the northeastern part of Pennsylvania because Smithers' "cooperation and truthful testimony" was important.  (Doc. 8 App. B.)

At Romansky's trial, special agent for the Office of Attorney General Russell Thomas testified a to Smithers' agreement to wear a "consentual [sic] interception device," i.e. wiretap.  During Abeln's direct examination of Thomas, Thomas testified as follows:

> Q:    Did the grand jury make recommendations to prosecute individuals involved in an overall–the activities of your investigation? . . .
>
> A:    Yes, sir, the grand jury made recommendations to prosecute various individuals.
>
> Q:    Was any such recommendation made in regard to Thomas Smithers?
>
> A:    None whatsoever.

(Doc. 16, Trial Tr. 116a-117a).  Although the testimony was false and based on information not disclosed to defense counsel, Abeln made no attempts to correct the testimony despite knowing it was false.

the parties to "address the jurisdictional issue of whether Romansky was 'in custody'

on the Wayne County Convictions at the time he filed this habeas action." (*Id.*)

By Order dated January 6, 2005, the Third Circuit Court of Appeals, affirming

the determination that Romansky was "in custody" at the time he filed his habeas

petition, granted Romansky's motion for remand "without prejudice to Petitioner's

filing a motion to amend the habeas petition to allow additional claims based upon

the audiotape evidence."[2]  (Doc. 31.)  Subsequent to the remand, Respondents

provided Romansky with a copy of the four audiotapes.

On September 6, 2005, Romansky filed an amended petition, along with a

supporting brief and exhibits.  (Docs. 44-46.)  He raises the following issues for

review:

> I.  Petitioner was denied his Fifth, Sixth and Fourteenth Amendment
> rights when the Commonwealth violated the statutory provisions of Title
> 18 Pa.C.S.A. § 5704(2)(ii).
>
> II.  Petitioner was denied his Fifth, Sixth and Fourteenth Amendment
> rights under *Massiah [v. United States*, 377 U.S. 201 (1964)] and its
> progeny when the Commonwealth surreptitiously recorded trial strategy
> via radio transmitter placed on co-defendant after the right to counsel

---

[2]The audiotape evidence refers to four audiotapes of consensual recordings
made by Thomas Smithers, who agreed to engage Romansky in conversations
concerning his criminal activity.

had attached.

III.  Petitioner was denied his Fifth, Sixth and Fourteenth Amendment rights under *Brady [v. Maryland*, 373 U.S. 83 (1963)] and its progeny when the Commonwealth failed to provide him with the surreptitious recordings and exculpatory evidence contained within.

(*Id.*)

After being granted an enlargement of time within which to respond, (Doc. 53), Respondent filed a response to the petition on March 17, 2006.  (Doc. 52.)  Because the response only addressed Petitioner's third issue, by Order dated September 26, 2007, Respondent was directed to file a supplemental answer addressing issues one and two.  (Doc. 55.)  Petitioner was also afforded additional time to file a traverse. (*Id.*)  On October 16, 2007, Respondent filed a supplemental answer (Doc. 57), and on November 5, 2007, Romansky filed a traverse.  (Doc. 59.)

**B.    Facts**

Following a jury trial, Romansky was found guilty of Arson Endangering Property, 18 Pa. Cons. Stat. § 3301(c); Reckless Burning or Exploding, 18 Pa. Cons. Stat. § 3301(d); Causing or Risking Catastrophe, 18 Pa. Cons. Stat. § 3301(b); and Tampering with Evidence, 18 Pa. Cons. Stat. § 4910(1) on September 17, 1986 in the Court of Common Pleas of Wayne County.  (Doc. 8 at  1.)  The conviction involved a

5

fire on or about September 25, 1984 in an impoundment where suspected stolen vehicles were being held behind the Pennsylvania State Police Barracks.  The most seriously damaged vehicle was a 1979 Ford Bronco, which had been reported stolen and which the police discovered at Romansky's home.

Romansky filed post verdict motions on September 25, 1986, seeking an arrest of judgment, and filed supplemental motions on October 3, 1986.  The lower court granted Romansky's motion to arrest judgment as to the conviction of Arson Endangering Property, but dismissed the motions seeking an arrest of judgment of the remaining three convictions.  (*Id.*)

On February 10, 1987, petitioner was sentenced to a term of one and a half to four years imprisonment on the charge of Reckless Burning or Exploding; one and a half to four years on the charge of Causing or Risking Catastrophe; and one to two years on the charge of Tampering with Evidence.  (*Id*. at 2.)  All of the sentences were imposed consecutively, giving Romansky an aggregate minimum of four years and an aggregate maximum of ten years.[3]  Romansky filed a petition for reconsideration of

---

[3]In addition to the Wayne County sentence, Romansky was also sentenced March 26, 1987 by Monroe County to three to six years in prison, to be served consecutively to the Wayne County sentence. On December 17, 1987, Romansky was sentenced by Pike County to an aggregate of nine to eighteen years; Romansky was

sentence on February 19, 1987 which was denied.  (*Id*).

Romansky next filed a timely direct appeal with the Superior Court of Pennsylvania, in which he raised the following issues: (1) whether the trial court erred in permitting a witness to offer testimony to a hypothetical question when facts were assumed and not introduced into evidence: (2) whether the trial court erred in overruling an objection to hearsay evidence; (3) whether the trial court erred in failing to grant a mistrial when a Commonwealth witness testified that he was involved in investigating Romansky for "suspicious and criminal activity;" (4) whether the jury was prejudiced by seeing Romansky under escort by armed guards; (5) whether the trial court erred in failing to merge sentences; and (6) whether the trial court erred in failing to set forth reasons for imposing sentence.  (Doc. 8.)  The Superior Court affirmed the judgment of sentence in an order entered November 24, 1987, at No. 00706 Philadelphia 1987.  Petitioner did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.  (Doc. 8.)

On September 18, 1995, Romansky filed a petition under Pennsylvania's Post

---

retried in Pike County and resentenced on March 2, 2000, to an aggregate sentence of nine to eighteen years. This sentencing scheme gave Romansky a sixteen to thirty-four year sentence.

Conviction Relief Act, 42 Pa.C.S.A. §§ 9541, *et seq*.  ("PCRA").  An amended

petition was filed January 4, 1999, raising the following claims:  (1) whether

Romansky was denied the Sixth Amendment right to the effective assistance of

counsel by trial counsel's failure to seek suppression of information obtained through

an alleged violation of the Commonwealth's Wiretap Act; (2) whether Romansky was

denied the Sixth Amendment right to the effective assistance of counsel when counsel

failed to seek suppression of evidence obtained though an allegedly illegal entry into

Romansky's home; (3) whether he was denied state and federal constitutional rights

of due process when the Commonwealth allegedly used false testimony and withheld

vital impeachment evidence regarding Commonwealth witness Thomas Smithers; and

(4) whether he was denied the effective assistance of counsel by counsel's failure to

conduct an independent investigation of Commonwealth witness Thomas Smithers.

(Doc. 8 at 36-37.)  The PCRA court denied the petition without an evidentiary

hearing in an order dated April 28, 1999.  (*Id*. at 47.)

Romansky filed an appeal in the Pennsylvania Superior Court and raised only

two issues: (1) whether the PCRA court erred in concluding that the

Commonwealth's knowing use of false testimony and concealment of impeachment

evidence did not have a reasonable likelihood of effecting the jury's verdict; and (2)

8

whether the PCRA court erred in concluding that defense counsel was not ineffective for failure to seek suppression of the defendant's tape-recorded statements due to violation of Pennsylvania's wiretap act's voluntary consent requirement.  (*Id.* at 50.) The Superior Court denied relief on December 17, 1999.  (*Id.* at 97.)

Romansky next sought discretionary review by the Pennsylvania Supreme Court.  The Pennsylvania Supreme Court denied further review.  (Doc. 8 at 95.)

## II.    **Preliminary Matters**

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement.  *Preiser v. Rodriguez*, 411 U.S. 475, 498-499 (1973).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 67-8 (1991).  Rather, federal habeas review is restricted to claims based "on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67-8 (1991); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Johnson v. Rosemeyer*, 117 F.3d 104 (3d Cir. 1997).

Initially, the court notes that because the remand by the United States Court of

9

Appeals for the Third Circuit could be read to waive the exhaustion requirement regarding the claims raised in Romansky's amended petition, all three of Romansky's claims will be addressed on the merits.

## III.    **Merits**

Section 2254(d) of Title 28 of the United States Code provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Matteo v. Superintendent*, 171 F.3d 877, 888 (3d Cir. 1999).  Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the

decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id*.

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct.  A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error.  *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Matteo*, 171 F.3d at 888; *Thomas v. Varner*, 428 F.3d 492, 497-98 (3d Cir. 2005).  This presumption of correctness applies to both explicit and implicit findings of fact.  *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record.  28 U.S.C. § 2254(d)(2); *Porter v. Horn*, 276 F. Supp. 2d 278,

296 (E.D. Pa. 2003); *see also Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 316 (1979).  "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction."  *Breighner v. Chesney*, 301 F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[4]).  Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief.  *Porter*, 276 F. Supp. 2d at 296; *see also Williams v. Taylor*, 529 U.S. 362, 408-09 (2000); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001).  Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination.  *Porter*, 276 F. Supp. 2d at 296; *see also Williams*, 529 U.S. at 408-09.

Romansky's first challenge to the admission of the electronically recorded conversations asserts a violation of the Pennsylvania Wiretapping and Electronic

_____

[4]"If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination."  28 U.S.C. § 2254(f).

Surveillance Control Act, 18 Pa. Cons. Stat. § 5704.  To prevail in his federal habeas corpus petition, however, Romansky must show that he is "in custody in violation of the Constitution or laws or treaties of the United States," as opposed to a violation of state laws.  28 U.S.C. § 2254(a). Under § 2254, "a federal court may not issue the writ on the basis of a perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41(1984); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Because this claim is based on purely state law, it is simply not cognizable in this Court.

Romansky next asserts that the surreptitious recording of his conversations violated his Fifth and Sixth Amendment right to counsel.  Having considered the pertinent jurisprudence, the Court finds no merit to these claims.

The right to counsel has two sources in the United States Constitution-the Fifth and Sixth Amendments.  "The Fifth Amendment protection against compelled self-incrimination provides the right to counsel at custodial interrogations." *Michigan v. Jackson*, 475 U.S. 625, 629 (1986).  When a person is in custody, he must be advised of his right to counsel.  *Beckwith v. United States*, 425 U.S. 341, 347 (1976).  Notably, an individual is not entitled to the protection merely because he is the subject an investigation; rather there must be custodial interrogation.  *See*

13

*generally Miranda v. Arizona*, 384 U.S. 436 (1966).  As stated by the United States

Court of Appeals for the Third Circuit, "*Miranda* warnings are required only when a

person has been deprived of his freedom of action in some significant way."  *United*

*States v. Semkiw*, 712 F.2d 891, 893 (3d Cir.1983).

 The Sixth Amendment, on the other hand, establishes a criminal defendant's

right to the assistance of counsel, which arises at the initiation of adversarial judicial

proceedings against the defendant.  *United States v. Gouveia*, 467 U.S. 180, 187-188

(1984).  Judicial proceedings against an accused include the "formal charge,

preliminary hearing, indictment, information, or arraignment."  *Id*. at 188-89.  It is not

until such proceedings commence, however, that the Sixth Amendment may be

invoked.  Importantly, the Sixth Amendment is "offense specific," meaning that it

cannot be invoked once for all future prosecutions, nor does it attach until a

prosecution is commenced.  *Texas v. Cobb*, 532 U.S. 162, 167-168 (2001) (citing

*McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)).

 In the case at bar, the challenged surreptitious recordings occurred prior to any

arrest of, interrogation of, or adversarial judicial proceedings against petitioner.  The

record before this Court demonstrates that Romansky's conversations with Smithers

were recorded surreptitiously in December of 1985 and January of 1986. (Doc. 8.)

On February 13, 1986, the Third Statewide Investigating Grand Jury returned

Presentment No. 48, recommending the filing of charges against Romansky[5]

pertaining to the arson of a Ford Bronco which occurred on or about September 25,

1984, while impounded at the State Police Barracks in Honesdale, Pennsylvania.

(*See* Doc. 57 App. A at 15.) On February 15, 1986, Romansky was charged in Wayne

County with arson and other related offenses. (Doc. 8.) Thus, at no time during or

prior to the surreptitious recordings was Romansky in custody, let alone the subject of

custodial interrogation. While Romansky was facing adversarial judicial action in

Pike County at the time,[6] the Sixth Amendment, being offense-specific, did not

automatically attach to the prosecution involving the Wayne County activity until

Romansky was formally charged-an event which occurred after the electronic

recording.

---

[5]Smithers was not named in the presentment, nor was he ever charged. (*Id.*)

[6]On May 15, 1985, the Third Statewide Investigating Grant Jury returned Presentment No. 33, recommending that Smithers, Romansky and others be charged with the receipt of stolen property; criminal conspiracy and various violations of the Motor Vehicle Code. (*See* Doc. 57 App. B at 21.) On August 27, 1985, Romansky was charged in Pike County with these offenses. (Doc. 8.) Smithers was never charged.

In short, the court finds no violation of Romansky's Fifth or Sixth Amendment right to counsel resulting from the electronic recording of his conversations. Thus, the court denies Romansky habeas relief.[7]

Romansky's final claim asserts that the Commonwealth's withholding of the recorded conversations between himself and Thomas Smithers, deprived Petitioner of impeachment evidence which would have countered the testimony of Agent Thomas who falsely testified Smithers had no agreement with the Commonwealth that his cooperation would result in favorable consequences for himself. Specifically, Romansky claims that the admission of the "excluded relevant, admissible evidence that Mr. Smithers was indicted by the grand jury, had a deal with the prosecutor, and admits to having his ass in a sling over this arson," (Doc. 44 ¶ 7), would have had a reasonable likelihood of changing the verdict.

The holding in *Brady v. Maryland*, 373 U.S. 83 (1963), requires disclosure

_____

[7]The cases cited by Romansky in support of this claim are inapposite. In both *Massiah v. United States*, 377 U.S. 201, (1964) and *United States v. Henry*, 447 U.S. 264 (1980), the surreptitious interrogations were made following the defendants' indictments, thereby invoking the protections of the Sixth Amendment. In the case at bar, by contrast, no adversarial proceedings in connection with activity at issue had yet been started against Romansky when the surreptitious recordings were made.

only of evidence that is both favorable to the accused and "material either to guilt or

to punishment." *United States v. Bagley*, 473 U.S. 667, 674 (1985) (quoting *Brady*,

373 U.S. at 87.)  The *Brady* rule is based on the requirement of due process.  "Its

purpose is not to displace the adversary system as the primary means by which truth

is uncovered, but to ensure that a miscarriage of justice does not occur."  *Bagley*, 373

U.S. at 675.

In *Bagley*, the prosecutor failed to disclose evidence that the defense might

have used to impeach the Government's witnesses by showing bias or interest, which

is similar to the circumstances before this Court.  The Court in *Bagley* found that

impeachment evidence falls within the *Brady* rule, *id*.; *see Giglio v. United States*,

405 U.S. 150 (1972);[8] *Napue v. Illinois*, 360 U.S. 264 (1959) ("The jury's estimate of

---

[8]In *Giglio*, the Government also failed to disclose impeachment evidence
similar to the evidence at issue in the present case, that is, a promise made to the key
Government witness that he would not be prosecuted if he testified for the
Government.  The Supreme Court found that

> [w]hen the reliability of a given witness may well be determinative of
> guilt or innocence, nondisclosure of evidence affecting credibility falls
> within th[e] general rule [of *Brady*].  We do not, however, automatically
> require a new trial whenever a combing of the prosecutors' files after
> the trial has disclosed evidence possibly useful to the defense but not
> likely to have changed the verdict.  A finding of materiality of the
> evidence is required under *Brady*.  A new trial is required if 'the false
> testimony could in any reasonable likelihood have affected the judgment

the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend."), and that "evidence is material only if  there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.  *Id*.

Although the majority opinion of the Superior Court of Pennsylvania misapplied the standard of materiality, the Court, nonetheless, reached the appropriate decision, by finding that although the false testimony of Commonwealth Agent Russell Thomas (to the effect that Smithers had no agreement with the Commonwealth) was material, the testimony was nonetheless harmless.  (Doc. 8 at 106.)  In so doing, the Superior Court found the following:

> The trial court attempts to distinguish this case from the charges brought in Pike County,[9] finding that the testimony was material to the Pike

------

of the jury.
405 U.S. at 154 (citations, quotations, and alterations omitted).

[9]Romansky was prosecuted in Pike County for charges related to the 1979 Ford Bronco at issue in this case as well as two other motor vehicles.  Thomas Smithers

County charges because the agreement reached with Smithers pertained to the same charges faced by Appellant. Considering this case, the trial court contends that because Smithers' immunity agreement does not deal with the charges faced by Appellant, any testimony concerning the deal reached by the parties would not be material. We cannot agree with this assessment.

The agreement does not disclose the specific charges that Smithers may face absent his cooperation. Rather, the agreement concerns any charges that may be brought pursuant to the auto theft ring underlying each of Appellant's cases. Furthermore, the charges in this case relate to the same 1979 Bronco as in the Pike County case, where the Court determined remand was necessary because both Smithers and Appellant accused each other of stealing and burning down the vehicles. We cannot reach a contrary conclusion here, as it is clear that Smithers' credibility was a crucial issue and his testimony was material.

Despite this finding of materiality, however, we are compelled to conclude that the trial court's error was harmless.

It is settled that an error is harmless where the properly admitted evidence is so overwhelming and where the

---

also was recommended for charges by the investigating grand jury. Smithers was the primary witness for the Commonwealth. Both the letter agreement and indictment at issue in this matter affected the outcome of the Pike County trial. Abeln was also the Deputy Attorney General who prosecuted the Pike County case. The Superior Court of Pennsylvania found that not only did Abeln not reveal the existence of the agreement which he personally signed, but that he allowed Smithers to give false testimony on the stand as to the existence of the agreement. The trial court denied the PCRA petition but the Superior Court granted the appeal and found that a "miscarriage of justice occurred when Commonwealth used false testimony to obtain conviction." *See Commonwealth v. Romansky*, 702 A.2d 1064 (1997).

19

> prejudicial impact of the error is so slight that is can be concluded beyond a reasonable doubt that the error could not have contributed to the verdict.  The harmless error doctrine reflects a fundamental principle which we think is particularly apt here, i.e., "that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the fundamental fairness of trial rather than on the virtually inevitable presence of immaterial error."  If this court can conclude beyond a reasonable doubt that the error complained of did not contribute to the verdict, no new trial is warranted.

> Commonwealth v. Weisman, 584 A.2d 980, 985 (Pa. Super. 1990)(citations omitted).

> In this case, Appellant's role in the arson and related crimes was clearly established through his own admission in the wiretapped conversation. Although Smithers was the party participating in the wiretap, the testimony relating to an underlying deal which the prosecution had reached with him, had no bearing on Appellant's ultimate admissions. Although we cannot condone the prosecution's conduct in concealing this information, we cannot find that the false information contributed to the verdict.  Thus, we cannot conclude Appellant is entitled to a new trial on such grounds.

(*Id*. at 104-106.)

Although a finding of materiality would have required a different result under clearly established federal law as determined by the United States Supreme Court, Romansky is not entitled to habeas relief merely because the majority panel of the Superior Court defined "material" in a manner at odds with clearly established

Supreme Court precedent.  The concurring opinion, applying the definition of

materiality as set out in *Kyles v. Whitley*, 514 U.S. 419 (1995), reached the same

decision as did the majority panel, *i.e.* the challenged testimony did not undermine

confidence in the verdict.  The court finds that the testimony of Thomas did not

undermine the confidence of the verdict, as it is clear from the content of the tapes

that Romansky implicated himself through his own recorded admissions.[10]  Thus, the

ultimate decision, reached by the panel and the concurring opinion, is the same and

comports with clearly established Supreme Court precedent; namely, that the

challenged testimony did not undermine confidence in the verdict.  No relief is

required.   Because federal habeas precludes relief when the decision under review

comports with clearly established federal law as determined by the United States

Supreme Court, 28 U.S.C. §2254(d); *Williams v. Taylor*, 529 U.S. 362 (2000),

Romansky is not entitled to relief.

---

[10]It is equally clear that the facts of this case are different from the
circumstances in the Pike County case.  In Pike County, the outcome depended on the
credibility of Smithers versus Romansky.  The fact that Smithers lied on the stand and
actually had an agreement with the Commonwealth was material.  In the instant case,
Romansky implicated himself through his own recorded admissions.

IV.   **Conclusion**

Romansky has failed to establish that United States Supreme Court precedent requires a contrary outcome to that reached in state court regarding his claims before this court.  Accordingly, Romansky's petition for writ of habeas is denied.  An appropriate order is attached.

 s/Sylvia H. Rambo         
SYLVIA H. RAMBO
United States District Judge

Dated: March 27, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**STEVEN L. ROMANSKY,**                          :
                                                 :
                    **Petitioner**               :          **CIVIL NO. 3:CV-00-1520**
                                                 :
         **v.**                                  :          **(Judge Rambo)**
                                                 :
**CONNER BLAINE, JR.,**                          :
                                                 :

<u>**ORDER**</u>

In accordance with the foregoing Memorandum,  **IT IS HEREBY ORDERED**

**THAT:**

    1.    The amended petition for writ of habeas (Doc. 44) is **DENIED**.

    2.    The Clerk of Court is directed to **CLOSE** this case.

    3.    There is no basis for the issuance of a certificate of appealability.

     s/Sylvia H. Rambo
     SYLVIA H. RAMBO
     United States District Judge

Dated:   March 27, 2008.